No. 18-1230

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| **Courthouse News Service,**<br><br>**Plaintiff-Appellee,**<br><br>**v.**<br><br>**Dorothy Brown in her official capacity as Clerk of the Circuit Court of Cook County,**<br><br>**Defendant-Appellant.** | **On Appeal from the United States District Court for the Northern District of Illinois, Eastern Division**<br><br>**Case No. 17 C 7933**<br><br>**The Honorable Matthew F. Kennelly, Judge Presiding** |

# BRIEF AND CIRCUIT RULE 30(a) APPENDIX OF DEFENDANTS-APPELLANTS


KIMBERLY M. FOXX
State's Attorney of Cook County
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-2350
paul.castiglione@cookcountyil.gov

*Attorney for Defendant-Appellant*

KENT S. RAY
Assistant State's Attorney
Interim Chief, Civil Actions Bureau

PAUL A. CASTIGLIONE
MARGARETT S. ZILLIGEN
OSCAR KPOPTA
Assistant State's Attorneys

*Of counsel*


ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

JURISDICTIONAL STATEMENT ........ 1

ISSUES PRESENTED FOR REVIEW ........ 2

STATEMENT OF CASE ........ 2

SUMMARY OF ARGUMENT ........ 11

STANDARD OF REVIEW ........ 13

ARGUMENT ........ 13

I. Under *Younger* And Its Progeny, The District Court Should Not Have Exercised Jurisdiction Over Plaintiff's Motion For Preliminary Injunction.. ........ 14

II. Plaintiff's First Amendment Claim Against the Circuit Clerk Lacks Merit.... 22

A. The First Amendment Does Not Compel Access To Pre-Trial/Pre-Court Documents In Civil Actions... ........ 23

B. The First Amendment Does Not Compel Immediate And Instantaneous Access To Newly Filed Civil Complaints... ........ 29

III. Plaintiff Did Not Establish The Elements For A Preliminary Injunction.. ...... 40

CONCLUSION ........ 45

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ........ 46

CERTIFICATE RULE 31(e)(1) COMPLIANCE ........ 47

CERTIFICATE OF SERVICE ........ 48

CIRCUIT RULE 30(d) STATEMENT ........ 49

CIRCUIT RULE 30(a) APPENDIX ........ A1

## TABLE OF AUTHORITIES

Cases | Pages

*Abcarian v. McDonald*,
617 F.3d 931 (7th Cir. 2010) ..................42

*ACLU v. Holder*,
652 F. Supp. 2d 654 (E.D. Va. 2009) ..................26

*Bernstein v. Bernstein, Litowitz Berger & Grossman LLP*,
814 F.3d 132 (2nd Cir. 2016) ..................26

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ..................16

*Courthouse News Service v. Brown*,
2018 U.S. Dist. LEXIS 2816 (N.D. Ill. January 8, 2018) ..................*passim*

*Courthouse News Service v. Brown*,
2018 U.S. Dist. LEXIS 22922 (N.D. Ill. February 13, 2018) ..................33-34, 38

*Courthouse News Service v. Planet*,
750 F.3d 776 (9th Cir. 2014) ..................21

*Courthouse News Service v. Yamasaki*,
2017 U.S. Dist. LEXIS 132923 (C.D. Cal. August 7, 2017) ..................12, 30, 31, 41

*Croissant v. Joliet Park Dist.*,
141 Ill. 2d 449 (1990) ..................43

*DA's Office v. Osborne*,
557 U.S. 52 (2009) ..................14

*Detroit Free Press v. Ashcroft*,
303 F.3d 681 (6th Cir. 2002) ..................25

*Drury v. County of McLean*,
89 Ill. 2d 417 (1982) ..................31, 43

*In re Estate of Rennick*,
181 Ill. 2d 395 (1998) ..................43

*E.T. v. Cantil-Sakauye*,
682 F.3d 1121 (9th Cir. 2012) ........................................................................21

*Fenner v. Boykin*,
271 U.S. 240 (1926) ...................................................................................15

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of America, Inc.*,
549 F.3d 1079 (7th Cir. 2008) ..................................................................40, 41

*Globe Newspaper Co. v. Superior Court*,
457 U.S. 595 (1982) ...................................................................................25

*Graham v. Medical Mutual of Ohio*,
130 F.3d 293 (7th Cir. 1997) ........................................................................11

*Gregory v Ashcroft*,
501 U.S. 452 (1991) ...................................................................................39

*Hanson v. Circuit Court of First Judicial Circuit*,
591 F.2d 404 (7th Cir. 1979) ........................................................................17

*Healy v. Metropolitan Pier & Exposition Authority*,
804 F.3d 836 (7th Cir. 2015) ........................................................................16

*Henry v. Farmer City State Bank*,
808 F.2d 1228 (7th Cir. 1986) ......................................................................18

*Henson v. CSC Credit Services*,
29 F.3d 280 (7th Cir. 1994) ..........................................................................39

*Higher Society of Indiana v. Tippecanoe County*,
858 F.3d 1113 (7th Cir. 2017) ......................................................................40

*Houchins v. KQED, Inc.*,
438 U.S. 1 (1978) .......................................................................................25

*IDT Corp. v. eBay, Inc.*,
709 F.3d 1220 (8th Cir. 2013) ......................................................................26

*In re Reporters Committee for Freedom of the Press*,
773 F.2d 1325 (D.C. Cir. 1985) ....................................................23, 25, 26, 29

*In re United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*,
707 F.3d 283 (4th Cir. 2013) ........................................................................26

*Jones v. Phipps*,
39 F.3d 158 (7th Cir. 1994)........................................................................42

*Jordan v. Wolke*,
593 F.2d 772 (7th Cir. 1978)......................................................................11

*Juidice v. Vail*,
430 U.S. 327 (1977)...................................................................................17

*Klein v. O'Brien*,
____ F.3d ____, 2018 U.S. App. LEXIS 5950 (March 9, 2018)..................................42

*Lanphere & Urbaniak v. State of Colorado*,
21 F.3d 1508 (10th Cir. 1994).....................................................................25

*Levin v. Commerce Energy, Inc.*,
560 U.S. 413 (2010)...................................................................................14

*Lewis v. Casey*,
518 U.S. 343 (1996)...................................................................................16

*Lyons v. Ryan*,
201 Ill. 2d 529 (2002)................................................................................43

*Martinez v. California*,
444 U.S. 277 (1980)...................................................................................22

*Milchtein v. Chisholm*,
880 F.3d 895 (7th Cir. 2018)..................................................................16, 18

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*,
457 U.S. 423 (1982)...................................................................................17

*Missouri v. Jenkins*,
515 U.S. 70 (1995).....................................................................................16

*Nixon v. Warner Communications*,
435 U.S. 589 (1978).................................................23, 28-29, 33, 37, 38

*NRA of America, Inc. v. City of Chicago*,
567 F.3d 856 (7th Cir. 2009)......................................................................14

*New Jersey Media Group, Inc. v. Ashcroft*,
308 F.3d 198 (3rd Cir. 2009)........................................................................24

*O'Shea v. Littleton*,
414 U.S. 488 (1973)........................................................................ ......*passim*

*Parker v. Turner*,
626 F.2d 1 (6th Cir. 1980)........................................................ ......11, 20, 21

*Pennzoil Co. v. Texaco, Inc.*,
481 U.S. 1 (1987)........................................................................................16

*People v. Gutierrez*,
387 Ill. App. 3d 1 (1st Dist. 2008)..............................................................43

*Planned Parenthood League v. Bellotti*,
868 F.2d 459 (1st Cir. 1989) ...................................................................20, 21

*PG Publ. Co. v. Aichele*,
705 F.3d 91 (3rd Cir. 2013)......................................................................20, 21

*Press-Enterprise Co. v. Superior Court*,
478 U.S. 1 (1986)............................................................ ......24, 26, 29

*Richmond Newspapers, Inc. v. Virginia*,
448 U.S. 555 (1980)....................................................................23, 24

*Rizzo v. Goode*,
423 U.S. 362 (1976)...................................................... ......14, 19, 21

*Samuels v. Mackell*,
401 U.S. 66 (1971)........................................................................................16

*Stefanelli v. Minard*,
342 U.S. 117 (1951)........................................................................................16

*Sullo & Bobbitt, P.L.L.C. v. Milner*,
765 F.3d 388 (5th Cir. 2014)........................................................................31

*United States v. Edwards*,
823 F.2d 111 (5th Cir. 1987)...................................................................27, 28

*Valencia v. City of Springfield*,
____ F.3d ____, 2018 U.S. App. LEXIS 5161 (7th Cir. March 1, 2018).... ......12, 13, 40

*Winter v. NRDC, Inc.*,
555 U.S. 7 (2008) .......... 40

*Welch v. Johnson*,
907 F.2d 714 (7th Cir. 1990) .......... 22

*Younger v. Harris*,
401 U.S. 37 (1971) .......... *passim*

*Zemel v. Rusk*,
381 U.S. 1 (1965) .......... 30

<u>Statutes, Rules and Orders</u>

28 U.S.C. §1331 .......... 1

28 U.S.C. §1343 .......... 1

28 U.S.C. §1292 .......... 2

28 U.S.C. §2201 .......... 1

42 U.S.C. §1983 .......... 1, 17

5 ILCS 140/3 (2018) .......... 34

5 ILCS 140/7 (2018) .......... 34

5 ILCS 140/8.5 (2018) .......... 34

705 ILCS 105/13 (2018) .......... 31

Ill. Sup. Ct. R. 102 .......... 34

General Administrative Order 2014-02 dated June 13, 2016 from the Circuit Court of Cook County .......... *passim*

Electronic Filing Standards and Principles from the Illinois Supreme Court amended September 16, 2014 .......... *passim*

## JURISDICTIONAL STATEMENT

This appeal arises from the preliminary injunction that the United States District Court for the Northern District of Illinois, Eastern Division (the "district court") entered. Jurisdiction in the district court was based upon claims made under 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1343 (civil rights), 28 U.S.C. §2201 (declaratory relief) and 42 U.S.C. §1983.

Plaintiff-Appellee Courthouse News Service ("CNS" or "Plaintiff") brought its complaint alleging violations of the First and Fourteenth Amendments against Defendant-Appellant Dorothy Brown, Clerk of the Circuit Court of Cook County (the "Circuit Clerk") alleging that electronically filed civil complaints are not made available to the press or public in a timely and contemporaneous manner in violation of the First Amendment. Plaintiff filed its First Amendment claim against the Circuit Clerk in her official capacity.

On November 8, 2017, Plaintiffs moved for a preliminary injunction and asked the district court to direct the Circuit Clerk to provide CNS with immediate and contemporaneous access to all electronically filed complaints. (R. 6; R. 7.) On January 8, 2018, the district court granted Plaintiff's motion for preliminary injunction. (R. 23.)

On January 10, 2018, the Circuit Clerk filed a motion to clarify the district court's preliminary injunction order. (R. 24.) The district court denied this motion to clarify as moot for reasons stated in open court. (R. 27.)

On January 31, 2018, Dorothy Brown, Clerk of the Circuit Court of Cook County, filed a timely notice of appeal. (R. 30.)

This Honorable Court has appellate jurisdiction pursuant to 28 U.S.C. 1292(a)(1) as an appeal from the preliminary injunction order that the district court entered on January 8, 2018.

## ISSUES PRESENTED FOR REVIEW

1. Pursuant to the *Younger* abstention doctrine, should the district court have abstained from adjudicating Plaintiff's motion for preliminary injunction?

2. Does the First Amendment prohibit the Circuit Clerk's practice of performing the accept/reject review before making electronically filed complaints available to CNS?

3. Did Plaintiff establish the requisite elements for the entry of a preliminary injunction?

## STATEMENT OF CASE

CNS filed a complaint challenging the manner in which the Circuit Clerk makes electronically submitted complaints available to CNS and the press. (R. 1.) CNS alleged that delays in access to newly e-filed civil complaints at the Circuit Court of Cook County is the result of the Circuit Clerk's policy and practice of withholding new e-filed complaints from press review until after the performance of administrative processing, including post-filing "acceptance" of the complaint, at which time the Circuit Clerk deems the complaint "officially filed." (R. 1, ¶4.) While CNS challenged the Circuit Clerk's practice of accepting or rejecting newly

filed complaints before making them available to CNS or the media, CNS did not challenge the Illinois Supreme Court rule or the order from the Hon. Timothy Evans, the Chief Judge of the Circuit Court of Cook County (the "Chief Judge") that directed her to follow this practice.

On November 8, 2017, CNS moved for a motion for preliminary injunction against the Circuit Clerk directing her to provide it with immediate access to complaints submitted electronically to the Circuit Clerk's office but not yet accepted for filing. (R. 6.)

CNS' Motion for Preliminary Injunction

In the district court, the parties submitted declarations with respect to CNS' motion for preliminary injunction. CNS attached two declarations to its motion for preliminary injunction, one from William Girdner and one from Adam Angione. (R. 7-2.; 7-4.) The Girdner declaration touches upon the operation of the Circuit Clerk's office but does not discuss the Circuit Clerk's practices and procedures for complying with the requirements of General Administrative Order 2014-02 dated June 13, 2016 from the Circuit Court of Cook County ("Order 2014-02"), R. 19-2, and Electronic Filing Standards and Principles from the Illinois Supreme Court amended September 16, 2014 (the "Standards"). (R. 19-3.)

The Angione declaration states that CNS has analyzed 2,414 complaints that were submitted electronically from June 1, 2017 to September 30, 2017 and that 86% of those complaints were available either the day they were submitted or the next day. (Dkt. # 7-5, page 33 of 152.) Of the remaining 14%, many of the

submitted complaints were filed the next *business* day. CNS, for example, lists 154 complaints electronically filed between June 2, 2017 and October 2, 2017 as posted three days later. (Dkt. # 7-5, pages 33 through 130 of 152.) Of the 154 complaints, 131 complaints were filed on a Friday and posted *one business* day later on the following Monday or in the case of Labor Day, the following Tuesday.[1]

CMS admits that 2,063 electronically submitted complaints were posted on the same day or the next day within the June 2, 2017 to September 30, 2017 time period. Of the 2,414 complaints submitted electronically within the June 2, 2017 to September 30, 2017 time period, 2194 (or 90.9%) were filed within one business day after submission. 2,287 (or 94.7%) were filed within two business days after submission. 2,337 (or 96.8%) were filed within three business days after submission. (R. 7-5, pages 33 through 130 of 152.)[2] It is undisputed that the vast majority of electronically submitted complaints are made public, and viewable, within twenty-four business hours of filing. (R. 19-1, Declaration of Kelly Smeltzer, General Counsel of the Circuit Clerk's office, at ¶7.)

The Circuit Clerk's office provides for electronic filing of pleadings in the Chancery, Child Support, Civil, Domestic Relations, Law and Probate Divisions of the Circuit Court of Cook County. (*Id.* at ¶3.) As of 2016, more than 300,000 e-

---

1 (R. 7-5, pages 33 through 130 of 152; R.19, p. 3, fn. 4.)

2 93 complaints were filed within two business days after electronic submission. (*Id.*) 50 complaints were filed within three business days after electronic submission. (*Id.*) 12 complaints were filed within four business days after electronic submission. (*Id.*) 7 complaints were filed within five business days after electronic submission. (*Id.*) 36 complaints were filed within six business days after electronic submission. (*Id.*) And 18 complaints were filed within seven business days after electronic submission. (*Id.*)

filings had been processed, more than 50,000 e-filed motions had been spindled, and e-filing was available 24 hours a day and 7 days a week to more than 30,000 registered users. (*Id.* at ¶5.) During its business hours from 8:30 a.m. through 4:30 p.m., the Circuit Clerk's office reviews electronically submitted complaints as promptly as possible to ensure compliance with Order 2014-02 and the Standards. (*Id.* at ¶9).

The Circuit Clerk's office ensures that a majority of new civil complaints are viewable within approximately 24 business hours of submission. (*Id.* at ¶11.) The exception is when a case is received after 4:30 pm on a Friday, and over the weekend, especially a long holiday weekend. For instance, if a case is received on Friday after 4:30 pm, it is accessible on Monday, or the next court business day. (*Id.*)

In the Standards, the Illinois Supreme Court issued several orders to circuit clerks in Illinois, *inter alia*:

> **No. 4 Electronic Access to Court Records**
>
> . . . Electronic access and dissemination of court records shall be in accordance with the *Electronic Access Policy for Circuit Court Records of the Illinois Courts.*
>
> * * *

(R. 19-3.) This rule, therefore, incorporates the Electronic Access Policy for Circuit Court Records of the Illinois Courts (the "Electronic Access Policy"). (R. 24-1.) The Electronic Access Policy for Circuit Court Records of the Illinois Courts states that it is "an official policy of the Administrative Office of the Illinois Courts." (*Id.*)

Section 1.00 (c) of the Electronic Access Policy states that:

> Each circuit court that wishes to provide electronic access to the court records maintained by any clerk of court within its jurisdiction must adopt a local rule or administrative order consistent with this policy.

(R. 24-1 at Section 1.00(c)). Section 2.00(c) of the Electronic Access Policy defines the word "public" to include media organizations.

Section 4.30(b) of the Electronic Access Policy states, *inter alia*:

> The following information is excluded from public access in electronic form, unless access is provided at the office of the clerk of the court
>
> * * *
>
> Any documents filed or imaged, *i.e.* complaint, pleading order.

Under the Standards and Order 2014-02, complaints that are electronically submitted to the Circuit Clerk are not actually "filed" until the Circuit Clerk's office determines that they do not improperly include excluded documents. (R. 19-1, ¶¶11, 12.) In making this determination, the Circuit Clerk performs an "accept/reject" function. (*Id.*)

Order 2014-02 sets forth thirteen categories of excluded documents, including documents containing confidential information and documents containing personal identity information. (R. 19-2, ¶2(c).) The Circuit Clerk needs time to determine whether newly submitted complaints have attachments that are prohibited in Order 2014-02. (R. 19-1, ¶12.)

The district court granted CNS' motion for preliminary injunction and directed the Circuit Clerk to provide Plaintiff and the public with "timely, contemporaneous access to the complaints upon filing." *Courthouse News Service v.*

*Brown*, 2018 U.S. Dist. LEXIS 2816, *2 (N.D. Ill. January 8, 2018) (Appendix at A1.).

The Circuit Clerk's Motion to Clarify

Due to a concern that the district court's preliminary injunction order could not be reconciled with the commands in Sections 1.00(c), 2.00(c) and 4.30(b) of the Electronic Access Policy and Point Number 4 of the Standards that the public cannot be provided access to complaints "in electronic form, unless access is provided at the office of the clerk of the court," the Circuit Clerk filed a motion to clarify the preliminary injunction order. (R. 24.)

Specifically, the Circuit Clerk expressed concern that the directive to provide the public with "timely, contemporaneous access to the complaints upon filing" cannot be reconciled with certain language from Order 2014-02. (R. 19-2.) Section 13(b) of Order 2014-02 ("Section 13(b)") states that:

> Consistent with the Illinois Supreme Court's "Electronic Access Policy for Circuit Court Records of the Illinois Courts," the Clerk may permit public access to the electronic forms of images of electronically filed documents only through public access computer terminals located in the Clerk's office locations. These public access terminals do not permit the data, documents, images, or information to be downloaded or exported in electronic form.

(R. 19-2.) The district court denied the motion to clarify as moot, on the grounds that the preliminary injunction order did not conflict with the requirement in Section 13(b) that electronic images showing court filings can only displayed at public access terminals in the Circuit Clerk's office within business hours. (R. 27; Appendix at A24-A27.)

On January 31, 2018, the Circuit Clerk filed her notice of appeal. (R. 30.)

<u>The Circuit Clerk's Motion to Stay</u>

On February 2, 2018, the Circuit Clerk filed a motion to stay the preliminary injunction order until this Court decided the present appeal. (R. 35.) In this motion, the Circuit Clerk addressed several practical problems that implementing the preliminary injunction order would pose.

The Circuit Clerk noted that the computer system in the Circuit Clerk's office does not currently have a read function that allows users -- be they press or the general public -- to see filed images on the internet. In order for Plaintiff or other users to be able to download complaints filed electronically, the Circuit Clerk's computer system will need a significant upgrade.

The Circuit Clerk stated that her primary problem was that the contemporaneous requirement in the preliminary injunction cannot be reconciled with the rules of the Electronics Access Policy and the Standards. Both state court rules require the Circuit Clerk to complete the "accept/reject function" before providing a newly filed complaint to the public, including the media.

The Circuit Clerk also identified another problem: the Illinois Supreme Court issued an order in the matter styled, *In re: Mandatory Electronic Filing In Civil Cases*, M.R. 18368, dated December 22, 2017, that limits and controls the resources that the Circuit Clerk may apply to the creation of an e-filing system. Paragraph 4 of this order states:

> The Circuit Clerk's office shall commit all necessary resources to meet the extended timeline [of permissive e-filing for six months], including

> working with [computer provider] Tyler on thorough testing of the essential functionality that the Circuit Clerk has identified is necessary to maintain the integrity of its business processes.

(R. 35-3, ¶4.) In other words, the Illinois Supreme Court ordered the Circuit Clerk to devote all necessary resources to the creation of a mandatory e-filing system, which would certainly be affected by the re-direction of resources to a new computer related issue regarding contemporaneous access to newly submitted complaints prior to the office's completion of its mandated accept/reject function. It is currently the accept/reject function that initiates the computer system to allow access to an electronically submitted document. (R. 19-2, ¶2(c).) Under the current design of the computer system in the Circuit Clerk's office, complaints that must be sealed cannot be sealed until the "accept/reject function" is completed.

The Circuit Clerk noted that on January 26, 2018, in the matter styled *In re: Mandatory Electronic Filing In Civil Cases*, M.R. 18368, the Circuit Clerk filed a petition with the Illinois Supreme Court. (R. 35-1.) This petition contains the following prayer for relief:

> WHEREFORE, in an effort to comply with Judge Kennelly's January 8, 2018, order the undersigned respectfully requests that this Court grant permission to the office of the Clerk of the Circuit Court to allow access, to the press and the public, to images submitted electronically to the Clerk's office, prior to the completion of the accept/reject function, which have not been processed and officially accepted as a part of the basic record, during business hours on the Clerk's Office's terminals, which also means that the press and public will have access to documents that litigants file under seal. In addition, we request permission to engage our stand-alone e-Filing vendor as well as the Clerk's Office's programmers to add a new e-Filing transaction by February 7, 2018.

(*Id.*) On February 14, 2018, the Illinois Supreme Court entered an order denying this petition.[3] The order stated:

> This cause coming to be heard on the petition of the Cook County Circuit Court Clerk for relief from certain orders of this court related to e-Filing on the grounds that such relief is necessary to permit her office to comply with the order entered by U.S. District Court Judge Matthew F. Kennelly in *Courthouse News Services* v. *Clerk of the Circuit Court of Cook County,* 2018 U.S. Dist. Lexis 2816 (N.D. Ill. Jan. 8, 2018), and the Court being fully advised in the premises;
>
> IT IS ORDERED that the petition is denied.

On January 29, 2018, the Circuit Clerk sent a letter to the Honorable Timothy Evans, the Chief Judge of the Circuit Court of Cook County. (R. 35-2.) In this letter, the Circuit Clerk stated, in part:

> Since documents that are submitted to the Clerk's Office prior to the completion of the accept/reject function are not a part of the official court record and they do not become a part of the official court record until they are officially accepted or rejected by the Clerk's Office, we will need GAO 2014-02 to be amended to allow the Clerk's Office to provide access to the press and to the public to unofficial versions of electronically submitted documents.

(*Id.*)

The district court denied the Circuit Clerk's motion to stay. (R. 44.) The Circuit Clerk then filed a motion to stay the preliminary injunction order in this Court. On February 14, 2018, this Court granted the motion and stayed the preliminary injunction order "pending a decision by this court on the merits of the appeal." (Docket for Case No. 18-1230, #5).

3 *See http://www.illinoiscourts.gov/SupremeCourt/Announce/2018/021418.pdf.*

## SUMMARY OF ARGUMENT

CNS sought a mandatory preliminary injunction[4] against the Circuit Clerk directing her to provide it with immediate access to complaints submitted electronically to the Circuit Clerk's office but not yet accepted for filing. In so doing, CNS challenged the Circuit Clerk's practice of adhering to the requirements of the Standards and Order 2014-02.

Pursuant to these requirements, the Circuit Clerk's practice is to determine whether newly filed complaints contain documents that the Illinois courts have excluded from electronic accessbefore providing anyone with access to such documents. CNS did not challenge the Illinois Supreme Court's rule or the Chief Judge's order. Instead, CNS challenged the Circuit Clerk's practice of following the rule and order. Under the *Younger*[5] abstention doctrine, the district court should not have exercised subject matter jurisdiction over CNS' motion for preliminary injunction. *See, e.g., O'Shea v. Littleton*, 414 U.S. 488 (1973) (holding that the *Younger* abstention doctrine barred a federal challenge to a state court practice of setting bonds arbitrarily); *Parker v. Turner*, 626 F.2d 1, 8 (6th Cir. 1980) (holding that the *Younger* abstention doctrine barred a federal claim which effectively asked the district court to monitor "the manner in which state juvenile judges conducted contempt hearings in non-support cases").

---

4 This Court has recognized that "[b]ecause a mandatory injunction requires the court to command the defendant to take a particular action, 'mandatory preliminary writs are ordinarily cautiously viewed and sparingly issued.'" *Graham v. Medical Mutual of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997), *citing Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978).

5 *See Younger v. Harris*, 401 U.S. 37 (1971).

No law imposes a duty upon the Circuit Clerk to provide immediate and contemporaneous access to electronically filed complaints to CNS or any other member of the media. The district court found that the First Amendment requires such access. *Courthouse News Service v. Brown*, 2018 U.S. Dist. LEXIS 2816 at *22. (Appendix at A16.) It does not. *See Courthouse News Serv. v. Yamasaki*, 2017 U.S. Dist. LEXIS 132923, *10-*11 (C.D. Cal. August 7, 2017) (finding that the plaintiff is not likely to succeed on the merits of its claim that the media has a right under the First Amendment of immediate access to electronically filed complaints).[6]

Finally, the district court should not have entered a preliminary injunction because CNS did not establish the elements for a preliminary injunction. *See Valencia v. City of Springfield*, ____ F.3d ____, 2018 U.S. App. LEXIS 5161, *10-*11 (7th Cir. March 1, 2018). Indeed, the preliminary injunction does not favor the public interest and Plaintiff is not likely to succeed on the merits of its First Amendment claim.

As the district court should not have exercised subject matter jurisdiction over CNS' motion for preliminary injunction and as the First Amendment does not any right to immediate access to electronically submitted complaints before they are accepted for filing, this Court should reverse the decision below and remand the case with instructions to dismiss this lawsuit against the Circuit Clerk for lack of subject matter jurisdiction.

---

6 CNS filed a notice of appeal in Yamasaki to the Ninth Circuit. *See Courthouse News Service v. Yamasaki*, 17-56331. That appeal is currently pending.

## STANDARD OF REVIEW

In reviewing an order granting a preliminary injunction, this Court "examines legal conclusions *de novo*, findings of fact for clear error, and the balancing of harms for abuse of discretion." *Valencia,* 2018 U.S. App. LEXIS 5161 at *11-*12.

Here, the issues before the district court on Plaintiff's motion for preliminary injunction were all questions of law. The district court's adjudication of this motion did not turn on any dispute of material facts but rather questions of law. The district court's legal conclusions regarding *Younger* and the First Amendment were erroneous. And the district court abused its discretion when it determined that Plaintiff satisfied the elements of a preliminary injunction.

## ARGUMENT

Plaintiff invites the federal courts to federalize state court management of their dockets and to hold that the First Amendment mandates that state courts, without any review, provide immediate and contemporaneous access of electronically filed complaints to the public. For two reasons, this Court should decline that invitation.

First, under *Younger* and its progeny, the district court should not have exercised subject matter jurisdiction over CNS' motion for preliminary injunction. Second, even if *Younger* did not apply here, the district court's interpretation of the First Amendment was too broad and does not provide states like Illinois any latitude in determining how to process newly filed complaints before making them available to the public.

## I. Under *Younger* And Its Progeny, The District Court Should Not Have Exercised Jurisdiction Over Plaintiff's Motion For Preliminary Injunction.

The roots of federalism run deep in federal jurisprudence. *See, e.g., NRA of America, Inc. v. City of Chicago*, 567 F.3d 856, 860 (7th Cir. 2009) (noting that "[f]ederalism is an older and more deeply rooted tradition than is a right to carry any particular kind of weapon"). Federal courts, which "subsist[] side by side with 50 state judicial, legislative, and executive branches," must give appropriate consideration "to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976) (citation omitted).

The United States Supreme Court has long recognized the importance of federalism and comity in the structure of our legal system. *See Younger*, 401 U.S. at 44-45 (stating that "'Our Federalism,' born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future"); *DA's Office v. Osborne*, 557 U.S. 52, 75-76 (2009) (Alito, J., concurring) (recognizing the importance of federalism and comity concerns in federal *habeas corpus* litigation); and *Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010) (holding that the doctrine of comity mandated the dismissal of the plaintiff's Section 1983 claim of allegedly discriminatory state taxation).

Under the principle of "Our Federalism," a doctrine central to the analysis in *Younger*, state courts are just as capable of protecting federal constitutional rights as federal courts are and state courts are better equipped to adjudicate important state interests, such as deciding how to process newly filed civil complaints. *See Younger*, 401 U.S. at 44. As Justice Black stated:

> [Our Federalism] does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.* at 44-45.

In holding that federal courts should not enjoin state criminal prosecutions, *Younger* relied upon *Fenner v. Boykin*, 271 U.S. 240 (1926). In *Fenner,* the United States Supreme Court stated the following:

> *Ex parte Young*, 209 U.S. 123, and following cases have established the doctrine that when absolutely necessary for protection of constitutional rights courts of the United States have power to enjoin state officers from instituting criminal actions. But this may not be done except under extraordinary circumstances where the danger of irreparable loss is both great and immediate. Ordinarily, there should be no interference with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the State and must decide when and how this is to be done. The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection. The Judicial Code provides ample opportunity for ultimate review here in respect of federal questions. An intolerable condition would arise if, whenever about to be charged with violating a state law, one were permitted freely to contest its validity by an original proceeding in some federal court. (citation omitted).

*Fenner*, 271 U.S. at 243-44. In *Younger*, the Supreme Court noted that the above "principles, made clear in the *Fenner* case, have been repeatedly followed and reaffirmed . . ." *Younger*, 401 U.S. at 45-46. *Younger* abstention applies to state

civil proceedings, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17 (1987),[7] and to requests for declaratory judgments as well as to requests for injunctions. *Milchtein v. Chisholm*, 880 F.3d 895, 899 (7th Cir. 2018), *citing Samuels v. Mackell*, 401 U.S. 66, 69-73 (1971).

Federal courts are courts of limited jurisdiction, *Healy v. Metropolitan Pier & Exposition Authority*, 804 F.3d 836, 845 (7th Cir. 2015), and abstention recognizes that "[a] federal court . . . is not the proper forum to press" general complaints about the way in which government goes about its business." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983). "Unlike Congress, which enjoys discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment, federal courts have no comparable license and must always observe their limited judicial role." *Missouri v. Jenkins*, 515 U.S. 70, 112-13 (1995) (internal quotation marks and citations omitted) (O'Connor, J., concurring); *see also Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("[I]t is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.").

When a party challenges the manner in which a state official exercises his or her authority, federal courts must be mindful of the "special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *Stefanelli v. Minard*, 342 U.S. 117, 120 (1951).

---

7 The Circuit Clerk filed an answer and affirmative defenses where she raised *Younger* abstention and lack of subject matter jurisdiction as an affirmative defense to this lawsuit. (R. 17.)

The Supreme Court has extended *Younger* to noncriminal judicial proceedings when important state interests are involved. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Hence, federal courts can and do invoke the *Younger* doctrine to abstain from deciding actions filed pursuant to 42 U.S.C. § 1983 ("Section 1983"). *See, e.g., Hanson v. Circuit Court of First Judicial Circuit*, 591 F.2d 404, 410, n. 13 (7th Cir. 1979).

In accordance with *Younger*, federal courts have abstained from hearing federal constitutional challenges. In *Juidice v. Vail*, 430 U.S. 327 (1977), for example, the Supreme Court considered the importance of comity and federalism when it addressed the issue of when a district court may enjoin the use of the statutory contempt procedures that a New York law authorized against a plaintiff class of judgment debtors. The Court held that the district court not entertain this Section 1983 action, as the plaintiffs were allowed to raise federal constitutional defenses in the New York forum. *Juidice*, 430 U.S. at 330. Significantly, the Court stated that the:

> State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest . . . The contempt power lies at the core of the administration of a State's judicial system . . . [w]e think the salient fact is that federal-court interference with the State's contempt process is "an offense to the State's interest . . .

*Id.* at 335-36. The Court held that it was not appropriate to enjoin the New York contempt procedures, as it was "abundantly clear that appellees had an opportunity to present their federal claims in the state proceedings." *Id.* at 337.

Here, the Chief Judge issued a standing order addressing the standards for e-filing and document access and, under *Younger*, the district court should have abstained from adjudicating a constitutional challenge to a state official's performance of that order. It is well established that a state official acting pursuant to a lawful state court order has quasi-judicial immunity from any civil claims based upon the execution of that order. *See, e.g., Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir. 1986). The reason for this is simple: if a court has absolute immunity from suit for issuing an order, the official executing that order should have the same immunity. The same rationale applies here. If a federal court would abstain from enjoining orders issued in a live state court suit, *see Milchtein*, 880 F.3d at 898, then it should likewise abstain from enjoining a state official like the Circuit Clerk who is charged with executing such orders.

Even if the Chief Judge had not issued his standing order, Order 2014-02, it is well established that deferral courts should abstain from hearing constitutional challenges to state court practices. *See O'Shea v. Littleton*, 414 U.S. 488 (1973).

In *O'Shea*, the plaintiffs sought to enjoin state judges from discriminating against African Americans in certain criminal court proceedings. *O'Shea*, 414 U.S. at 491-92. In holding that the district court should have abstained from hearing the class claims, the United States Supreme Court recognized that abstention doctrines are not limited to federal lawsuits that interfere with ongoing state proceedings, as was the case in *Younger*. The Court extended *Younger* to hold that "an injunction aimed at controlling or preventing the occurrence of specific events that might take

place in the course of future state criminal trials" amounted to "nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger* . . . sought to prevent." *Id.* at 500.

Importantly, the Court further held that abstention is appropriate to prevent federal courts from becoming monitors of state-court operations: "[M]onitoring of the operation of state court functions . . . is antipathetic to established principles of comity," and amounts to "a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state criminal proceedings," which would sharply conflict "with the principles of equitable restraint…." *Id.* at 501-02. *Accord Rizzo*, 423 U.S. at 378-80 (following *O'Shea* and holding that the district court should have abstained from deciding a motion for a motion for mandatory injunction to direct the Philadelphia police department to draft comprehensive internal procedures to address civilian complaints). *O'Shea* is on point and dispositive here.

The applicability of *O'Shea* in this appeal goes back to the very structure of this lawsuit. CNS did not sue the Administrative Office of the Illinois Courts ("AOIC") or the Chief Judge and did not challenge the constitutionality of the "accept/reject requirement" in the Standards and Order 2014-02 even though the AOIC and the Chief Judge promulgated the rules at issue here.[8]

8 The district court found that the Circuit Clerk's "argument that she is not a proper defendant in this case . . . misses the mark." *Courthouse News Service*, 2018 U.S. Dist. LEXIS 2816 at *8. (Appendix at A6.) The district court misperceived the Circuit Clerk's argument: the Circuit Clerk simply pointed out that if CNS had

Instead, CNS challenged the Circuit Clerk's practice of the following the "accept/reject requirement" that the Illinois courts require. Under *Younger* and *O'Shea*, the district court should not have exercised jurisdiction over Plaintiff's motion for preliminary injunction or any other motion in this case. As the First Circuit has recognized, while the *Younger* abstention doctrine would not require abstention to a constitutional challenge to a state statute, it would require a federal court to abstain from a constitutional challenge to ongoing state proceedings or practices. *Planned Parenthood League v. Bellotti*, 868 F.2d 459, 467 (1st Cir. 1989).

In *Bellotti,* the district court abstained from hearing a constitutional claim challenging a Massachusetts statute regulating abortion. The First Circuit noted that the district court:

> based its decision on the assumption that it was being asked to interfere directly with state court practices. . . . Thus, the district court erroneously relied on *Parker v. Turner*, 626 F.2d 1 (6th Cir. 1980), where the federal court was asked in effect to monitor "the manner in which state juvenile judges conducted contempt hearings in non-support cases," *id.* at 8, and on *O'Shea v. Littleton*, 414 U.S. 488 (1973), where the federal court was expected to see to it that a county magistrate and judge stopped their practices in setting bonds arbitrarily, imposing harsher than usual sentences, and requiring payment for jury trials for black plaintiffs. Under the defendants' characterization of the nature of this litigation, accepted by the court, these authorities might be applicable. But these cases were not statutory challenges, and thus the acceptable remedy of invalidating the statute was not available. *O'Shea*, 414 U.S. at 500; *Parker*, 626 F.2d at 6. The instant case challenges the statute as unconstitutional. This is therefore not a case threatening interference with ongoing state proceedings or practices.

---

brought a direct constitutional challenge to Order 2014-02 and the Standards, she would not be the proper defendant to such a lawsuit.

*Bellotti*, 868 F.2d at 467. *Accord E.T. v. Cantil-Sakauye*, 682 F.3d 1121, 1124 (9th Cir. 2012) (following *O'Shea* and affirming the dismissal of a complaint that "necessarily require[d] the court to intrude upon the state's administration of its government, and more specifically, its court system.")[9]

The district court, however, declined to abstain from hearing the preliminary injunction motion. *Courthouse News Service*, 2018 U.S. Dist. LEXIS 2816 at *7 (finding that the Circuit Clerk's "contention that the *Younger* abstention doctrine applies to this case lacks merit"). (Appendix at A5.) The district court found that "there are simply no ongoing state judicial proceedings with which CNS's requested injunctive relief might interfere" and that "[f]or that reason alone, *Younger* abstention is not appropriate." *Id.*

Like the instant case, *O'Shea*, *Parker* and *E.T.* did not concern an ongoing state court case but rather a state court practice. Nonetheless, *Younger* still mandated federal court abstention in those cases from constitutional challenges to

---

9 Despite the decision in *E.T.*, the jurisprudence of the Ninth Circuit is this area is somewhat murky. In addition to deciding *E.T.*, the Ninth Circuit also decided *Courthouse News Service v. Planet*, 750 F.3d 776 (9th Cir. 2014) ("*Planet I*"). In *Planet I*, the Ninth Circuit held that the district court should not have abstained from hearing CNS' First Amendment claim that the Superior Court of Ventura County, California violated the First Amendment by withholding certain newly filed complaints from public view until they have been fully processed. *Planet I* drew a distinction between federal intrusion into state court procedure and federal intrusion into state processing of the filing of civil complaints. This is a distinction without a difference. It was the plaintiffs' request for federal monitoring of state court practices (which encompass rules of court and rules for the filing of complaints) -- and not federal monitoring of the substance of individual state court cases -- that warranted the application of *Younger* abstention in *O'Shea.* The Court, therefore, should follow *Rizzo*, *Bellotti*, *Parker* and *E.T.* as those four cases properly applied *O'Shea* and *Planet I* did not.

such practices. And, in any event, Order 2014-02 is a pending state court order that directed the Circuit Clerk to engage in the following practice: check for thirteen categories of excluded documents -- including documents containing confidential information and documents containing personal identity information -- before deciding whether to accept a newly submitted complaint. (R. 19-2, ¶2(c).) Under *Younger*, the district court should have abstained from hearing the constitutional challenge to this practice. If CNS wished to bring this exact lawsuit against the Circuit Clerk, an Illinois court could have heard it. *See Welch v. Johnson*, 907 F.2d 714, 722, n. 8 (7th Cir. 1990), *citing Martinez v. California*, 444 U.S. 277, 283, n. 7 (1980) (recognizing that State courts have concurrent jurisdiction over Section 1983 claims).

Under *Younger* and *O'Shea*, this Honorable Court should reverse the decision below and remand with instructions to dismiss CNS' claims against the Circuit Clerk for lack of subject matter jurisdiction.

## II. Plaintiff's First Amendment Claim Against the Circuit Clerk Lacks Merit.

Putting aside the issues of subject matter jurisdiction and abstention on the grounds of federalism and comity, the preliminary injunction order entered below suffers from another infirmity: the district court erroneously held that Plaintiff is likely to succeed on the merits of its First Amendment claim.

As the exhibits that CNS attached to its own motion for preliminary injunction establish, the Circuit Clerk currently provides access to 90.9% of

electronically filed complaints within one business day.[10] Despite this fast turnaround, Plaintiff filed a complaint asking the district court to declare that the Circuit Clerk's practice of performing the "accept/reject function" prior to providing immediate and contemporaneous access to newly submitted complaints violates the First Amendment. (R. 1.) The district court adopted CNS' position that the First Amendment mandates that the Circuit Clerk provide "immediate and contemporaneous" access to newly filed complaints and does not allow the Circuit Clerk's office to process such filings before providing such access. *Courthouse News Service*, 2018 U.S. Dist. LEXIS 2816 at *2 and *21-*22. (Appendix at A1, A15.) This reading of the First Amendment is inconsistent with case law recognizing the right of courts to process judicial filings. *See, e.g., Nixon v. Warner Communications*, 435 U.S. 589, 598 (1978) (recognizing that "[e]very court has supervisory power over its own records and files").

### A. The First Amendment Does Not Compel Access To Pre-Trial/Pre-Judgment Court Documents In Civil Actions.

The case law surrounding access to court documents is grounded in the common law right of access to criminal court proceedings for the purpose of assuring freedom of communication on matters relating to the functioning of government, rooted in the various clauses of the First Amendment. *In re Reporters Committee for Freedom of Press*, 773 F.2d 1325, 1331 (D.C. Cir. 1985), *citing Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980).

---

10 This calculation of 90.9% is based upon records that CNS attached to its own memorandum of law in support of its motion for preliminary injunction. (R. 7.)

The extent of a constitutional right of access to criminal judicial proceedings is governed by the "experience and logic" test established in *Press-Enterprise Co.* Under this test, courts consider two "complementary considerations": (1) whether the proceeding has "historically been open to the press and general public" and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Co. v. Superior Court,* 478 U.S. 1, 8-9 (1986). CNS, as the party alleging a First Amendment right, bears the burden of establishing both parts of this threshold test. *See New Jersey Media Group, Inc. v. Ashcroft*, 308 F.3d 198, 209 (3rd Cir. 2009). CNS' position that court clerks are obligated to publish newly e-filed civil complaints to the public upon receipt, and before minimal processing for redaction of confidential information, has neither a traditional nor logical underpinning.

Turning to the "experience" prong of the *Press-Enterprise* test, courts look to whether there has been a tradition or history of access to the particular proceeding or record. *Press-Enterprise,* 478 U.S. at 8. Applying this test, the Supreme Court has recognized a qualified First Amendment right of public access to criminal trials. In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), the Court concluded that the First Amendment protects the public's right to attend criminal trials because at the time when our organic laws were adopted, criminal trials both here and in England had long been presumptively open" and that this openness had "long been recognized as an indispensable attribute of an Anglo-American trial." *Id.* at 569.

In *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982), the Supreme Court held that the press and general public have a constitutional right of access to criminal trials in order to protect the free discussion of governmental affairs. *Id.* at 603-604 (citation omitted). In this regard, the Court recognized a longstanding and uniform history of open criminal trials. *Id.* at 605; *see also Press-Enterprise*, 478 U.S. at 10 (recognizing a constitutional right of access to criminal preliminary hearings in light of the "near uniform practice of state and federal courts," from 1807 to the present, of conducting preliminary hearings in open court).[11]

Significantly, the Supreme Court has never extended the First Amendment right of access to civil proceedings or to judicial records. Indeed, the Supreme Court pointed out in *Houchins v. KQED, Inc.*, 438 U.S. 1, 9 (1978), that it "has never intimated a First Amendment guarantee of a right of access to all sources of information within government control," leading some courts to conclude that "there is no constitutional right, and specifically no First Amendment right, of access to government records." *Lanphere & Urbaniak v. State of Colorado*, 21 F.3d 1508, 1511 (10th Cir. 1994).

In *Reporters Committee*, the D.C. Circuit found that the public does not have a traditional or historical right under the First Amendment to pre-trial/pre-judgment access to any court document. *Reporters Committee*, 773 F.2d at 1338-

11 While the Supreme Court has not stated how long a history of access the experience prong requires, courts are "mindful that '[a] historical tradition of at least some duration is obviously necessary, ... [or] nothing would separate the judicial task of constitutional interpretation from the political task of enacting laws currently deemed essential.'" *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 701 (6th Cir. 2002) (citation omitted).

1339. Rejecting the plaintiffs' claim of immediate access to summary judgment papers under the First Amendment, the D.C. Circuit found it could not discern a historical practice "preventing federal courts and the states from treating the records of private civil actions as private matters until trial or judgment." *Id.* at 1336.

Indeed, the court noted its "inability to find *any* historical authority, holding or dictum," mandating public access to pre-judgment records in private civil cases. *Id.* at 1335-36 (italics in original); *see also IDT Corp. v. eBay, Inc.*, 709 F.3d 1220, 1224 (8th Cir. 2013) (rejecting argument that a First Amendment right of access attaches to a civil complaint before the complaint has been subjected to an adjudication on the merits); *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (First Amendment right of access does not extend to documents filed with a motion to dismiss); *ACLU v. Holder*, 652 F. Supp. 2d 654, 661 (E.D. Va. 2009) (no right to access *qui tam* complaint, which "does not – by itself – adjudicate rights").[12]

CNS' argument equally fails to satisfy the "logic" prong of the *Press-Enterprise* test. In assessing whether a right of access would play a significant positive role in the judicial process, courts must also "take account of the flip side –

12 More recently, the Second Circuit held that the "modern trend" in federal cases is to classify civil pleadings -- other than discovery motions -- as judicial records subject to the First Amendment right of access. *Bernstein v. Bernstein, Litowitz Berger & Grossman LLP*, 814 F.3d 132, 140 (2nd Cir. 2016). *Bernstein* supports the general proposition that the public has a First Amendment right of access to civil complaints. But nothing in *Bernstein* supports CNS's position that that First Amendment right also includes the right to access civil complaints the moment they are submitted for filing.

the extent to which openness impairs the public good." *PG Publ. Co. v. Aichele*, 705 F.3d 91, 111 (3rd Cir. 2013) (citation omitted). In the instant case, logical considerations weigh strongly against an automatic access to an e-filed complaint before the Circuit Clerk has time to review the e-filed documents to ensure they do not improperly include confidential information. The Illinois Supreme Court order was designed to protect the privacy interests of litigants and witnesses. Order 2014-02 sets forth thirteen categories of excluded documents, including documents containing confidential information and documents containing personal identity information. Indeed, under the Standards and Order 2014-02, complaints that are electronically submitted to the Circuit Clerk are not considered "filed" until the Circuit Clerk's office determines that they do not improperly include excluded documents. (R. 19-1, ¶¶11, 12.) There is no doubt that instant publication of complaints which may contain personal and confidential information, without prior review, could significantly impair the public good or at the very least the privacy and confidentiality of the litigants and witnesses.

In response, CNS contends that complaints should be published immediately simply because they might lose their newsworthiness. However, newsworthiness, by itself, does not support a constitutional right of immediate access and should not be placed above the privacy and confidentiality of Illinois litigants and witnesses. In *United States v. Edwards* 823 F.2d 111 (5th Cir. 1987), the Fifth Circuit was faced with balancing the timeliness of access to the names and addresses of sequestered jurors in the middle of a criminal trial. It stated:

> We recognize the worth of timely news reported on the front page and, by contrast, the diminished value of noteworthy, but untimely, news reported on an inside page. Implicit in that assessment, however, is the fair assumption that significant news will receive the amount of publicity it warrants. The value served by the first amendment right of access is in its guarantee of a public watch to guard against arbitrary, overreaching, or even corrupt action by participants in judicial proceedings. Any serious indication of such an impropriety, would, we believe, receive significant exposure in the media, even when such news is not reported contemporaneously with the suspect event.

*Edwards*, 823 F.2d at 119.

In this case, CNS has failed to establish how the wait period to allow the Circuit Clerk to process e-filed complaints has led to a failure to report any arbitrary, overreaching or corrupt action by participants in a judicial proceeding. The Circuit Clerk currently provides access to 90.9% of electronically filed complaints within one business day. CNS' demand for immediate access to e-filed civil complaints makes no allegations that the public has been prohibited from watch guarding the judicial branch but only complains of its impaired ability to sell information to private lawyers and law firms about lucrative new lawsuits in proprietary alerts before the information otherwise becomes public. It is certainly CNS' business prerogative to seek access to legal information before it is scooped up by other news sites, but the First Amendment does not require the Circuit Clerk to give CNS immediate access to e-filed civil complaints requested for its own commercial gain.

If in criminal trials, like *Edwards*, where there is always government action involved, limitation of pre-trial or pre-judgment court documents is sometimes appropriate, certainly limitations on pre-accepted e-filed complaints may be

appropriate. In *Nixon* -- which concerned court records in a criminal case -- the Court recognized a general federal common law right to inspect and copy judicial records, but explained that the rule "is not absolute" and that "[e]very court has supervisory power over its own records and files"; thus, "the decision as to access is one best left to the sound discretion of the trial court." *Nixon*, 435 U.S. at 598-99.

In the case of a newly filed civil complaint, a judge does not have the opportunity to safeguard the release of court documents. *See Reporters Committee*, 773 F.2d at 1335 (finding that the public has no right to any information on private suits till they come up for public hearing or action in open court.) As a result, the Illinois courts have directed the Circuit Clerk to perform an initial screening process. The First Amendment does not command otherwise.

### B. The First Amendment Does Not Compel Immediate And Instantaneous Access To Newly E-Filed Civil Complaints.

No reviewing court has held that the common law right of access to court documents must include immediate and instantaneous access to pretrial documents, particularly in the case of newly e-filed civil complaints which have not yet been accepted by the court clerk. The Circuit Clerk does not contend that CNS should not have access to newly e-filed civil complaints that do not fall under some privacy or confidentiality exception. The specific constitutional question in this matter is what constitutes a reasonable delay. The district court below found that no delay could be reasonable. This position is antithetical to the First Amendment jurisprudence of the federal courts. *See Press-Enterprise*, 478 U.S. at 8-9.

The case law does not support the notion that immediate and contemporaneous access is the only manner in which access to court documents would survive a First Amendment challenge. As with all constitutional or statutory rights, such rights are not without limitation. *Zemel v. Rusk*, 381 U.S. 1, 16-17 (1965) ("The right to speak and publish does not carry with it the unrestrained right to gather information"). An individual right must always be balanced against the rights of others. Thus, Plaintiff's right of access to court documents must be balanced against the rights of litigants, witnesses, the judiciary, and the general public.

The most recent case to decide whether the First Amendment confers an immediate right of access to electronically submitted complaints is the district court decision in *Yamasaki*. *Yamasaki* rejected CNS' First Amendment claim to such immediate access.

In *Yamasaki*, as in the present case, CNS argued that it was entitled to immediate access to complaints submitted electronically before the Clerk of the Court in Orange County, California had an opportunity to review the filed submissions to ensure that they complied with California law. *Yamasaki*, 2017 U.S. Dist. LEXIS 132923 at *10. The record in *Yamasaki* shows that 89.2% of the complaints electronically submitted were available for review within one business day, 96.5% were available for review within two business days and 98.5% were available for review within three business days. The district court noted that these "minor delays . . . simply do not constitute a First Amendment violation."

*Yamasaki*, 2017 U.S. Dist. LEXIS 132923 at *10. *Yamasaki* is on point and dispositive here.

The percentage of complaints made available within one, two and three business days in *Yamasaki* and the Circuit Clerk's office here are essentially identical: 89.2%, 96.5% and 98.5% respectively in *Yamasaki* and 90.9%, 94.7% and 96.8% respectively in the instant case. The Circuit Clerk submits that *Yamasaki* is persuasive authority that this Court should follow.

In addition, the Fifth Circuit considered the merits of an analogous First Amendment claim, and squarely rejected it. *See Sullo & Bobbitt, P.L.L.C. v. Milner*, 765 F.3d 388 (5th Cir. 2014) (*per curiam*). In *Sullo*, the Fifth Circuit rejected the theory that the First Amendment establishes a right of same-day access, holding that "the district court correctly dismissed appellants' First Amendment claims because they failed to establish a constitutional right to access court records within one business day of their filing." *Id.* at 392.

In Illinois, court clerks are the highest non-judicial members of the state judiciary. *See Drury v. County of McLean*, 89 Ill. 2d 417, 420 (1982). The Circuit Clerk's purpose is to keep an accurate and reliable record of county circuit court proceedings for the judiciary, litigants and the public. 705 ILCS 105/13 (2018). Moreover, the purpose of the justice system as a whole is to seek the truth and to resolve legal disputes in a fair and efficient manner, ensuring justice of all. It is with these purposes in mind that the reasonableness of the delay in access to newly e-filed complaints should be considered.

CNS is a news organization whose purpose is to sell stories or subscriptions regarding civil litigation around the country. (R. 1, ¶¶10, 14-17.) CNS alleges that any delay in its access to newly e-filed complaints prior to official acceptance by the Clerk will harm its business advantage or profits. (R. 1, ¶19.) Harm to business profits does not necessarily invoke the First Amendment, and in this case before this Court, the harm to CNS does not have a constitutional consequence.

Any delay in CNS's ability to report the news before other news sources may hurt its business model, where CNS is in the business of providing information, particularly information about newly filed civil lawsuits, to other news organizations and law firms about civil litigation around the country. (R. 1, ¶¶10, 14-17.) Naturally, if CNS can establish itself as the news source that can access the information first, its business value increases, beating out its competitors and avoiding the chance of being "scooped" as CNS describes in its motion for preliminary injunction. (R. 1, ¶¶26, 40-41.) However, CNS's business decision to seek its civil filing information only from the Circuit Court Clerk, as opposed to the private parties and witnesses involved in the lawsuit,[13] does not invoke the First Amendment as much as it questions the business model of CNS. *Id.* Although CNS apparently relies solely on the Circuit Clerk to retrieve its information regarding all civil litigation, the Chicago Tribune example, given by CNS, shows there are other

---

13 In its motion for preliminary injunction, CNS alleged that the Chicago Tribune did exactly this when it obtained a copy of the complaint the Wrigley Field lawsuit from the original source of the complaint, the plaintiff in that case. (R. 7, pp. 6-7.)

sources of information CNS could utilize to improve its accuracy and timeliness in reporting. (R. 1, ¶40).

On the other hand, the Circuit Clerk has a different purpose in collecting a newly e-filed civil complaint; she is concerned with providing an accurate and reliable court docket and record of legal proceedings that comply with Illinois law. In effectuating that mission, the Clerk abides by the rules and regulations of both the Illinois Supreme Court and the Chief Judge of the Circuit Court of Cook County. Any delay in the posting of newly e-filed civil complaints by the Circuit Clerk is merely in an effort to provide an accurate and reliable official court record. (R. 19-1,¶7) Where CNS enjoys the informal nature of a new story, the Circuit Clerk is charged with the keeping the formal and official record of the circuit court that not only the press and public rely on, but the litigants, witnesses and the judiciary in the adjudication of a party's rights. Accuracy takes time and some delay is certainly reasonable.

The origin of the right of access to court documents is to provide the public the ability to monitor the court system and engage in meaningful discussions regarding its administration. *Nixon*, 435 U.S. at 597-598. CNS provides no allegations to support the notion that the Clerk's e-filing practices have cut short the ability of the public to monitor the court system or inhibited the meaningful discussion thereof. The only harm that CNS alleges is the harm to either its business model or its profits. (R. 1, ¶¶26-27, 40-41.)

Moreover, the district court erroneously speculates that the Circuit Clerk is purposely keeping the information regarding newly filed complaints from the press or the public. *Courthouse News Service v. Brown*, 2018 U.S. Dist. LEXIS 22922, *9 (N.D. Ill. February 13, 2018) (denying the Circuit Clerk's motion to stay the preliminary injunction). (*See also* Appendix at A22.) For that to be true, the Circuit Clerk would necessarily need to restrict access to paper filed complaints from the press and public also. However, CNS admits that it currently receives paper copies as soon the Circuit Clerk's employees at the counter in her office accept them, something that occurs in 94% of the cases. (R. 1, ¶31.) The record is devoid of any information to show that the Circuit Clerk keeps all newly filed complaints "under seal" where that is not required. Indeed, it is the constraints of the e-filing computer system that result in a "delay," a delay that does not rise to the level of a First Amendment violation.

Delay in the receipt of official documents from a government agency is not an uncommon occurrence and, in fact, is contemplated in other areas of law. For example, under the Illinois Freedom of Information Act ("FOIA"), the governmental agency is allowed five days, with the opportunity for extensions of time, to answer a FOIA request. 5 ILCS 140/3(d) (2018). Furthermore, FOIA recognizes that there are privacy and confidentiality exemptions from the documents provided to the requester and that the governmental body may redact. 5 ILCS 140/7 (2018) and 5 ILCS 140/8.5 (2018). In the area of service of process, the defendant in civil litigation must be served with a copy of the initial complaint. However, that service

is not expected to be immediate and can take up to 30 days or more to effectuate, with extensions being allowed. Ill. Sup. Ct. R. 102. Where the actual person being sued is not expected to have instantaneous or immediate service of the complaint, it is not unreasonable that others, the public or the press, wait the time period for the Circuit Clerk to process the newly filed complaint and accept it as an official court document, which is the next business day, in the vast majority of cases. (R. 7; R. 19.)

As part of her duties, the Circuit Clerk must institute a computerized system in accordance with the Illinois Supreme Court order providing for a mandatory e-filing system by June 30, 2018. (R. 37-3.) No doubt there will be difficulties in the arduous task of converting one of the largest consolidated court systems in the country from paper to all electronic filing, and particularly where the Circuit Clerk must not only provide e-filing services but must also provide paper filing until that date, her staffing and resources are strained. Even in spite of that, the Circuit Clerk has provided newly e-filed complaints in a manner consistent with the First Amendment.

CNS cannot seriously dispute that under the paper filing system -- one that CNS claims provided constitutional access to newly filed complaints -- the process required a Circuit Clerk employee to take time to review the documents for compliance, time to collect the appropriate fee, time to stamp the documents and time to assign a case number in the appropriate court division. It was only after the completion of this paper accepting process that a newly filed complaint was

provided to the press, and even then, by way of collection in a wire basket, where the press would then pick up the newly filed complaint at its leisure. (R. 1, ¶¶ 29-30.) That process can hardly be called instantaneous or immediate.

So too does the computerized process require a Clerk employee to take time to log into the system, review the documents for compliance with Illinois rules and regulations, check that the filer submitted the proper fee, and to electronically accept the document into the Circuit Clerk's computer system. It is only after that electronic acceptance has occurred that the document can be stored into the Circuit Clerk's computer system where the Circuit Clerk would have control over the storage and availability of the e-filed document. (R. 19-2, ¶2(c).)

To accurately compare CNS' claim regarding newly e-filed complaints to newly paper filed complaints, CNS' request would demand that a litigant present a copy of the paper complaint to the deputy circuit clerk at the counter and then turn to a member of the press and hand them another unstamped, unaccepted copy of the complaint. Neither case law, nor any notions of reasonableness, can support such a filing method.

Complicating the Circuit Clerk's review of newly e-filed civil complaints, the person filing the electronic document is now the arbiter of deciding the appropriate filing fee and the assignment of the proper division within the court system. The computerized system does not review the content of the filing. Thus, where a deputy circuit clerk once resolved these matters at the filing counter, the computer system is not equipped to do so. The Circuit Clerk's review of newly e-filed civil complaints

is not unreasonable, for without such review no one would be able to regulate such issues prior to publication of the new complaint to the public.

Despite CNS' claims, both the Circuit Clerk's paper and electronic filing processes described above are reasonable. Accurately processing newly filed civil complaints takes time and where 90.9% of e-filed complaints are available the next business day, it cannot be said to be unreasonable, where other wait periods for governmental documents are considerably longer (*i.e.* FOIA, service of process).

Furthermore, CNS' claims that any delay harms its ability to accurately report on a court filing fail to present the full story. A true and accurate news article would require a copy of the official e-filed complaint, not a mere copy of an unofficial submission. This is true for several reasons. First, a newly e-filed complaint, prior to being electronically accepted by a Clerk employee, can be "pulled back" from the computerized e-filing system as if it were never filed in the first place. Second, a newly submitted complaint can be rejected for a variety of reasons, making that submission a nullity. The United States Supreme Court warned of the dangers attendant to releasing pre-trial or pre-judgment court documents in *Nixon*:

> For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not "used to gratify private spite or promote public scandal" through the publication of "the painful and sometimes disgusting details of a divorce case." *In re Caswell*, 18 R. I. 835, 836, 29 A. 259 (1893). Accord, *e. g., C. v. C.*, 320 A. 2d 717, 723, 727 (Del. 1974). *See also King v. King*, 25 Wyo. 275, 168 P. 730 (1917). Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption, *Park v. Detroit Free Press Co.*, 72 Mich. 560, 568, 40 N. W. 731, 734-735 (1888); *see Cowley v. Pulsifer*, 137 Mass. 392, 395 (1884) (per Holmes, J.); *Munzer v. Blaisdell*, 268 App. Div. 9, 11, 48 N. Y. S. 2d 355, 356 (1944); *see also Sanford v. Boston Herald-Traveler Corp.*, 318 Mass.

> 156, 158, 61 N. E. 2d 5, 6 (1945), or as sources of business information that might harm a litigant's competitive standing, *see*, *e. g., Schmedding v. May,* 85 Mich. 1, 5-6, 48 N. W. 201, 202 (1891); *Flexmir, Inc. v. Herman,* 40 A. 2d 799, 800 (N. J. Ch. 1945).

*Nixon*, 435 U.S. at 597-98.

Contrary to the proposition that no delay is reasonable, the district court found that providing access to newly e-filed complaints at computer terminals in the Clerk Clerk's Office press room during office hours would satisfy the First Amendment. *Courthouse News Service v. Brown*, 2018 U.S. Dist. LEXIS 22922 at *6. (*See also* Appendix at A20-21, 26-27.) If so, the obvious delays caused by after hour filings, weekends and holidays, where the press room in the Circuit Clerk's Office would be closed and unavailable, undermines the very claim that the First Amendment commands immediate and instantaneous access. Moreover, these type of delays caused by after hour filings, weekends and holidays also occurred under the paper filing system that CNS claims provided it with superior access to newly filed complaints. If such delays under the paper filing system did not violate the First Amendment, neither do they do so under the e-filing system.

In further support of its First Amendment claim to immediate and contemporaneous access, CNS cites the Illinois Supreme Court's rule for the date and time of filing. (R. 7.) CNS' reading of the rule is not consistent with the rule's purposes. The Illinois Supreme Court, to be sure, has promulgated a rule stating that the date and time that the Circuit Clerk's office receives a document by way of electronic filing will be the date and time recognized for purposes of filing. (R. 7-6) While that rule was designed to benefit litigants with respect to meeting deadlines

such as applicable statutes of limitation, it was not intended to nullify the Circuit Clerk's duty under Illinois law to perform the "accept/reject" function with respect to newly filed e-complaints.

It is worth noting that CNS has instituted similar federal lawsuits challenging other court clerks for not providing newly e-filed complaints immediately and instantaneously. In this regard, under the rubric of the First Amendment, CNS seeks to federalize the manner in which state courts process newly filed complaints. Not only is this inconsistent with *Younger* and *O'Shea* but it also goes against decades of jurisprudence recognizing that state courts are best positioned to oversee the practice in their courts. *See, e.g., Gregory v Ashcroft*, 501 U.S. 452, 460 (1991) (state court's review and processing of civil cases is an area traditionally regulated by the States and should be exclusive and free from external interference, limited only by the Constitution of the United States).

Comparatively, the Public Access to Court Electronic Records ("PACER") search page on the federal district court website states that "[n]ewly filed cases will typically appear on this system within 24 hours. Check the Court Information page for data that is currently available on the PCL. The most recent data is available directly from the court." This Court, of course, may take judicial notice of court records, including the PACER website. *See, e.g., Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994) (holding that the district court properly took notice of public court documents when deciding a motion to dismiss). Under the preliminary

injunction order, the Circuit Clerk is being held to a more rigorous standard than the one that the federal courts employ.

The most pragmatic approach to answer the question of how much delay is reasonable is that access to circuit court documents must be made available at the earliest time as practicable. At a minimum, the First Amendment does not require immediate and contemporaneous access in derogation of all state court oversight.

## III. Plaintiff Did Not Establish The Elements For A Preliminary Injunction.

As this Court recently recognized, "[a]n equitable, interlocutory form of relief, 'a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.'" *Valencia*, 2018 U.S. App. LEXIS 5161 at *9, *citing Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of America, Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008).

The district court recognized that "[a] plaintiff seeking a preliminary injunction must establish: (1) a likelihood of success on the merits, (2) that, in the absence of such relief, it is likely to suffer irreparable harm, (3) that the balance of equities tips in the plaintiff's favor, and (4) that an injunction is in the public interest." *Courthouse News Service*, 2018 U.S. Dist. LEXIS 2816 at *7, *citing Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) and *Higher Society of Indiana v. Tippecanoe County*, 858 F.3d 1113 (7th Cir. 2017). (Appendix at A5.)

This Court has recognized that:

> During the balancing phase of the preliminary injunction analysis, the goal of the court is to choose the course of action that minimizes the costs of being mistaken . . . To do so, the court must compare the potential irreparable harms faced by both parties to the suit--the

> irreparable harm risked by the moving party in the absence of a preliminary injunction against the irreparable harm risked by the nonmoving party if the preliminary injunction is granted . . . We evaluate these harms using a sliding scale approach. *Id.* The more likely it is that [the plaintiff] Manitou will win its case on the merits, the less the balance of harms need weigh in its favor . . . Conversely, if it is very unlikely -- albeit better than negligible, as we have already determined -- that Manitou will win on the merits, the balance of harms need weigh much more in Manitou's favor . . . When conducting this balancing, it is also appropriate to take into account any public interest, which includes the ramifications of granting or denying the preliminary injunction on nonparties to the litigation . . . This analysis is "'subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief.'"

*Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1100 (citations omitted).

Here, the Circuit Clerk has advanced meritorious defenses to CNS' motion for preliminary injunction: the district court lacked subject matter jurisdiction under the *Younger* abstention doctrine and the First Amendment does not require immediate access in contravention of reasonable processing rules. CNS will not and cannot succeed on the merits of its First Amendment claim against the Circuit Clerk in this lawsuit. As CNS cannot succeed on the merits, this Court need not consider if Plaintiff satisfied the other elements for a preliminary injunction. In any event, CNS did not meet these other elements.

For example, CNS made no showing of any harm that it sustained because the Circuit Clerk performs the "accept/reject" function before providing access to electronically filed complaints. The Circuit Clerk currently provides access to 90.9% of electronically filed complaints within one business day. This percentage is less than the number of electronic complaints processed in one business day in *Courthouse News Service v. Yamasaki*, 2017 U.S. Dist. LEXIS 132923 (C.D. Cal.

August 7, 2017), a case where the district court rejected CNS' claim that the First Amendment requires immediate access for 100% of complaints electronically filed, regardless of court filing rules. In its complaint, Plaintiff alleged that "from June 2017 through September 2017, only about 60% of new e-filings were made available to the press on the same day of filing." (R. 1, ¶32.) This allegation is horribly misleading and improper.[14]

As CNS' own documents show, many of the 40% of the new e-filings referenced in this allegation were filed on a Friday before a weekend or late in the business day. (R. 7; R. 7-5, pages 33 through 130 of 152.) Thus, Plaintiff's allegation that "only about 60% of new e-filings were made available to the press on the same day of filing" is not a proper allegation because the attachments to the complaint contradict it and the attachments control. *See Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010) (holding that a document outside the pleadings controls when it is incorporated by reference or attachment and directly contradicts the assertions in

---

14 The district court stated that "CNS and [Circuit Clerk] Brown quibble over how these delays are counted and characterized." *Courthouse News Service*, 2018 U.S. Dist. LEXIS 2816 at *7, n. 1. (Appendix at A3.) It is hardly a quibbling matter when a party makes a misleading allegation: noting that only 60% of new e-filings "were made available to the press on the same day of filing" but failing to state that: (1) 90.9% of new e-filings were made available within one business day and (2) statistics which Plaintiff cite to purportedly show that filings were not provided within one day make no account for filings late in the day or on a Friday before a weekend. Indeed, CNS counted Saturdays and Sundays when describing the number of "days" it took the Circuit Clerk to provide access to new e-filed complaints. Misleading arguments are disfavored. *See, e.g., Jones v. Phipps*, 39 F.3d 158, 166 (7th Cir. 1994) (noting that misleading arguments are sanctionable); *Klein v. O'Brien*, ____ F.3d ____, 2018 U.S. App. LEXIS 5950, *7 (March 9, 2018) (noting that "[p]retense gets a lawyer nowhere").

the complaint). CNS has not shown how the provision of all but 9.1% of newly filed e-complaints within one business caused it to sustain irreparable harm.

With respect to preliminary injunctive relief against the Circuit Clerk, the balancing of equities does not tip in Plaintiff's favor. Under Illinois law, Circuit Clerks are public officials who are presumed to perform their duties under Illinois law. *See People v. Gutierrez*, 387 Ill. App. 3d 1, 7 (1st Dist. 2008), *citing Lyons v. Ryan*, 201 Ill. 2d 529, 539 (2002). *Gutierrez* cited *Lyons* for the proposition that courts presume public officials, such as circuit clerks, "perform functions of their offices according to law and do their duties." The Circuit Clerk is the highest non-judicial member of the State court judiciary in Illinois. *Drury*, 89 Ill. 2d at 420. The Circuit Clerk is a State officer. *Id.* And as *Drury* shows, the Circuit Clerk is duty bound to follow the orders of the Illinois courts.

In Illinois, the rules of statutory construction apply to the interpretation of Illinois Supreme Court Rules. *In re Estate of Rennick*, 181 Ill. 2d 395, 404 (1998). The goal is "to ascertain and give effect to the intention of the drafters of the rule." *Id.*, *citing Croissant v. Joliet Park Dist.*, 141 Ill. 2d 449, 455 (1990). As with statutes, the "most reliable indicator of intent is the language used, which should be given its plain and ordinary meaning." *Rennick*, 181 Ill. 2d at 405.

Applying those principles here to the Standards and Order 2014-02, complaints that are electronically submitted to the Circuit Clerk are not officially "filed" until the Circuit Clerk's office determines that they do not contain excluded documents. Pursuant to Illinois law, the Circuit Clerk must determine whether

newly submitted complaints have attachments that are prohibited under the Chief Judge's order. (R. 19-2, ¶2(c).) Applying the plain language of these rules, the Illinois courts have ordered the Circuit Clerk to follow the practice of accepting or rejecting newly e-filed complaints before providing the press or anyone else with access to such complaints. (R. 19-2, ¶2(c); R. 19-3.) An order directing the Circuit Clerk to disobey these rules and provide immediate and contemporaneous access to new e-filings is not a balance of equities. It is an imbalance in favor of CNS and against the orderly operation of the Illinois courts.

Finally, the preliminary injunction below was not in the public interest. The district court found that prohibiting the Circuit Clerk "from enforcing her policy of withholding e-filed civil complaints until official acceptance and requiring her to provide contemporaneous access to the e-filed complaints upon receipt is in the public interest." *Courthouse News Service*, 2018 U.S. Dist. LEXIS 2816 at *21-*22. (Appendix at A16.) This is incorrect, as the burden of following conflicting directives from the federal and state courts sows confusion and is contrary to the public interest.

The Circuit Clerk currently provides access to 90.9% of newly e-filed complaints within one business day of submission. (R. 7.) The record is devoid of any evidence of harm to the public due to the 24 hour processing period. However, the existence of conflicting directives from the federal and Illinois courts regarding the rules for processing the filing of complaints would harm the public interest because it muddles the operation of the State court system.

The Circuit Clerk could provide "contemporaneous access" to electronically submitted complaints or she could perform the "accept/reject function" as set forth in the Standards and Order 2014-02 before providing electronic access to newly submitted complaints. But she cannot comply with the district court's preliminary injunction order and the Illinois courts' mandates at the same time. The preliminary injunction was injurious to the public's interest in the orderly operation of the state court system in Cook County, Illinois.

The district court, therefore, abused its discretion when it found that CNS satisfied the elements of a preliminary injunction.

## CONCLUSION

For the foregoing reasons, this Court should reverse the decision of the district court granting Plaintiff's motion for preliminary injunction and remand this case with instructions to dismiss this lawsuit against the Circuit Clerk for lack of subject matter jurisdiction.

Respectfully submitted,

KIMBERLY M. FOXX
State's Attorney of Cook County

By: */s/Paul A. Castiglione*
Assistant State's Attorney

Kent S. Ray
Assistant State's Attorney
Interim Chief, Civil Actions Bureau

Paul A. Castiglione
Margarett S. Zilligen
Oscar Kpopta
Assistant State's Attorneys

*Of Counsel*

No. 18-1230

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| **Courthouse News Service,**<br><br>**Plaintiff-Appellee,**<br><br>**v.**<br><br>**Dorothy Brown in her official capacity as Clerk of the Circuit Court of Cook County,**<br><br>**Defendant-Appellant.** | **On Appeal from the United States District Court for the Northern District of Illinois, Eastern Division**<br><br>**Case No. 17 C 7933**<br><br>**The Honorable Matthew F. Kennelly, Judge Presiding** |

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,578 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 12 point font and footnotes in 12 point font in Century.

/s/ *Paul A. Castiglione*
Paul A. Castiglione
Assistant State's Attorney

*Attorney for*
*Defendant-Appellant*

Dated: March 13, 2018

No. 18-1230

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| **Courthouse News Service,**<br><br>**Plaintiff-Appellee,**<br><br>**v.**<br><br>**Dorothy Brown in her official capacity as Clerk of the Circuit Court of Cook County,**<br><br>**Defendant-Appellant.** | **On Appeal from the United States District Court for the Northern District of Illinois, Eastern Division**<br><br>**Case No. 17 C 7933**<br><br>**The Honorable Matthew F. Kennelly, Judge Presiding** |

CIRCUIT RULE 31(e)(1) CERTIFICATION

I, the undersigned, counsel for the Defendant-Appellant Dorothy Brown, Clerk of the Circuit Court of Cook County, hereby certify that I have filed electronically, pursuant to Circuit Rule 31(e), a version of the brief, in PDF format to the web site via the internet.

/s/ *Paul A. Castiglione*
Paul A. Castiglione
Assistant State's Attorney
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-2350
paul.castiglione@cookcountyil.gov

## CERTIFICATE OF SERVICE

I, the undersigned, counsel for the Defendant-Appellant, hereby certify that on March 13, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ *Paul A. Castiglione*
Paul A. Castiglione
Assistant State's Attorney
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-2350
paul.castiglione@cookcountyil.gov

Dated: March 13, 2018

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), I, the undersigned, counsel for the Defendant-Appellees, hereby certify that all materials required by Circuit Rule 30(a) and (b) are included in the appendix.

s/ *Paul A. Castiglione*
Paul A. Castiglione
Assistant State's Attorney
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-2350
paul.castiglione@cookcountyil.gov

Dated: March 13, 2018

# CIRCUIT RULE 30(a) APPENDIX

TABLE OF CONTENTS OF CIRCUIT RULE 30(a) APPENDIX

Memorandum Opinion and Order (Docket #142) in *Courthouse News Service v. Brown*, 17 C 7933 dated January 8, 2018 .......... A1

Memorandum Opinion and Order (Docket #142) in *Courthouse News Service v. Brown*, 17 C 7933 dated October 8, 2015 .......... A17

Transcript of Proceedings for January 17, 2018 in *Courthouse News Service v. Brown*, 17 C 7933 .......... A24

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **COURTHOUSE NEWS SERVICE,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Case No. 17 C 7933** |
| **DOROTHY BROWN, in her official capacity as the Clerk of the Circuit Court of Cook County, Illinois** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Courthouse News Service (CNS) has sued Dorothy Brown, in her official capacity as the Clerk of the Circuit Court of Cook County, for injunctive and declaratory relief under 42 U.S.C. § 1983. CNS alleges violations of the First Amendment stemming from Brown's policy of withholding electronically-filed (e-filed) civil complaints from the press and the public until after they have been processed and officially "accepted" for filing by the Clerk's Office. CNS alleges that the resulting delay in access to new complaints constitutes a denial of timely and contemporaneous access to court records in violation of the First Amendment of the U.S. Constitution. CNS has moved for a preliminary injunction prohibiting Brown from enforcing her policy of withholding e-filed complaints until administrative processing is complete and requiring her to provide timely, contemporaneous access to the complaints upon filing. For the following reasons, the Court grants CNS's motion for a preliminary injunction.

**Background**

Courthouse News Service is a news service that covers civil litigation news from over 2,500 state and federal courts across the nation. Its subscribers include law firms, law schools, and other news media outlets. In addition to reporting on legal news through its website and various other publications, CNS provides written summaries of newsworthy new civil complaints in a "New Litigation Reports" e-mail publication that is sent to subscribers on a daily basis. To prepare the New Litigation Reports, CNS reporters typically visit their assigned courts to review new complaints in person, although some courts now make new complaints accessible over the Internet.

According to CNS, since it began covering the Circuit Court of Cook County in 1997, reporters have been afforded access to new paper-filed complaints on the same day they are filed. Specifically, press copies of new paper complaints are placed in a bin or tray behind the intake counter, and members of the press are permitted to reach over the counter to retrieve and review the press copies.

After the Circuit Court was selected to participate in Illinois's electronic filing pilot program in 2009, it became one of the first courts in Illinois to implement an optional electronic filing system. Prior to January 2015, the Clerk's Office simply printed out new e-filed complaints as they came in, which allowed reporters to review the e-filed complaints along with the paper ones. In January 2015, however, the Clerk's Office stopped printing e-filed complaints for the press. As a result, reporters now are unable to review new e-filed complaints until they are processed and posted electronically to computer terminals in the Clerk's Office and the courthouse press room. As a consequence of this change in policy, the press is not able to access a significant

number of e-filed complaints until at least the next business day after they are filed. According to CNS, from June 1, 2017 to September 30, 2017, only 61 percent (1462 of 2414) of new e-filed complaints were made accessible on the same day they were filed, in contrast with 94 percent (2917 of 3119) of new paper complaints. *See* Pl.'s Mem. in Support of Mot. for Prelim. Inj. (Pl.'s Mem.), Ex. C (Angione Decl.), Ex. 4 at 1. Brown counters that, during that same period, 90.9 percent of e-filed complaints were publicly available within one business day of filing, 94.7 percent were accessible within two business days, and 96.8 percent within three business days.[1] *See* Def.'s Resp. to Pl.'s Mot. for Prelim. Inj. (Def.'s Resp.) at 3.

In January 2016, the Illinois Supreme Court issued an order directing all Illinois Circuit Courts to make electronic filing of civil cases mandatory by January 1, 2018. (The Supreme Court recently extended by several months the date for compliance by the Circuit Court of Cook County.) In early 2017, in light of the anticipated transition to mandatory e-filing, CNS contacted the Clerk to discuss the delays in access to e-filed complaints and propose various solutions. To that end, CNS sent the Clerk two memoranda explaining how other state courts provide media and public access to e-filed complaints prior to processing. As CNS explained, a Las Vegas trial court and four trial courts in Georgia have created an electronic in-box queue, which allows the press to view complaints immediately upon receipt, before they have been processed and

[1] CNS and Brown quibble over how these delays are counted and characterized. Brown argues that CNS inflates the length of delays by counting holidays and weekends, and CNS takes issue with Brown's attempt to measure delays in terms of "business hours." These disputes over the exact length of the delays are immaterial to the Court's assessment of CNS's likelihood of success on the merits.

assigned a case number. CNS noted that access to such an electronic in-box could be provided remotely over the Internet or locally at courthouse computer terminals. CNS also provided a detailed description of the New York State Court Electronic Filing system website that makes newly filed documents remotely available to the public prior to manual review by the New York County Clerk's Office. CNS further noted that "the great majority of federal courts," including this one, make electronically filed documents available immediately upon receipt. Pl.'s Mem., Ex B (Girdner Decl.), Ex 8 at 3.

CNS received a written response from Brown in June 2017. The response, which was signed by the Clerk's general counsel Kelly Smeltzer, stated that e-filed complaints are not considered to be received or filed until they are accepted by the Clerk's Office. Girdner Decl., Ex. 11 (Smeltzer Letter). In support of this position, Brown cited General Administrative Order No. 2014-02 and the Illinois Supreme Court's Electronic Filing Standards and Principles, both of which provide that electronically submitted documents shall be considered filed "if not rejected" by the Clerk's Office. Def.'s Resp., Ex. B (Order No. 2014-02) at 3, Ex. C (Electronic Filing Standards and Principles) at 1. Brown further noted that providing access to e-filed complaints prior to acceptance by the Clerk's Office could create "mass confusion . . . leading to false reporting and potential liability for the court and the press" if the press reported on a complaint that was ultimately rejected for failure to comply with court rules. Smeltzer Letter at 2. Brown stated that she had no intention of changing her policy of withholding access to new e-filed complaints until they are officially accepted and electronically posted to the courthouse computer terminals.

CNS brought this action for injunctive and declaratory relief against Brown in

November 2017, and it moved for a preliminary injunction a short time later. Brown argues that the Court should deny CNS's motion because CNS cannot demonstrate a likelihood of success on the merits. Brown also contends that CNS cannot establish that any of the other requirements for the issuance of a preliminary injunction are met in this case.

## Discussion

A plaintiff seeking a preliminary injunction must establish (1) a likelihood of success on the merits, (2) that, in the absence of such relief, it is likely to suffer irreparable harm, (3) that the balance of equities tips in the plaintiff's favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Higher Soc'y of Indiana v. Tippecanoe Cty.*, 858 F.3d 1113, 1116 (7th Cir. 2017). In cases implicating the First Amendment, "the [plaintiff's] likelihood of success on the merits will often be the determinative factor." *Higher Society*, 858 F.3d at 1116 (citation omitted). Preliminary injunctions requiring an affirmative act by the defendant are "ordinarily cautiously viewed and sparingly issued." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997).

As an initial matter, Brown's contention that the *Younger* abstention doctrine applies to this case lacks merit. Notwithstanding Brown's strained attempt to characterize the case as a challenge to "an ongoing, standing" Cook County Circuit Court order that supposedly requires the Clerk to review and officially accept or reject e-filed complaints prior to making them accessible to the public, there are simply no ongoing state judicial proceedings with which CNS's requested injunctive relief might interfere. Def.'s Resp. at 7. For that reason alone, *Younger* abstention is not

appropriate. *See Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) ("Absent any *pending* proceeding in state tribunals, therefore, application by the lower courts of *Younger* abstention was clearly erroneous.") (emphasis in original); *Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996) (a "paramount concern[ ]" in the *Younger* abstention context is that "the judicial or judicial in nature state proceedings must be on-going").

Brown's argument that she is not a proper defendant in this case likewise misses the mark. Brown contends that, by reviewing e-filed complaints before "posting them as filed," she is merely following the mandates of the Illinois Supreme Court and the Chief Judge of the Circuit Court of Cook County, as set forth in Order No. 2014-02 and the Electronic Filing Standards and Principles. Def.'s Resp. at 8. Thus, according to Brown, "CNS'[s] actual complaint is with the filing requirements of Order 2014-[02] and the Electronic Filing Standards and Principles and not with the Circuit Clerk's compliance with those requirements." *Id.* The problem with this argument is that Brown points to nothing in Order No. 2014-02 or in the Electronic Filing Standards and Principles that requires her to accept or reject or otherwise process e-filed complaints prior to making them available to the public in some form. Instead, Brown simply asserts that Order No. 2014-02 and the Electronic Filing Standards and Principles provide that the complaints are not "filed" until accepted. In fact, what they actually say is that electronically submitted documents shall be considered filed "if not rejected" by the Clerk's Office. Order No. 2014-02 at 3; Electronic Filing Standards and Principles at 1. Because the Electronic Filing Standards and Principles and Order No. 2014-02 are silent regarding whether the Clerk's Office may provide public access to e-filed

complaints prior to official acceptance—and because CNS claims instead that the allegedly unconstitutional delays in access to e-filed complaints stem specifically from Brown's policy of withholding them from the press until they are processed—Brown is the proper defendant in this action for prospective relief. *See, e.g.*, *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (to survive summary judgment on a section 1983 official-capacity claim, the plaintiff must show that an official policy or custom was the moving force behind the alleged constitutional violation); *Williams v. State of Wisconsin*, 336 F.3d 576, 581 (7th Cir. 2003) ("Official-capacity suits against state officials seeking prospective relief are permitted by § 1983. . . .").

"The public's right of access to court proceedings and documents is well-established." *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994).[2] As the Seventh Circuit has explained, "[p]ublic scrutiny over the court system serves to (1) promote community respect for the rule of law, (2) provide a check on the activities of judges and litigants, and (3) foster more accurate fact finding." *Id.* Although this right of access, which stems both from the common law and from the First Amendment, is well-established, it is not absolute. *Id.* Specifically, "the First Amendment provides a presumption that there is a right of access to proceedings and documents which have historically been open to the public and where the disclosure of

[2] The Seventh Circuit observed in *Bond v. Utreras*, 585 F.3d 1061, 1068 n.4 (7th Cir. 2009), that, to the extent *Grove Fresh* was "premised upon a principle that pre-trial discovery must take place in . . . public unless compelling reasons exist for denying the public access to the proceedings," it was superseded by the 2000 amendment to Rule 5 of the Federal Rules of Civil Procedure. (internal quotation marks and citations omitted). That observation does nothing to undermine *Grove Fresh*'s general analysis of the First Amendment right of access to judicial documents and proceedings outside the pre-trial discovery context.

which would serve a significant role in the functioning of the process in question." *In re Associated Press*, 162 F.3d 503, 506 (7th Cir. 1998) (internal quotation marks and citations omitted). Although the presumption of access may be rebutted by a showing that suppression is "necessary to preserve higher values and . . . narrowly tailored to serve those interests," overcoming the presumption is a "formidable task." *Id.* (internal quotation marks and citation omitted). A court must resolve any doubts in favor of disclosure. *See Grove Fresh*, 24 F.3d at 897.

The Seventh Circuit has repeatedly observed that, where a First Amendment right of access is found, such access should be "immediate and contemporaneous." *Id.*; *see also In re Associated Press*, 162 F.3d at 506 ("[T]he values that animate the presumption in favor of access require as a necessary corollary that, once access is found to be appropriate, access ought to be immediate and contemporaneous.") (internal quotation marks and citations omitted); *Matter of Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1310 (7th Cir. 1984) ("[T]he presumption of access normally involves a right of *contemporaneous* access. . . .") (emphasis in original). In *Grove Fresh*, a group of journalists challenged the district court's decision to delay disclosure of certain documents that were either sealed or otherwise the subject of a protective order, despite the court's acknowledgement that the press had a right of access to any documents upon which the court relied in making its decisions. *See Grove Fresh*, 24 F.3d at 895. The Seventh Circuit concluded that "the right of the press to obtain timely access to judicial decisions and the documents which comprise the bases of those decisions is essential." *Id.* at 898. As the Seventh Circuit explained, because "[t]he newsworthiness of a particular story is often fleeting," delaying or postponing disclosure

could have "the same result as complete suppression." *Id.* at 897 ("[E]ach passing day may constitute a separate and cognizable infringement of the First Amendment.") (quoting *Nebraska Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975)).

Brown does not dispute CNS's contention that the First Amendment presumption of access applies to civil complaints. Instead, Brown argues that this presumption does not confer a right to *immediate* access to electronically submitted complaints. She contends that the delays at issue in this case are so minor that they do not implicate the First Amendment. In support of this contention, Brown cites a decision from the Central District of California, *Courthouse News Service v. Yamasaki*, No. SACV 17-00126 AG (KESx), 2017 WL 3610481 (C.D. Cal. Aug. 7, 2017). In that case, the Clerk of the Orange County Superior Court (OCSC) followed essentially the same procedure that Brown has implemented in the Cook County Circuit Court: before making new e-filed complaints publicly available, the OCSC Clerk reviewed them for confidentiality and "spent an additional few minutes completing the remaining steps necessary to formally accept the complaints for filing." *Id.* at *2. CNS alleged, as it does in this case, that the resulting delays in access constituted a violation of its First Amendment right of timely access to newly filed complaints, and it asked the court to enjoin OCSC from continuing this practice. *Id.* at *1. The district court denied CNS's motion for a preliminary injunction on the ground that it could not prove OCSC denied "timely access" to newly filed complaints where, during a three-month period, OCSC made 89.2 percent of newly filed complaints publically available within eight business hours and 96.5 percent available within eight to fifteen business hours. *Id.* at *3. The court concluded that that such "minor delays . . . simply do not constitute a First Amendment violation." *Id.*

Brown contends that the access delays in this case are equally minor when they are framed in terms of business days. By Brown's count, for the period from June 1, 2017 to September 30, 2017, the Clerk's Office made 90.9 percent of e-filed complaints publicly available within one business day, 94.7 percent within two business days, and 96.8 percent within three business days. Def.'s Resp. at 3. A declaration by the Clerk's general counsel further attests that "the vast majority of these complaints are made public, and viewable, within twenty four (24) business hours of filing." Def.'s Resp., Ex. A ¶ 7. Brown argues that this Court should adopt the reasoning of the district court in *Yamasaki* and deny CNS's motion for a preliminary injunction on the ground that the delays in this case are likewise so minor that they do not interfere with CNS's First Amendment right of timely access to new complaints.

CNS contends that *Yamasaki* was wrongly decided and points to three other district court decisions that it says adopt the correct approach to the First Amendment issue of timely access. In *Courthouse News Service v. Jackson*, No. CIV A H-09-1844, 2009 WL 2163609, at *1-2 (S.D. Tex. July 20, 2009), the court granted CNS's motion for a preliminary injunction prohibiting the Harris County District Clerk from denying timely access to newly filed civil petitions. Citing *Grove Fresh*, the court concluded that an access delay of twenty-four business hours for petition indexing, verification, and other processing constituted a denial of timely access that was not narrowly tailored to serve an overriding government interest. *Id.* at *2-4. The district court ordered that CNS "be given access on the same day the petitions are filed," except in certain situations, such as when the filing party is seeking a temporary restraining order or has filed the pleading under seal. *Id.* at *5.

In *Courthouse News Service v. Planet*, No. CV 11-08083 SJO (FFMx), 2016 WL 4157210, at *11-13 (C.D. Cal. May 26, 2016), *judgment entered*, 2016 WL 4157354 (C.D. Cal. June 14, 2016), although the court concluded that the First Amendment did not categorically require *same-day* access to newly filed civil complaints, it determined that the right of timely access arose when the complaint was received, rather than after processing was complete. Accordingly, the court explained that the policy of the Clerk of the Ventura County Superior Court to delay public access to newly filed complaints until after they were processed would be permissible only if it was "essential to preserve higher values and . . . narrowly tailored to serve that interest." *Id.* at *13 (citation omitted). In addition to concluding that the clerk had not met his burden of proving that the processing policy was essential to preserve higher values, the court concluded that the policy was not narrowly tailored to serve a substantial governmental interest, in light of the existence of "a number of alternative policies and procedures . . . [that] would have provided improved access for the public and the press." *Id.* at *17. The court issued an injunction prohibiting the clerk from refusing to make newly filed civil complaints available to the public until after they are processed. *Id.* at *19.

In *Courthouse News Service v. Tingling*, No. 16-cv-08742, 2016 WL 8505086, at *1 (S.D.N.Y. Dec. 16, 2016), the court granted CNS's motion for a preliminary injunction prohibiting the County Clerk of New York County from withholding access to newly filed civil complaints until after "clerical processing." During the hearing on the motion, the court noted that a "substantial" percentage of complaints were not made accessible to the public on the same day they were filed. *Courthouse News Serv. v. Tingling*, No. 16-

cv-08742, 2016 WL 8739010, at 37 (S.D.N.Y. Dec. 16, 2016).[3] The court then cited both *Grove Fresh* and *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006) ("Our public access cases and those in other circuits emphasize the importance of immediate access where a right to access is found."), for the proposition that, where a right of access is found, such access should be immediate and contemporaneous. *Id.* at 49. The court concluded that, as was the case in *Planet*, the County Clerk had failed to meet his burden of demonstrating that his policy of delaying access to new complaints until after they are processed was narrowly tailored or essential to preserve higher values. *Id.* at 52.

As previously noted, the Seventh Circuit, in particular, has emphasized that the First Amendment right of access to judicial documents contemplates "immediate and contemporaneous" access. *Grove Fresh*, 24 F.3d at 897; *In re Associated Press*, 162 F.3d at 506. For this reason—and in recognition of the fact that "[t]he newsworthiness of a particular story is often fleeting," *Grove Fresh*, 24 F.3d at 897—the Court concludes that even the supposedly "minor" delays in access that were discounted by the court in *Yamasaki* cannot be so easily dismissed. Consistent with the approach taken by the courts in *Planet* and *Tingling*, the Court concludes that a policy of delaying access to e-filed complaints until after they are officially accepted or rejected or otherwise processed by the Clerk violates the First Amendment right of timely access to those complaints, unless the Clerk can demonstrate that the policy is narrowly tailored and necessary to preserve higher values. *See, e.g.*, *In re Associated Press*, 162 F.3d at 506.

As previously noted, Brown contends that she is justified in withholding e-filed

[3] Pinpoint citations are to the ECF version of the *Tingling* hearing transcript. *See* Girdner Decl., Ex. 2.

complaints from the public and the press until after processing because both Order No. 2014-02 and the Electronic Filing Standards and Principles provide that electronically submitted documents shall be considered filed "if not rejected" by the Clerk. Order No. 2014-02 at 3; Electronic Filing Standards and Principles at 1. But as the Court has discussed, Brown points to nothing that would require her to delay access to e-filed complaints until after they are processed and officially accepted.

Brown additionally argues that her office needs time to fulfill its duty to ensure that e-filings do not contain certain types of documents—including documents containing confidential and personal identity information—that may not be electronically filed pursuant to Order No. 2014-02. The Court is not convinced that it is, in fact, the responsibility of the Clerk to ensure that such documents are not included in e-filings, as the Illinois Supreme Court rules pertaining to confidential and personal identity information specifically place the burden of compliance on the filing parties. *See* ILCS S. Ct. Rule 15(c) ("Neither the court, nor the clerk, will review each pleading for compliance with this rule."); ILCS S. Ct. Rule 138(e) ("Neither the court nor the clerk is required to review documents . . . for compliance with this rule. If the clerk becomes aware of any noncompliance, the clerk may call it to the court's attention. The court, however, shall not require the clerk to review documents . . . for compliance with this rule.").

But even if the Clerk has the responsibility to check all e-filed complaints for compliance with Order No. 2014-02, and even if one assumes that this responsibility constitutes a "higher value" that might justify a delay in access, Brown has made no effort to explain how her policy of withholding all access to e-filed complaints until

acceptance is narrowly tailored to that interest. In fact, Brown has made no effort to explain why it is not feasible for her to adopt any one of the various methods that numerous other state and federal courts currently use to provide public access to e-filed complaints before they have been fully processed. For that reason alone, Brown has failed to meet her burden of demonstrating that her policy of delaying access to e-filed complaints until official acceptance is narrowly tailored to preserve any higher value. *See Tingling*, 2016 WL 8739010, at 50-52 (court clerk did not meet his burden of demonstrating that policy of withholding access to newly filed complaints until they have been screened for compliance with state law and court rules is either essential to preserve higher values or narrowly tailored to serve a substantial government interest); *Planet*, 2016 WL 4157210, at *16-17 (court clerk failed to meet burden where he argued that policy of processing complaints prior to providing access was necessary to prevent the disclosure of confidential information, to ensure accurate accounting and input of information into the case management system, and to maintain the integrity of the case file). The Court therefore concludes that CNS has demonstrated the requisite likelihood of success on the merits with respect to its claim that Brown's current policy violates its First Amendment right of timely access to new e-filed complaints.

CNS has also met the other requirements for entry of a preliminary injunction. "[I]njunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). There is an important public interest in ensuring that the press and the public have timely access to new civil complaints. *See, e.g., Courthouse News Serv. v. Planet*, 750 F.3d 776, 788 (9th Cir. 2014) ("[T]he public cannot discuss the content of . . . complaints about which it

has no information."); *Jackson*, 2009 WL 2163609, at *5 ("There is an important First Amendment interest in providing timely access to new case-initiating documents."). Additionally, the Seventh Circuit has acknowledged that "even short deprivations of First Amendment rights constitute irreparable harm." *Higher Society*, 858 F.3d at 1116; *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Christian Legal Society*, 453 F.3d at 859 ("The loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate . . . ."). These principles are no less true when the First Amendment deprivation in question is a deprivation of the right of timely access to judicial proceedings or documents than when it involves a deprivation of the right of free expression. *See Planet*, 750 F.3d at 787 ("CNS's right of access claim implicates the same fundamental First Amendment interests as a free expression claim, and it equally commands the respect and attention of the federal courts.").

The balance of equities likewise tips in favor of entry of a preliminary injunction. In the absence of an injunction, CNS will continue to be deprived of its First Amendment right of timely (immediate and contemporaneous) access to e-filed complaints. And Brown has not explained why she cannot implement any of the measures other state and federal courts have taken to provide access to e-filed complaints prior to official acceptance and other processing. *See Tingling*, 2016 WL 8739010, at 53. Brown's conclusory and unsupported assertion that she would require additional funding and staff to provide immediate access to e-filed complaints is insufficient to tip the balance in her favor.

Accordingly, the Court concludes that: (1) CNS has demonstrated a likelihood of success on the merits of its claim that Brown's current policy of withholding new e-filed complaints until after formal acceptance and other administrative processing by the Clerk's Office violates CNS's First Amendment right of timely access to those complaints, (2) CNS will suffer irreparable harm in the absence of an injunction, (3) the balance of the equities favors CNS, and (4) the issuance of a preliminary injunction prohibiting Brown from enforcing her policy of withholding e-filed civil complaints until official acceptance and requiring her to provide contemporaneous access to the e-filed complaints upon receipt is in the public interest.

**Conclusion**

For the foregoing reasons, the Court grants CNS's motion for a preliminary injunction [dkt. no. 6]. Brown is given thirty days from today's date to implement a system that will provide access to newly e-filed civil complaints contemporaneously with their receipt by her office. The Court orders CNS to post a bond in the amount of $5,000.00 as security pursuant to Federal Rule of Civil Procedure 65(c). If the parties believe a more specific order embodying the Court's grant of a preliminary injunction is required, they are to immediately confer regarding the wording of the order and are to present a draft for the Court's review and signature by no later than January 10, 2018.

MATTHEW F. KENNELLY
United States District Judge

Date: January 8, 2018

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **COURTHOUSE NEWS SERVICE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 17 C 7933** |
| | ) | |
| **DOROTHY BROWN, Clerk of the Circuit Court of Cook County,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Courthouse News Service (CNS), a news service that covers civil litigation news from over 2,500 state and federal courts across the country, has sued Dorothy Brown, the Clerk of the Circuit Court of Cook County, for injunctive relief under 42 U.S.C. § 1983. CNS alleges violations of the First Amendment stemming from Brown's policy of withholding electronically-filed (e-filed) civil complaints from the press and the public until after they have been processed and officially "accepted" for filing by the Clerk's Office. CNS alleges that the resulting delay in access to new complaints constitutes a denial of timely and contemporaneous access to court records in violation of the First Amendment of the U.S. Constitution.

CNS moved for a preliminary injunction prohibiting Brown from enforcing her policy of withholding e-filed complaints until administrative processing is complete and requiring her to provide timely, contemporaneous access to the complaints upon filing. Brown responded to the motion and agreed with CNS that there were no disputed facts

relevant to the preliminary injunction motion that required a hearing. Based on the parties' agreement, the Court cancelled the scheduled hearing on the motion (which had been set for December 21, 2017) and ruled based on the parties' briefs.

On January 8, 2018, the Court granted CNS's motion for a preliminary injunction. *See Courthouse News Serv. v. Brown*, No. 17 C 7933, 2018 WL 318485 (N.D. Ill. Jan. 8, 2018). Brown did not dispute CNS's contention that the First Amendment presumption of access to documents filed in court applies to civil complaints. Her argument, rather, was that the presumption does not require *immediate* access and that the delays at issue were insignificant and did not implicate the First Amendment. The Court overruled this contention, following established authority in this Circuit emphasizing that the First Amendment right of access "contemplates 'immediate and contemporaneous' access." *Id.* at *5 (citing *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994); *In re Associated Press*, 162 F.3d 503, 506 (7th Cir. 1998)). The Court concluded that "a policy of delaying access to e-filed complaints until after they are officially accepted or rejected or otherwise processed by the Clerk violates the First Amendment right of timely access to those complaints, unless the Clerk can demonstrate that the policy is narrowly tailored and necessary to preserve higher values." *Id.* The only conceivable "higher value" identified by Brown in her response to the motion was her contention that her office "needs time to fulfill its duty to ensure that e-filings do not contain certain types of documents—including documents containing confidential and personal identity information—that may not be electronically filed . . . ." *Id.* The Court found unpersuasive that it was *Brown's* duty to ensure that such documents are not included in e-filings; applicable Illinois Supreme

Rules place that burden on filing parties and expressly state that court clerks are not required to review pleadings for compliance with that rule. *Id.* (citing Ill. Sup. Ct. R. 15(c) & 138(e)). And even if this responsibility actually existed, the Court found that "Brown has made no effort to explain how her policy of withholding all access to e-filed complaints until acceptance is narrowly tailored to that interest," as required when the First Amendment is implicated, and "has made no effort to explain why it is not feasible for her to adopt any one of the various methods that numerous other state and federal courts currently use to provide public access to e-filed complaints before they have been fully processed." *Id.* at *6. The Court therefore concluded that CNS had shown the requisite likelihood of success and also that CNS had met the other requirements for entry of a preliminary injunction. *Id.* The Court gave Brown thirty days to implement a system that would provide access to newly e-filed civil complaints contemporaneously with their receipt by her office.

Brown filed a notice of appeal on January 31, 2018 and then, two days later, filed a motion to stay the preliminary injunction pending appeal. The purpose of a stay pending appeal is to minimize the costs of error and mitigate the damage that may be done before a legal issue is finally resolved. *In re A&F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). But a stay is "not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). In determining whether to grant a stay, a court considers the moving party's likelihood of success on appeal, any irreparable harm that will result to either side if a stay is granted or denied in error, and whether the public interest favors one side or the other. *In re A&F Enters.*, 742 F.3d at 766. The court applies a sliding scale under which "the greater the moving party's

likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa." *Id.* As the party requesting a stay, Brown has the burden to show that the circumstances justify the Court's exercise of its discretion to grant a stay.

In her motion for a stay, Brown barely addresses the merits of CNS's First Amendment claim. Her motion relies in significant part on factual and legal contentions that she failed to advance in her response to the preliminary injunction, as well as a contention that the preliminary injunction conflicts with requirements imposed on her by the Illinois Supreme Court. The first set of points is forfeited; the last point is unsupported.

First, Brown seems to say that she cannot, without some expense, comply with the requirement to permit the press to view electronically filed complaints contemporaneously with their filing, because "the computer system in the Circuit Clerk's office does not currently have a read function that allows users . . . to see filed images on the internet." Motion to Stay ¶ 9. It is too late for Brown to raise this point. It was clear from CNS's briefs on the preliminary injunction motion that viewing complaints via a terminal in the clerk's office would be a viable means to satisfy the First Amendment. But Brown breathed nary a word about the purported lack of what would seem to be a rather basic computer function—reading documents filed in the system that the computer is hooked up to. The Court concludes that Brown forfeited this point by failing to raise it in a timely fashion and thus that it is not properly a basis for a stay. In any event, the Court's order most certainly does not mandate Internet-based access; access through computer terminals located within the Clerk's office will suffice. The Court also notes that the Circuit Court's directive issued *over three years ago*, Order No. 2014-12,

section 13(b), specifically contemplates access to the images of filed documents through public access computer terminals in Clerk's office locations.

Brown next relies on an order issued by the Illinois Supreme Court on December 22, 2017 that requires her to "commit all necessary resources" to meet an extended timeline for implementation of mandatory e-filing. Motion to Stay, Ex. C (Ill. S. Ct. Order of Dec. 22, 2017). Brown claims that "[t]he express language of this order prohibits [her] from devoting resources to providing Plaintiff with 'timely, contemporaneous access' to newly submitted electronic documents." Motion to Stay ¶ 14. This argument suffers from several flaws. First, if Brown is reading the Supreme Court's order correctly, she had it in hand two and one-half weeks *before* this Court issued its preliminary injunction order, yet she did not bring it to the Court's attention. Worse, the request that led to the order was made even earlier than that, yet Brown never mentioned the request in her papers filed in opposition to the motion for preliminary injunction. In short, if Brown is accurately citing this order as a basis for putting off compliance with this Court's preliminary injunction order, she forfeited the point by failing to bring it to the Court's attention promptly following the order's issuance.

More importantly, however, Brown's reading of the Supreme Court's order unsupportable. The order most certainly does not prohibit devoting resources to enabling contemporaneous access to filed documents, either "expressly"—as Brown falsely contends—or even implicitly. Specifically, the order does not say that Brown must devote *all* her resources to getting an e-filing system up and running; rather, it says she must commit all *necessary* resources to this. That does not preclude her from committing other resources to allowing public access to filed complaints. Furthermore,

one might think that a mechanism for compliance with the public's right of access to judicial proceedings is a necessary component of an appropriate e-filing system—and thus squarely within the scope of the Supreme Court's order even under Brown's misreading of it—and not some sort of a frill, as Brown's argument seems to suggest.

Brown's other main point in support of her request for a stay is her contention that this Court has required her to allow public access to civil complaints that are filed under seal. If Brown is honestly reading the order that way, one would wonder why she did not seek clarification or modification of the injunction (she sought clarification on other, meritless, points, but not on this one). In fact, the Court would have been ready, willing, and able to clarify or modify the order to make it clear that when a litigant files a complaint under seal, the public is *not* entitled to immediate access.[1] But in fact that is not what the preliminary injunction requires; Brown may maintain under seal documents that are filed under seal. And that is not what is at issue in CNS's lawsuit. What is actually afoot is a system, effectively created by Brown herself, in which *all* e-filed complaints are treated as having been filed under seal until Brown herself clears them for public access. Brown cannot end-run the First Amendment by creating a system in which hypothetical doubt regarding whether litigants comply with rules about redaction allow her to exclude the public from access to judicial proceedings until she is good and ready to provide it.

The Court need not dwell further on the merits of Brown's motion. Brown has shown at best only a small likelihood of success on the merits, and she has shown

---

[1] The Court would be happy to clarify or, if necessary, modify the preliminary injunction even now to make this clear, but doubts that it has jurisdiction to do so given Brown's filing of a notice of appeal.

neither irreparable harm nor any risk of damage to the public interest. To the contrary, the public's interest in maintaining its right of access to judicial proceedings counsels against entry of a stay.

## Conclusion

For the reasons stated above, the Court denies Brown's motion for a stay of the preliminary injunction pending appeal.

Date: February 13, 2018

MATTHEW F. KENNELLY
United States District Judge

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COURTHOUSE NEWS SERVICE, | ) | Docket No. 17 C 7933 |
| Plaintiff, | ) | |
| vs. | ) | |
| DOROTHY BROWN, | ) | Chicago, Illinois<br>January 17, 2018 |
| Defendant. | ) | 9:30 o'clock a.m. |

TRANSCRIPT OF PROCEEDINGS - MOTION
BEFORE THE HONORABLE MATTHEW F. KENNELLY

APPEARANCES:

For the Plaintiff: BRYAN CAVE
BY: MR. BRIAN ALAN SHER
161 North Clark, Suite 4300
Chicago, IL 60601
(312) 602-5000

For the Defendant: COOK COUNTY STATE'S ATTORNEY'S OFFICE
BY: MR. PAUL ANTHONY CASTIGLIONE
69 West Washington, Suite 3110
Chicago, IL 60602
(312) 603-1840

Court Reporter: MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
Official Court Reporter
219 S. Dearborn Street, Suite 2102
Chicago, Illinois 60604
(312) 435-5639

(The following proceedings were had in open court:)

THE CLERK: Case No. 17 C 7933, Courthouse News v. Brown.

MR. SHER: Good morning, your Honor. Brian Sher on behalf of Courthouse News.

MR. CASTIGLIONE: Your Honor, good morning. Paul Castiglione on behalf of Circuit Court, Dorothy Brown.

THE COURT: Okay. So I guess I need to get this off my chest, but -- so when the motion for preliminary injunction was filed, there were two possible outcomes: grant the motion or deny the motion. So granting the motion was one of the possible outcomes.

And the order that I entered, whatever it says, you know, contemporaneous access to complaints, was almost word for word what the plaintiff asked for in the motion that got filed a couple of months ago.

So my first question on this stuff that you have in your motion for clarification is where were all of these arguments? They were not in your response to the motion for preliminary injunction.

So the -- I could very easily say, too bad, you forfeited it, and that would be a completely solid conclusion. And I guess I would like to know why these points weren't made. I mean, there was one of them that was kind of maybe alluded to. You got an explanation?

MR. CASTIGLIONE: It has to do with the scope of what I understood the Court's order to be.

THE COURT: The order -- I mean, if you go back and you look at his motion for preliminary injunction, the motion, one paragraph, there is a sentence in there that says, this is what we're asking for. You take that, you lay it over the sentence in the brief, and it's like they're almost identical.

MR. CASTIGLIONE: I was just having a conversation with Mr. Sher before your Honor came out. Perhaps I overread your order. It seems the order was broader than what he asked for, which is why I'm bringing up really supervision, Judge, is that you have a situation where the Circuit Court not only has to obviously follow this Court's orders but also the orders of the AOIC and the chief judge as well. And there's a limitation in those orders regarding where electronic information shall be available. I'm not saying those orders necessarily comport with this Court's January --

THE COURT: So your first question is whether Section 4.30(b) of the Electronic Access Policy for Circuit Court Records is incorporated through point No. 4 --

MR. CASTIGLIONE: No, no --

THE COURT: -- of the Electronic Filing Standards and Principles conflicts with my decision.

MR. CASTIGLIONE: Right.

THE COURT: No, because access can be provided at

Clerk's Office terminals.

Question 2, Section 13(b) of Order 2014-12 conflicts with my opinion. Same answer.

Question No. 3, if either Section 4.30(b) or Section 13(b) or both conflict with my opinion, what am I telling you to do? Doesn't apply because they don't conflict.

Question 4, is the constitutionality of either section in question, if it's in question, do you need to notify the Attorney General? My real answer is it beats the living heck out of me because that's not my decision to make; that's an obligation that you either do or don't have by virtue of state law. But I don't think they conflict because I think I said right in the order that you can provide access at Clerk's Office terminals.

And by the way, that's the way it's done in every court in the entire country that has electronic filing, which is most of them.

MR. CASTIGLIONE: Your Honor, we --

THE COURT: That's what happens down here.

MR. CASTIGLIONE: Your Honor, I appreciate your comments. We needed the clarification.

THE COURT: So the motion for clarification is terminated as moot based on the comments in open court.

See you.

MR. CASTIGLIONE: Thank you.

MR. SHER: Thank you, your Honor.

(Which were all the proceedings had in the above-entitled cause on the day and date aforesaid.)

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Carolyn R. Cox
Official Court Reporter
Northern District of Illinois

Date

/s/Carolyn R. Cox, CSR, RPR, CRR, FCRR