No. 18-1230

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

Courthouse News Service,
Plaintiff-Appellee,

v.

Dorothy Brown, in her official capacity
as Clerk of the Circuit Court
of Cook County,
Defendant-Appellant.

Appeal From The United States District Court
For The Northern District of Illinois
Case No. 17-cv-7933
The Honorable Judge Matthew F. Kennelly

# BRIEF OF COURTHOUSE NEWS SERVICE, PLAINTIFF-APPELLEE


BRYAN CAVE LEIGHTON PAISNER LLP
Brian A. Sher
Donald A. Cole
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
(312) 602-5000

Rachel Matteo-Boehm
Three Embarcadero Center, 7th Floor
San Francisco, California 94111
(415) 675-3400

*Attorneys for Plaintiff-Appellee, Courthouse News Service*


**ORAL ARGUMENT REQUESTED**

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 18-1230

Short Caption: Courthouse News Service v. Brown

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Plaintiff-Appellee

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Bryan Cave LLP, which effective April 1, 2018, is now Bryan Cave Leighton Paisner LLP

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

---

Attorney's Signature: s/ Brian A. Sher Date: April 12, 2018

Attorney's Printed Name: Brian A. Sher

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** X **No** ______

Address: Bryan Cave Leighton Paisner LLP, 161 N. Clark Street, Suite 4300
Chicago, Illinois 60601

Phone Number: 312-602-5000 Fax Number: 312-602-5050

E-Mail Address: brian.sher@bclplaw.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 18-1230

Short Caption: Courthouse News Service v. Brown

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Plaintiff-Appellee

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Bryan Cave LLP, which effective April 1, 2018, is now Bryan Cave Leighton Paisner LLP

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

---

Attorney's Signature: s/ Donald A. Cole Date: April 12, 2018

Attorney's Printed Name: Donald A. Cole

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ____ **No** X

Address: Bryan Cave Leighton Paisner LLP, 161 N. Clark Street, Suite 4300
Chicago, Illinois 60601

Phone Number: 312-602-5000 Fax Number: 312-602-5050

E-Mail Address: donald.cole@bclplaw.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 18-1230

Short Caption: Courthouse News Service v. Brown

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Plaintiff-Appellee

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Bryan Cave LLP, which effective April 1, 2018, is now Bryan Cave Leighton Paisner LLP

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

---

Attorney's Signature: s/ Rachel Matteo-Boehm Date: April 12, 2018

Attorney's Printed Name: Rachel Matteo-Boehm

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ____ **No** X

Address: Bryan Cave Leighton Paisner LLP, Three Embarcadero Center, 7th Floor
San Francisco, California 94111

Phone Number: 415-675-3400 Fax Number: 415-675-3434

E-Mail Address: rachel.matteo-boehm@bclplaw.com

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........ iii

JURISDICTIONAL STATEMENT ........ 1

STATEMENT OF THE ISSUES ........ 2

STATEMENT OF THE CASE ........ 3

I. CNS. ........ 3

II. A TRADITION OF CONTEMPORANEOUS ACCESS ON RECEIPT. ........ 3

III. BROWN'S POLICY CHANGE. ........ 4

IV. THIS ACTION. ........ 6

V. BROWN'S MISCHARACTERIZATION OF ILLINOIS AND COUNTY ORDERS AND RULES. ........ 6

VI. PI. ........ 9

VII. BROWN'S EFFORTS TO AVOID COMPLYING WITH THE PI. ........ 12

SUMMARY OF ARGUMENT ........ 14

ARGUMENT ........ 15

I. STANDARD OF REVIEW. ........ 15

II. BROWN WAIVED ARGUMENTS SHE FAILED TO RAISE WITH THE DISTRICT COURT. ........ 16

III. BROWN IMPROPERLY REPEATS ARGUMENTS WITHOUT ADDRESSING THE DISTRICT COURT'S RATIONALE OR KEY PRECEDENT. ........ 18

IV. THE DISTRICT COURT DID NOT ERR IN FINDING ABSTENTION INAPPLICABLE. ........ 19

A. *Younger* Abstention Does Not Apply. ........ 21

B. *O'Shea* Abstention Should Be Rejected. ........ 22

V. THE DISTRICT COURT CORRECTLY FOUND CNS ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS FIRST AMENDMENT CLAIM. ........ 26

A. There Is A Clear History Of And Logic In Access To Complaints When Received By A Court For Filing. ........ 28

1. A long-standing right of access to complaints is well-recognized and attaches on receipt for filing. .................. 29

2. There is a long history of access to complaints prior to judicial action. ................................................................ 31

3. "Once filed," complaints are public because they affect the disposition. ................................................................ 36

4. The logic in access to complaints upon filing is well-established. ....................................................................... 39

C. Where A Right of Access Is Found, It Must Be "Contemporaneous," And Brown's Policies Deny That Access. ......................................................................... 45

D. Brown Cannot Avoid Strict Scrutiny, Has Waived TPM, And Could Not Satisfy TPM Even If It Was Not Waived. ......... 49

1. Strict scrutiny applies to access denials even if limited in time. ....................................................................... 50

2. The District Court did not abuse its discretion in concluding Brown's policies did not survive strict scrutiny. ...................................................................... 51

3. Brown has failed to meet her burden to establish her process-first policy is a reasonable TPM restriction........ 53

VI. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN HOLDING THAT CNS SATISFIED THE OTHER REQUIREMENTS FOR OBTAINING A PRELIMINARY INJUNCTION. ........................................................................ 56

CONCLUSION.................................................................................. 60

CERTIFICATE OF COMPLIANCE..................................................... 61

CERTIFICATE OF SERVICE.............................................................. 62

SUPPLEMENTAL APPENDIX ........................................................ SA1

## TABLE OF AUTHORITIES

Page(s)

Cases

*A.J. Canfield Co. v. Vess Beverages, Inc.*,
796 F.2d 903 (7th Cir. 1986) ........ 16

*ACLU v. Alvarez*,
679 F.3d 583 (7th Cir. 2012) ........ 56

*ACLU v. Holder*,
652 F. Supp. 2d 654 (E.D. Va. 2009) ........ 37

*Alexandria Gazette Corp. v. W.*,
93 S.E.2d 274 (Va. 1956) ........ 39

*Am. Dist. Tel. Co. v. Brink's Inc.*,
380 F.2d 131 (7th Cir. 1967) ........ 33

*Ankenbrandt v. Richards*,
504 U.S. 689 (1992) ........ 21

*Arpaio v. Davis*,
210 P.3d 1287 (Ariz. Ct. App. 2009) ........ 39

*In re Associated Press*,
162 F.3d 503 (7th Cir. 1998) ........ *passim*

*Associated Press v. Dist. Court*,
705 F.2d 1143 (9th Cir. 1983) ........ 47, 48, 50

*Barth v. City of Macedonia*,
187 F.3d 634 (6th Cir. 1999) ........ 50

*Baxter Int'l v. Abbott Labs.*,
297 F.3d 544 (7th Cir. 2002) ........ 27, 36

*Bell v. Commonwealth Title & Trust Co.*,
189 U.S. 131 (1903) ........ 29

*Bernstein v. Bernstein Litowitz Berger & Grossman LLP*,
2016 WL 1071107 (S.D.N.Y. Mar. 18, 2016) ........ *passim*

*Bernstein v. Bernstein Litowitz Berger & Grossman LLP*,
814 F.3d 132 (2d Cir. 2016) ........ *passim*

*Berwick Grain Co. v. IDOA*,
217 F.3d 502 (7th Cir. 2000) ........................................................................ 18

*Bovee v. Broom*,
732 F.3d 743 (7th Cir. 2013) ........................................................................ 18

*Byers v. Meridian Printing*,
95 N.E. 917 (Ohio 1911) .............................................................................. 33

*Campbell v. McGruder*,
580 F.2d 521 (D.C. Cir. 1978) .................................................................. 25, 33

*Campbell v. N.Y. Evening Post*,
157 N.E. 153 (N.Y. 1927)........................................................................ 27, 33

*Chi. Council of Lawyers v. Bauer*,
522 F.2d 242 (7th Cir. 1975) .................................................................. 41, 43

*Christian Legal Soc'y v Walker*,
453 F.3d 853 (7th Cir. 2006) .................................................................. 57, 59

*Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*,
178 F.3d 943 (7th Cir. 1999) ........................................................................ 39

*City of Greenville v. Syngentia Crop Protection*,
764 F.3d 695 (7th Cir. 2014) ........................................................................ 36

*City of Watseka v. Ill. Pub. Action Council*,
796 F.2d 1547 (7th Cir. 1986) ...................................................................... 54

*CNS v. Jackson*,
2009 WL 2163609 (S.D. Tex. July 20, 2009) ..................................................*passim*

*CNS v. Planet,*
750 F.3d 776, 792 (9th Cir. 2014) ..................................................................*passim*

*CNS v. Planet*,
2016 WL 4157210 (C.D. Cal. May 26, 2016) ..................................................*passim*

*CNS v. Planet*,
614 F. App'x. 912 (2015)................................................................................ 28

*CNS v. Tingling*,
2016 WL 8739010 (S.D.N.Y. Dec. 16, 2016) ...................................................*passim*

*CNS v. Yamasaki*,
2017 WL 3610481 (C.D. Cal. Aug. 7, 2017) .......................................... 6, 45, 47, 48

*In re Continental Ill. Secs. Litig.*,
732 F.2d 1302 (7th Cir. 1984) .......... *passim*

*Cowley v. Pulsifer,*
137 Mass. 392 (1884) .......... 32, 33, 34

*U.S. ex rel. Dahlman v. Emergency Physicians*,
2004 WL 287559 (D. Minn. Jan. 5, 2004) .......... 27, 32

*Detroit Free Press v. Ashcroft*,
303 F.3d 681 (6th Cir. 2002) .......... 30

*Dhiab v. Trump*,
852 F.3d 1087 (D.C. Cir. 2017) .......... 30

*Direct-Mail Serv. v. Registrar of Mot. Vehicles*,
5. N.E.2d 545 (Mass. 1937) .......... 29

*Doe v. Pub. Citizen*,
749 F.3d 246 (4th Cir. 2014) .......... 45

*Ex parte Drawbaugh*,
2 App. D.C. 404 (1894) .......... 32

*E.T. v. Cantil-Sakauye*,
682 F.3d 1121 (9th Cir. 2012) .......... 25

*In re Eastman Kodak Co.*,
2010 WL 2490982 (S.D.N.Y. June 15, 2010) .......... 35, 36

*Elrod v. Burns*,
427 U.S. 347 (1976) .......... 57

*In re Estate of Davison*,
430 N.E.2d 222 (Ill. App. Ct. 1981) .......... 8

*Forty One News, Inc. v. Cnty. of Lake*,
491 F.3d 662 (7th Cir. 2007) .......... 21

*FreeEats.com, Inc. v. Ind.*,
502 F.3d 590 (7th Cir. 2007) .......... 19, 21

*Gannett v. DePasquale*,
443 U.S. 368 (1979) .......... 30

*Globe Newspaper Co. v. Pokaski*,
868 F.2d 497 (1st Cir. 1989) .......... 48, 50

*Globe Newspaper Co. v. Super. Ct.*,
457 U.S. 596 (1982) .................................................................. 30, 31, 50, 51

*Graham v. Med. Mut.*,
130 F.3d 293 (7th Cir. 1997) .................................................................. 59

*Gresham v. Peterson*,
225 F.3d 899 (7th Cir. 2000) .................................................................. 56

*Grove Fresh Distribs. v. Everfresh Juice Co.*,
24 F.3d 893 (7th Cir. 1994) .................................................................. *passim*

*Hanish v. Westinghouse Broad.*,
487 F. Supp. 397 (E.D. Pa. 1980) .................................................................. 34

*Hanson v. Circuit Court*,
591 F.2d 404 (7th Cir. 1979) .................................................................. 21

*Hartford Courant Co. v. Pellegrino*,
380 F.3d 83 (2d Cir. 2004) .................................................................. 20

*Health v. City of Alexandria*,
11 So. 3d 569 (La. App. 2009) .................................................................. 38

*Higher Soc'y of Ind. v. Tippecanoe Cnty.*,
858 F.3d 1113 (7th Cir. 2017) .................................................................. 57

*Horina v. City of Granite City*,
538 F.3d 624 (7th Cir. 2008), *amended on other grounds*, 548 F.3d
1107 (7th Cir. 2008) .................................................................. 54, 56

*Houchins v. KQED*,
438 U.S. 1 (1978) .................................................................. 29

*Hurley v. Nw. Pub'ns*,
273 F. Supp. 967 (D. Minn. 1967) .................................................................. 34

*IDT Corp. v. eBay*,
709 F.3d 1220 (8th Cir. 2013) .................................................................. 34, 35

*Joseph Burstyn, Inc. v. Wilson*,
343 U.S. 495 (1952) .................................................................. 45

*Juidice v. Vail*,
430 U.S. 327 (1977) .................................................................. 24

*Justice v. CSX Transp., Inc.*,
908 F.2d 119 (7th Cir. 1990) ........ 17

*Kelly v. Mazzie*,
565 N.E.2d 719 (Ill. App. Ct. 1990) ........ 8

*Lawson Prods., Inc. v. Avnet, Inc.*,
782 F.3d 1429 (7th Cir. 1986) ........ 16

*Levenstein v. Salafsky*,
164 F.3d 345 (7th Cir. 1998) ........ 31

*Lewis v. Casey*,
518 U.S. 343 (1996) ........ 24

*Los Angeles v. Lyons*,
461 U.S. 95 (1983) ........ 24

*Lugosch v. Pyramid Co.*,
435 F.3d 110 (2d. Cir. 2006) ........ 45

*Lybrand v. State Co.*,
184 S.E. 580 (S.C. 1936) ........ 33, 39

*Mastrovincenzo v. City of New York*,
435 F.3d 78 (2d Cir. 2006) ........ 59

*Mercury Interactive v. Klein*,
158 Cal. App. 4th 60 (Cal. Ct. App. 2007) ........ 37

*Miofsky v. Super. Ct.*,
703 F.2d 332 (9th Cir. 1983) ........ 19

*Missouri v. Jenkins*,
515 U.S. 70 (1995) ........ 24

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........ 20

*NBC Subsidiary (KNBC-TV) v. Super. Ct.*,
980 P.2d 337 (Cal. 1999) ........ 34, 37

*Nebraska Press Ass'n v. Stuart*,
423 U.S. 1327 (1975) ........ 41

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
491 U.S. 350 (1989) ........ 19, 20

*Newell v. Field Enters.*,
415 N.E.2d 434 (Ill. App. Ct. 1980) .................... 33, 35

*News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*,
612 F.3d 301 (4th Cir. 2010) .................... 55, 60

*Nieman v. VersusLaw*,
512 F. App'x 635 (7th Cir. 2013) .................... 45

*Nixon v. Warner Commc'ns*,
435 U.S. 589 (1978) .................... 29

*In re NVIDIA Corp. Deriv. Litig.*,
2008 WL 1859067 (N.D. Cal. Apr. 23, 2008) .................... 31, 36, 37, 40

*O'Shea v. Littleton*,
414 U.S. 488 (1974) .................... 20, 22, 23, 24

*Park v. Detroit Free Press*,
40 N.W. 731 (Mich. 1888) .................... 33

*Parker v. Turner*,
626 F.2d 1 (6th Cir. 1980) .................... 24, 25

*PG Pub'g Co. v. Aichele*,
705 F.3d 91 (3d Cir. 2013) .................... 43

*Planned Parenthood League v. Bellotti*,
868 F.2d 459 (1st Cir. 1989) .................... 24

*In re Policy Management System*
67 F.3d 296 (4th Cir. 1995) .................... 37

*PQ Corp. v. Lexington Ins. Co.*,
860 F.3d 1026 (7th Cir. 2017) .................... 17

*Presley v. Georgia*,
558 U.S. 209 (2010) .................... 28, 52

*Press-Enter. Co. v. Super. Ct.*,
464 U.S. 501 (1984) .................... 30

*Press-Enter. Co. v. Super. Ct.*,
478 U.S. 1 (1986) .................... *passim*

*Preston v. Bd. of Trustees of Chi. State Univ.*,
120 F. Supp. 3d 801 (N.D. Ill. 2015) .................... 59

*In re Reporters Committee*,
773 F.2d 1325 (D.C. Cir. 1985)........................................................... 34, 35

*Republic Tobacco Co. v. N. Atl. Trading Co.*,
381 F.3d 717 (7th Cir. 2004) ............................................................................. 17

*Richmond Newspapers v. Va.*,
448 U.S. 555 (1980) ................................................................................ 30, 40, 50

*Riley v. Nat'l Fed'n of Blind*,
487 U.S. 781 (1988) ............................................................................................ 60

*Rivera-Puig v. Garcia-Rosario*,
983 F.2d 311 (1st Cir. 1992)............................................................................... 20

*Rizzo v. Goode*,
423 U.S. 362 (1976) ...................................................................................... 25, 26

*Rogers v. Desiderio*,
58 F.3d 299 (7th Cir. 1995) ................................................................................ 22

*Rubin v. Weinberger*,
524 F.2d 497 (7th Cir. 1975) .............................................................................. 17

*Salzano v. N. Jersey Media Group*,
993 A.2d 778 (N.J. 2010)..................................................................................... 34

*Sanders v. John Nuveen & Co., Inc.*,
554 F.2d 790 (7th Cir. 1977) .............................................................................. 17

*Savaglio v. Wal-Mart Stores*,
149 Cal. App. 4th 588 (Cal. Ct. App. 2007) ........................................................ 37

*Schmedding v. May*,
48 N.W. 201 (Mich. 1891)............................................................................. 32, 33

*Seattle Times v. Rhinehart*,
467 U.S. 20 (1984) .............................................................................................. 37

*Shiver v. Valdosta Press*,
61 S.E.2d 221 (Ga. Ct. App. 1950) ..................................................................... 34

*Siegel v. Sun Printing & Pub'g Ass'n*,
223 N.Y.S. 549 (App. Div. 1927) ........................................................................ 34

*Smeigh v. Johns Manville, Inc.*,
643 F.3d 554 (7th Cir. 2011) .............................................................................. 18

*In re Specht*,
622 F.3d 697 (7th Cir. 2010) ............................................................................ 36

*Standard Chtd. Bank Int'l v. Calvo*,
757 F. Supp. 2d 258 (S.D.N.Y. 2010) ......................................................... 35, 36, 43

*State v. McMillian*,
38 So. 666 (Fla. 1905) ..................................................................................... 29

*Stefanelli v. Minard*,
342 U.S. 117 (1951) ........................................................................................ 24

*Steffel v. Thompson*,
415 U.S. 452 (1974) ........................................................................................ 19

*Sullo & Bobbitt v. Abbott*,
2013 WL 1949835 (N.D. Tex. May 13, 2013)....................................................... 47

*Switzer v. Heckler*,
742 F.2d 382 (7th Cir. 1984) ............................................................................ 18

*Tarter v. Hury*,
646 F.2d 1010 (5th Cir. 1981) .......................................................................... 23

*In re Taxman Clothing Co.*,
905 F.2d 166 (7th Cir. 1990) ............................................................................ 56

*In re The N.Y. Times Co.*,
828 F.2d 110 (2d Cir. 1987)............................................................................... 51

*Tomczyk v. Blue Cross & Blue Shield United*,
951 F.2d 771 (7th Cir. 1991) ............................................................................ 18

*Turnell v. CentiMark Corp.*,
796 F.3d 656 (7th Cir. 2015) ............................................................................ 16

*Turner Broad. Sys. v. FCC*,
512 U.S. 662 (1994) ........................................................................................ 54

*In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*
707 F.3d 283 (4th Cir. 2013) ............................................................................ 37

*U.S. v. Brooklier*,
685 F.2d 1162 (9th Cir. 1982) .......................................................................... 50

*U.S. v. Edwards*,
823 F.2d 111 (5th Cir. 1987) ............................................................................ 44

*U.S. v. Hastings*,
695 F.2d 1278 (11th Cir. 1983) ........................................................................ 50

*U.S. v. Kerley*,
753 F.2d 617 (7th Cir. 1985) ........................................................................... 50

*U.S. v. Peters*,
754 F.2d 753 (7th Cir. 1985) ................................................................. 40, 49, 52

*U.S. v. Stevens*,
559 U.S. 460 (2010) ........................................................................................ 45

*U.S. v. Wecht*,
537 F.3d 222 (3d Cir. 2008) .............................................................................. 46

*Union Oil Co. v. Leavell*,
220 F.3d 562 (7th Cir. 2000) ........................................................................... 53

*Upton v. Caitlin*,
31 P. 172 (Colo. 1892) ..................................................................................... 29

*Valencia v. City of Springfield*,
883 F.3d 959 (7th Cir. 2018) ........................................................................... 16

*Valley Broad. Co. v. Dist. Court*,
798 F.2d 1289 (9th Cir. 1986) ......................................................................... 51

*Vassiliades v. Israely*,
714 F. Supp. 604 (D. Conn. 1989) ................................................................... 37

*Vill. of DePue v. Exxon Mobil Corp.*,
537 F.3d 775 (7th Cir. 2008) ..................................................................... 21, 24

*State ex. Rel. Vindicator Printing Co. v. Wolff*,
974 N.E.2d 89 (Ohio 2012) .............................................................................. 39

*Vodak v. City of Chi.*,
639 F.3d 738 (7th Cir. 2011) ........................................................................... 55

*Waldron v. McAtee*,
723 F.2d 1348 (7th Cir. 1983) ......................................................................... 20

*Weinberg v. City of Chi.*,
310 F.3d 1029 (7th Cir. 2002) ......................................................................... 54

*Welch v. Johnson*,
907 F.2d 714 (7th Cir. 1990) ........................................................................... 24

*State ex rel. Williston Herald v. O'Connell*,
151 N.W.2d 758 (N.D. 1967) .......... 29

*Wis. Right to Life, Inc. v. Barland*,
751 F.3d 804 (7th Cir. 2014) .......... 53

*Younger v. Harris*,
401 U.S. 37 (1971) .......... *passim*

*Fernandez v. Trias Monge*,
586 F.2d 848 (1st Cir. 1978) .......... 25

## Statutes

51 Okla. Stat. § 24A.5 .......... 38

65 P.S. § 67.304 .......... 38

42 U.S.C. § 1983 .......... *passim*

Colo. Rev. Stat. § 24-72-203 .......... 38

Ind. Code § 5-14-3-3 .......... 38

Kan. Rev. Stat. § 61.872 .......... 38

La. Rev. Stat. § 44:33 .......... 38

N.C. Gen. Stat. § 132-6 .......... 38

N.M. Stat. Ann. § 14-2-8 .......... 38

Nev. Rev. Stat. § 239.0107 .......... 38

Or. Rev. Stat. § 192.329 .......... 38

R.I. Gen. Law. § 38-2-2 .......... 38

R.I. Gen. Laws § 38-3-5 .......... 38

S.C. Code Ann. § 30-4-30 .......... 38

Wisc. Stat.§ 19.35 .......... 38

## Rules

Alaska Admin. R. 37.5 .......... 38

Ariz. S. Ct. R. 123 .......... 38

FED. R. CIV. P. 5.2 .......... 55

Haw. Ct. Record R. 10.1 .......... 38

ILL. S. CT. R. 138 .......... 7, 8

Minn. R. Pub. Access to J. Branch Records .......... 38

N.D. Sup. Ct. Admin. R. 41 .......... 38

N.Y. Admin. R. Unif. Ct. Sys. & Trial Cts. § 124.1 .......... 38

Neb. Sup. Ct. R. 1-809 .......... 38

Tex. R. Jud. Admin. 12.2 .......... 38

Utah J.C. R. Jud. Admin. 4-202.06 .......... 38

Wy. R. Access to Ct. Records 4 .......... 38

**Other Authorities**

Ark. Sup. Ct. Admin. Order 19 .......... 38

Del. Policy on Public Access to Records in Chancery Ct. .......... 38

Ellen E. Sward, *A History of the Civil Trial in the United States*, 51 U. KAN. L. REV. 347 (2003) .......... 35

H. CROSS, THE RIGHT TO KNOW (1953) .......... 32, 33, 39

Me. Sup. Jud. Ct. Admin. Order JB-05-20 .......... 38

Thomas M. Clarke et al., *Best Practices for Court Privacy Policy Formulation,* NATIONAL CENTER FOR STATE COURTS REPORT (July 2017) .......... 43

Tom Clarke, *A Contrarian View of Two Key Issues in Court Records Privacy and Access,* TRENDS IN STATE COURTS 2016 .......... 43

## JURISDICTIONAL STATEMENT

The jurisdictional statement of Defendant-Appellant Dorothy Brown ("Brown") is complete and correct, except that Brown misconstrues the relief CNS sought in moving the District Court for entry of a preliminary injunction on November 8, 2017. (Brief 1.)

CNS's Motion for Preliminary Injunction ("PI Motion") asked the District Court to "issue a preliminary injunction restraining [Brown] from denying CNS's constitutional right of contemporaneous access to newly electronically filed complaints, and further requiring her to provide access to new complaints contemporaneously with their receipt by the Circuit Court Clerk." (R. 6; R. 7, PageID 92, 95 (seeking to prohibit Brown "from enforcing her unconstitutional policy and practice of withholding newly e-filed complaints until after administrative processing" and "from denying CNS's right of contemporaneous access to newly electronically filed complaints, and further requiring her to provide access to new complaints contemporaneously with their receipt by the Circuit Court Clerk," so that "the press can review and report on them in the same timely manner as they have done for decades with paper complaints," i.e., on the day of filing).)

<u>STATEMENT OF THE ISSUES</u>

I. Did Brown's failure to raise certain issues before the District Court waive them for purposes of appeal?

II. Is Brown's appeal frivolous because Brown repeats arguments the District Court rejected without explaining how the District Court erred or abused its discretion and because it fails to address applicable Circuit and other law?

III. Has Brown failed to establish the District Court should have abstained?

IV. Has Brown failed to establish that there any Illinois or Cook County court orders or rules precluding entry of the Preliminary Injunction ("PI")?

V. Was the District Court within its discretion in granting CNS's PI Motion?

## STATEMENT OF THE CASE

### I. CNS.

CNS, a news service founded in 1990, employs more than 240 reporters and editors covering civil litigation news from approximately 2,600 state and federal courts across the nation for more than 2,000 subscribers, including law firms, law schools, and other media. (R. 7, PageID 82.) CNS's reporting has been credited as the source for stories by, among many other news outlets, *The New York Times* and *The Wall Street Journal*. (*Id.*, PageID 83.) CNS reports on legal news through its many staff-written publications, including its website (articles updated daily) and CNS's New Litigation Reports, which contain summaries of newsworthy new civil complaints. (*Id.*; R. 10, ¶ 5.) CNS's reporters regularly visit assigned courts to review new civil complaints. (R. 7, PageID 83.)

### II. A Tradition Of Contemporaneous Access On Receipt.

Since CNS began covering the Circuit Court of Cook County ("Circuit Court") in 1997, the Chicago press corps have been able to access new paper-filed complaints on the day of filing. (*Id.*, PageID 83-84; R. 7-4, ¶¶ 10-11, 13, 16, 19; R. 10, ¶¶ 15-18.) Press copies are placed in a tray behind intake counters, which reporters retrieve contemporaneously upon Brown's receipt of them. (R. 7-4, ¶¶ 10-13, 16; R. 10, ¶¶ 16-17.) When the Circuit Court first implemented e-filing in 2009, Brown printed new e-filed complaints as they were received, allowing the press to review them (like paper complaints) before the performance of administrative intake tasks, traditionally called "docketing" and now known as "processing." (R. 7, PageID 84 n.2; R. 7-4, ¶ 13.) This contemporaneous access to new complaints upon

receipt before processing is typical of what has traditionally been provided at state and federal courts across the country (R. 7, PageID 83-84; R. 7-4, ¶¶ 10-13, 16, 26-35; R. 10, ¶¶ 13-19, 24, 29-33; R. 10-1, PageID 768-780, 783-84; R. 21-1, ¶¶ 5, 8, 15; R. 21-3, ¶¶ 10-12), and ensures news about new civil actions can reach the public while that news is still fresh and most likely to grab attention. (R. 10, ¶¶ 36-39; R. 21-1, ¶¶ 23-24.)

## III. Brown's Policy Change.

In January 2015, Brown stopped printing new e-filed complaints for the press and began withholding them until her staff completes administrative tasks and officially "accepts" and posts them for electronic viewing via computer terminals located in Brown's office and the courthouse pressroom. (R. 7, PageID 84-85; R. 7-4, ¶ 13.) This policy change resulted in significant delays in access to e-filed complaints. (R. 7, PageID 85; R. 7-4, ¶¶ 14-15, 19-21; R. 7-5, PageID 320; R. 21-3, ¶ 9; R. 21-3, PageID 933.) For example, from June 1 to September 30, 2017, almost 40% of e-filed complaints were withheld from press review between one and 28 days, whereas almost all (94%) of paper-filed complaints were available for review on the day of filing, before processing. (R. 7-4, ¶¶ 19-20; R. 7-5, PageID 320.) Often, the complaints withheld are the most newsworthy. (R. 7-4, ¶¶ 21-25; R. 21-3, ¶¶ 7-8.)

In light of the transition to mandatory e-filing, originally scheduled to become effective January 1, 2018 (R. 7-1, PageID 99), now extended to July 1, 2018 (A3; R. 35-3, PageID 1045), CNS provided Brown with information about how numerous courts provide the press with access to newly e-filed complaints upon receipt, prior

to clerk review, assignment of a case number, or formal "acceptance" (R. 10-1, PageID 768-779, 781-785; R. 21-1, ¶ 5)[1], like in New York, for example, where each new complaint is displayed, prior to clerk processing, to the press and public in the following fashion:


CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1 RECEIVED NYSCEF: 12/01/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------------- X

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk. 1 of 16

(R. 21-3, ¶ 10.) CNS explained how this could occur at the Circuit Court through terminals already being used to provide delayed access (like an electronic "in-box" similar to the tray where reporters retrieve paper-filed complaints before processing). (R. 10-1, PageID 768-779, 781-785; R. 21-1, ¶ 5.)

Brown rejected this, initially saying she was prohibited from providing online access by § 4.30 of the Electronic Access Policy for Circuit Court Records of Illinois Courts, which prohibits electronic access outside Brown's office. (R. 10, ¶ 41.) After CNS made clear that contemporaneous access need not be provided over the Internet (*id.*, ¶ 42; R. 10-1, PageID 781-785),[2] Brown's general counsel responded Brown would continue her policy of withholding access to new e-filed complaints

---

[1] Since then, Fresno County Superior Court in California has also begun providing access to e-filed complaints upon receipt, before processing. (R. 21-1, ¶¶ 5-8.)

[2] The press room is open after Brown's Office closes at 4:30. (R. 21-1, ¶¶ 16, 22; R. 21-3, ¶ 12.) Reporters regularly stay in the press room until 7 or 8 p.m., enabling them to review late-filed cases that get that day's "filed" date. (*Id.*)

until after processing, including official "acceptance," i.e., what Brown refers to here as the "accept/reject function." (R. 10-1, PageID 789-90.) Brown cited the Illinois Supreme Court's Electronic Filing Standards and Principles, as amended September 16, 2014 ("Standards and Principles") and Circuit Court General Administrative Order 2014-02 ("GAO 2014-02"). (*Id.*) Providing access to new e-filed complaints prior to official "acceptance," Brown stated, "could create mass confusion for the public" and lead to "false reporting" and "potential liability for the court and the press." (*Id.*, PageID 790.) Brown also stated she "plan[ned] to continue this practice when eFiling becomes mandatory." (*Id.*) At no point did Brown mention any confidentiality concerns that now figure prominently in her efforts to justify her practices; an argument belatedly borrowed from the defendant clerk in *CNS v. Yamasaki*. (R. 21, PageID 896.)

## IV. This Action.

Having failed in its efforts to work cooperatively with Brown to receive contemporaneous access to e-filed complaints, CNS brought this 42 U.S.C. § 1983 action and filed its PI Motion. (R. 1; R. 6-7.) Meanwhile, access got even worse (R. 21-3, ¶ 9; R. 21-3, PageID 933), and that trend is expected to continue with mandatory e-filing. (R. 7, PageID 85 n.3; R. 7-4, ¶ 18; R. 10, ¶ 21.) Indeed, Brown acknowledges that a majority of complaints will be accessible within "24 business hours," not contemporaneously. (Brief 5.)

## V. Brown's Mischaracterization Of Illinois And County Orders And Rules.

Brown seeks to shield herself from the First Amendment using GAO 2014-02 and the Standards and Principles, which she argues prohibit her from providing

contemporaneous access. (Brief 22, 43-44.) Brown asserts that GAO 2014-02 "directed the Circuit Court to": "check for thirteen categories of excluded documents—including documents containing confidential information and documents containing personal identity information—before deciding to accept a newly submitted complaint." (Brief 5-6, 22.)

GAO 2014-02 does not speak to any obligation of Brown "to check" that these categories of documents are not electronically filed. (A6, 13.) To the contrary, GAO 2014-02 Paragraph 7 provides: "*the filing party is responsible* to ensure that court documents filed electronically do not disclose [confidential information]" and "*the Clerk's Office is not responsible* for the content of filed documents and has *no obligation* to review, redact, or screen any expunged, sealed or impounded information." (Supplemental Appendix ("SA") 7, ¶ 7.)[3] The Standards and Principles say the same. (SA15, ¶¶ 11-12.) Brown explicitly acknowledged this, telling the *Chicago Tribune*, "[t]he responsibility for redacting [these] sensitive details falls on the attorneys." (R. 21-2, PageID 924.)

GAO 2014-02 provides four limited instances when Brown may reject documents, none of which obligates her to review a filing's content but are merely clerical in nature (*e.g.*, illegible, bulk filings, failure to provide payment of fees). (SA6, ¶ 5(f); *accord* SA14, ¶ 9(f).) Even if Brown becomes aware of any noncompliance with Paragraph 2(c) of GAO 2014-02, she does *not* have the authority to reject a filing outright; she may only call it to the court's attention. ILL.

[3] Unless noted, emphases are added and citations to internal quotations are deleted.

S. CT. R. 138(e). Moreover, Illinois Supreme Court Rule 138(e), which applies to all civil cases, states:

> Neither the court nor the clerk is required to review documents or exhibits for compliance with this rule. If the clerk becomes aware of any noncompliance, the clerk may call it to the court's attention. The court, however, shall not require the clerk to review documents or exhibits for compliance with this rule.[4]

(SA20.)

GAO 2014-02 is clear on its face; the Illinois Supreme Court has not "directed" Brown to "check" e-filed pleadings for compliance with Paragraph 2(c) of GAO 2014-02. GAO 2014-02 also does not contemplate that e-filed complaints are only considered "filed" once "the Circuit Clerk's office determines they do not improperly include excluded documents" as Brown suggests. (*Compare* Brief 27 *with* A6 *and* SA2, ¶¶ 3(b), 3(c) *and* SA11, ¶ 3.)

Nor is Brown's suggestion that a document is not "filed" until after she performs the "accept/reject function" accurate. In fact, Brown's "officially filed" standard appears nowhere in the relevant rules and appears to be made of whole cloth, especially where Illinois common law makes clear that the "filing date of a complaint is the date it is received by the circuit clerk." *Kelly v. Mazzie*, 565 N.E.2d 719, 721 (Ill. App. Ct. 1990); *In re Estate of Davison*, 430 N.E.2d 222, 223 (Ill. App. Ct. 1981) ("A document is legally filed when it is delivered to the proper officer and receives proper endorsement . . . Subsequent ministerial tasks of the clerk evidence the filing of a document but are not essential to its perfection.").

---

[4] Rule 138(f) provides that Brown can only remove a document from public access upon the filing of a motion and 138(g) provides that no clerk or judicial officer is required to redact any personal information from the record. (SA20.)

Underpinning all this is the idea that Brown is, in fact, checking e-filed pleadings for compliance with Paragraph 2(c) of GAO 2014-02. But Brown's lone support for her conclusory statement that she "needs time to determine whether newly submitted complaints have attachments that are prohibited" is one paragraph of the Declaration of Kelly Smeltzer, Brown's General Counsel,[5] which states, in relevant part:

> [C]omplaints that are received electronically by the Clerk's Office are reviewed by one of our clerks to ensure that they are compliant with the . . . Standards and Principles and GAO 2014-02 and once accepted, are immediately accessible to the press, and the public.

(R. 19-1.) Ms. Smeltzer does not state or suggest that Brown voluntarily reviews e-filed pleadings beyond the four clerical categories noted above—the only requirement imposed on her by GAO 2014-02. (*See* SA6, ¶ 5(f).) Given Ms. Smeltzer's silence on this, there is no record support for Brown's position that her office is "checking" e-filed complaints for compliance with Paragraph 2(c) of GAO 2014-02. There also is no evidence that, even if done, any "checking" for compliance has resulted in Brown identifying any improperly e-filed information such that she has protected any "privacy" or "confidentiality" interests. (*But see* Brief 27.)

## VI. PI.

The District Court rejected Brown's contention that the delays were "minor" and issued its PI on January 8, 2018. (A10-12.) In so doing, it "follow[ed] established authority in this Circuit emphasizing that the First Amendment right of access 'contemplates 'immediate and contemporaneous' access,'" concluding that "a

[5] Brown cites Paragraph 12 of Ms. Smeltzer's Declaration (Brief 6), but likely intended to cite Paragraph 11. (*See* R. 19-1.)

policy of delaying access to e-filed complaints until after they are officially accepted or rejected, or otherwise processed by [Brown] violates the First Amendment right of timely access to those complaints, unless [Brown] can demonstrate that the policy is narrowly tailored and necessary to preserve higher values." (A12; A18.)

The District Court addressed Brown's contention that GAO 2014-02 obligates Brown to review e-filed pleadings to ensure compliance with the confidentiality obligations prior to allowing public access and held:

> Brown points to nothing that would require her to delay access to e-filed complaints until after they are processed and officially accepted. *** The Court is not convinced that it is, in fact, the responsibility of Brown to ensure that such documents are not included in e-filings as the Illinois Supreme Court rules . . . specifically place the burden of compliance on the filing parties.

(A6, 13.) The District Court further explained:

> But even if [Brown] has the responsibility to check all e-filed Complaints for compliance with Order No. 2014-02, and even if one assumes that this responsibility constitutes a "higher value" that might justify a delay in access, Brown has made no effort to explain how her policy of withholding all access to e-filed Complaints until acceptance is narrowly tailored to that interest. In fact, Brown has made no effort to explain why it is not feasible for her to adopt any one of the various methods that numerous other . . . courts currently use to provide public access to e-filed complaints before they have been fully processed.

(A13-14.)

The District Court concluded CNS demonstrated a likelihood of success on the merits, would suffer irreparable harm absent an injunction, and that the balance of equities and the public interest favored an injunction. (A14-16.) It thus granted CNS's PI Motion and ordered:

> Brown is given thirty days from today's date to implement a system that will provide access to newly e-filed civil complaints contemporaneously with their receipt by her office . . . If the parties believe a more specific order embodying the Court's grant of a preliminary injunction is required, they are to immediately confer regarding the wording of the order and are to present a draft for the Court's review and signature by no later than January 10, 2018.

(A16.)

The PI is no more than what other district courts have ordered in similar circumstances. *See CNS v. Planet*, 2016 WL 4157210, **12, 20 (C.D. Cal. May 26, 2016) ("*Planet III*") (holding that denying access to new complaints received the last 90 minutes of the day "until the next day"—i.e., for less than two business hours—violated the First Amendment right of timely access), *judgment entered* 2016 WL 4157354, *1 (C.D. Cal. June 14, 2016) (permanently enjoining clerk "from refusing to make newly filed . . . civil complaints . . . available to the public and press until after such complaints . . . are 'processed,' regardless of whether such complaints are filed in paper form or e-filed"); *CNS v. Tingling*, 2016 WL 8739010, at 59, 62, 64[6] (S.D.N.Y. Dec. 16, 2016) ("*Tingling Order*") (rejecting argument that "the next business day" is "immediate enough under the First Amendment" because "our public access cases and those in other circuits emphasize the importance of

---

[6] Because the Westlaw version of the *Tingling Order* is not star-paginated, page cites are to the ECF version of the transcript attached to CNS's PI Motion. (R. 10-1, PageID 162-216.)

immediate access where a right of access is found" and granting CNS's motion for preliminary injunction); *CNS v. Jackson*, 2009 WL 2163609, **2-5 (S.D. Tex. July 20, 2009) (finding clerk's practice of delaying access to new civil petitions until after completion of clerical duties "is effectively an access denial" and enjoining clerk from denying access to complaints "on the same day [they] are filed").

## VII. Brown's Efforts To Avoid Complying With The PI.

Following the PI's entry, Brown filed a "motion for clarification" arguing that compliance with the PI places Brown in conflict with Illinois Supreme Court rules and orders, primarily those discussed above. (R. 24.) After admonishing Brown for failing to raise these arguments previously, the District Court provided the clarification requested on each alleged "conflict" Brown identified and determined that none existed. (A26-27, 3:18-4:24.) The District Court further commented that the PI did not obligate Brown to provide access other than through the computer terminals already set up by Brown for use by the public and press and terminated her motion as moot. (*Id.*)

Having taken no steps to timely comply with the PI, Brown filed her Notice of Appeal on January 31, 2018, and two days later filed a motion to stay the PI with the District Court. (R. 30; R. 35.) The District Court found Brown's motion to stay to be woefully inadequate, commenting:

> Brown barely addresses the merits of CNS's First Amendment claim. Her motion relies in significant part on factual and legal contentions that she failed to advance in . . . response to the preliminary injunction, as well as a contention that the preliminary injunction conflicts with requirements imposed on her by the Illinois Supreme Court. The first set of points is forfeited; the last point is unsupported.

(A20.)

Nevertheless, the District Court addressed each of Brown's arguments and found none had merit. In rejecting Brown's argument that her computer system does not have the functionality to provide access, the District Court stated: "the Court's order most certainly does not mandate Internet-based access; access through computer terminals located within Brown's office will suffice." (A20-21 (also noting that access in the latter manner is specifically called for by Paragraph 13(b) of GAO 2014-02).) In rejecting Brown's argument regarding needing to "commit *all* necessary resources" toward transitioning to mandatory e-filing per a December 22, 2017 Illinois Supreme Court Order (SA22-23), the District Court further admonished Brown for failing to timely bring this to the District Court's attention and held that the Order "most certainly does not prohibit devoting resources to enabling contemporaneous access to filed documents." (A21.)

In rejecting Brown's argument that the PI required her to provide public access to sealed complaints, the District Court held:

> What is actually afoot is a system, effectively created by Brown herself, in which all e-filed complaints are treated as having been filed under seal until Brown herself clears them for public access. Brown cannot end-run the First Amendment by creating a system in which hypothetical doubt regarding whether litigants comply with rules about redaction allow her to exclude the public from access to judicial proceedings until she is good and ready to provide it.

(A22.)

A few days before Brown was obligated to comply with the PI, Brown apparently petitioned the Illinois Supreme Court for relief from the orders Brown

alleged conflicted with the PI. (R. 35, ¶ 17; SA24-25.) She also wrote Chief Judge Evans of the Circuit Court seeking amendment to GAO 2014-02. (R. 35, ¶ 19; SA26.) To both, Brown argued that GAO 2014-02 conflicted with the PI. (R. 35, ¶¶ 17, 19; SA24-25; SA26.) Until the filing of her motion to stay, Brown did not provide the District Court or CNS notice of her petition or her request to Chief Judge Evans. (R. 41, PageID 1065 n.1.) Brown's efforts in this regard were transparently self-serving as she sought to obtain last minute support for her position that a conflict exists between GAO 2014-02 and the PI. No such support was forthcoming. While the record is silent as to whether Chief Judge Evans ever responded to Brown, the Illinois Supreme Court summarily denied Brown's petition. (SA27.)

## SUMMARY OF ARGUMENT

The Court should affirm the District Court's PI for numerous reasons.

First, Brown's failure to assert certain arguments before the District Court—including her failure to contest that a presumptive First Amendment right of access attaches to e-filed complaints upon receipt and that to overcome such a right, Brown must satisfy strict scrutiny—waives them and the Judicial Council of California's Amicus Brief ("AB") cannot un-waive them or raise new arguments not even raised by Brown in this appeal.

Second, Brown's appeal is frivolous because she makes no effort to address: the District Court's rationale; this Circuit's precedent on primary issues, including on the First Amendment right of access; or the *Planet III*, *Tingling*, and *Jackson* preliminary injunctions entered in CNS's favor under similar circumstances.

Third, the District Court was not required to abstain from hearing the case or entering the PI.

Fourth, no Illinois or Cook County order or rule conflicted with the PI or precluded entry of the PI.

Fifth, the District Court correctly found that CNS had a likelihood of success on the merits because CNS's presumptive First Amendment right of access is being violated and Brown failed to meet her burden to overcome it. There is a First Amendment right of access to civil complaints that attaches on their receipt for filing. Brown's policies deny contemporaneous access, though complying with the First Amendment and the PI is as simple as providing contemporaneous access to e-filed complaints in the same fashion as numerous other courts across the country do and could be accomplished via the same computer terminals Brown is already using to provide access to complaints, but on a delayed basis. (A3-4, 14; A20; A27, 4:13-17.)

Because Brown does not show how the District Court abused its discretion or erred in granting CNS's PI Motion and because the District Court correctly interpreted and applied the law in these circumstances, the PI should be affirmed.

## ARGUMENT

### I. Standard Of Review.

Brown is incorrect that "the issues before the district court on [CNS's PI Motion] were all questions of law." (Brief 13.) Though the parties agreed there

were no disputed facts (R. 47, 2:9-20; *see also* A9)[7], Brown ignores the balancing the District Court conducted in determining that the PI was warranted. While legal conclusions are reviewed de novo and findings of fact for clear error, a district court's "ultimate weighing and balancing that makes up the decision whether to issue a preliminary injunction is highly discretionary[,]" given substantial deference, and reviewed for an abuse of discretion, i.e. for "whether the judge exceeded the bounds of permissible choice in the circumstances, not what [this Court] would have done if [it] had been in his shoes." *A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 905-06 (7th Cir. 1986) (preliminary injunction affirmed); *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015) (same).

This Court reviews the District Court's analysis of the PI factors—(1) a likelihood of success on the merits; (2) likely irreparable harm without the injunction; (3) the harm plaintiff would suffer absent an injunction is greater than the harm to the defendant if an injunction is granted; and (4) the injunction is in the public interest—under the mixed abuse of discretion standard set forth above. *Valencia v. City of Springfield,* 883 F.3d 959, 965 (7th Cir. 2018) (affirming grant of preliminary injunction).

## II. Brown Waived Arguments She Failed To Raise With The District Court.

Brown cannot assert new arguments here that were never presented to the District Court. Appeals are "not designed to serve as an unsuccessful party's second

[7] The lack of an evidentiary hearing does not affect this Court's standard of review. *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.3d 1429, 1439-40 (7th Cir. 1986).

bite at the apple." *Republic Tobacco Co. v. N. Atl. Trading Co.,* 381 F.3d 717, 728 (7th Cir. 2004); *PQ Corp. v. Lexington Ins. Co.*, 860 F.3d 1026, 1036 (7th Cir. 2017) ("[I]t is axiomatic that an issue not first presented to the district court may not be raised before the appellate court as a ground for reversal.").

Amicus cannot cure Brown's waiver by raising issues not raised by Brown below or even raised by Brown at all. *Justice v. CSX Transp., Inc.*, 908 F.2d 119, 125 (7th Cir. 1990) (amicus cannot "unwaive" issues); *Rubin v. Weinberger*, 524 F.2d 497, 500 (7th Cir. 1975) (amicus could not advance argument that was waived by appellant because "it comes too late for [this Court's] consideration"); *see also Sanders v. John Nuveen & Co., Inc.*, 554 F.2d 790, 794 (7th Cir. 1977) (refusing to "pass upon" argument advanced by amicus "since plaintiff has not advanced it").

Among the arguments Brown has waived for failing to assert them before the District Court, or at all, are:

- Brief 18-22 (arguing for first time that "[u]nder the current design of the computer system . . . complaints that must be sealed cannot be sealed until the 'accept/reject function' is completed");

- Brief 23-37 (arguing for first time that First Amendment does not compel pre-trial/pre-judgment access to court documents); AB 5-24 (arguing that there is no First Amendment right of access until after "used by the courts as a basis for adjudication");

- AB 25-26 (though *never* raised by Brown, even on appeal, arguing that strict scrutiny does not apply to "mere delays" in access);

- AB 26-27 (though *never* raised by Brown, even on appeal, arguing that time, place, and manner ("TPM") analysis applies).

## III. Brown Improperly Repeats Arguments Without Addressing The District Court's Rationale Or Key Precedent.

Brown rehashes the same flawed arguments rejected by the District Court without addressing its findings or this Court's precedent. This approach warrants rejecting the rehashed arguments as frivolous. *Berwick Grain Co. v. IDOA*, 217 F.3d 502, 505 (7th Cir. 2000) (finding appeal frivolous where it "rehashes positions that the district court properly rejected"); *see also Bovee v. Broom*, 732 F.3d 743, 745 (7th Cir. 2013) ("The belief that ostriches stick their heads in the sand to avoid seeing danger is a canard. Lawyers shouldn't do it either."); *Smeigh v. Johns Manville, Inc.*, 643 F.3d 554, 565-66 (7th Cir. 2011) (failure to address "district court's well-reasoned explanations" was frivolous).

Further, Brown ignores key precedent from this Circuit and other courts. But the law is clear that "counsel . . . have professional obligations . . . and may not . . . simply ignore circuit precedent with which they or their client disagree." *Switzer v. Heckler*, 742 F.2d 382, 383 n.1 (7th Cir. 1984); *Tomczyk v. Blue Cross & Blue Shield United*, 951 F.2d 771, 778 (7th Cir. 1991) ("Ignoring precedent from the same jurisdiction is not making a good faith argument for the extension, modification, or reversal of existing law.").

Among the arguments Brown makes that suffer from these defects are:

- Brief 22, 27, 35, 43-45 (failing to address how the District Court erred in its reading of GAO 2014-02 or Illinois Supreme Court Rules);

- Brief 23-33 (ignoring dispositive precedent on key constitutional issues, including *In re Associated Press*, 162 F.3d 503 (7th Cir. 1998) ("*AP*"), *Grove Fresh Distribs. v. Everfresh Juice Co.,* 24 F.3d 893 (7th Cir. 1994), and *In re Continental Ill. Secs. Litig.,* 732 F.2d

> 1302 (7th Cir. 1984)—all seminal Seventh Circuit authorities on First Amendment right to access—and district court cases enjoining delays of even one day on First Amendment grounds).

## IV. The District Court Did Not Err In Finding Abstention Inapplicable.

Abstention is an "extraordinary" exception to the general rule that federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358 (1989) (*"NOPSI"*); *FreeEats.com, Inc. v. Ind.*, 502 F.3d 590, 595 (7th Cir. 2007). The right of a plaintiff to litigate federal claims in federal court should not generally be denied. *See Steffel v. Thompson*, 415 U.S. 452, 462-63, 72-73 (1974). Indeed, the federal courts' "unflagging obligation" to exercise their jurisdiction "is particularly weighty when those seeking a hearing in federal court are asserting . . . their right to relief under 42 U.S.C. § 1983." *Miofsky v. Super. Ct.*, 703 F.2d 332, 338 (9th Cir. 1983) (rejecting *Younger* abstention).

Courts must apply abstention doctrines narrowly to avoid "mak[ing] a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *NOPSI*, 491 U.S. at 368. When a defendant urges abstention, a court's task is "not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications' that can suffice . . . to justify the *surrender* of that jurisdiction."

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25-26 (1983) (emphasis original).[8]

These admonitions are particularly apt where, as here, Brown attempts to shoehorn the facts of this case into abstention constructs that, if adopted, would fall well outside the "'carefully defined' . . . areas in which such 'abstention' is permissible . . ." *NOPSI*, 491 U.S. at 359. As the Ninth Circuit found in *CNS v. Planet*, "[a]ccepting [the clerk's] view that *O'Shea* applies 'when litigants seek federal court injunctions to reform the institutions of state government' would justify abstention as a matter of course in almost any civil rights action under [Section] 1983. Mindful that federal courts have a 'virtually unflagging obligation' to exercise our jurisdiction, we decline to adopt this position." 750 F.3d 776, 792 (9th Cir. 2014) ("*Planet I*"). This is why *O'Shea* and *Younger* abstention have been consistently rejected by federal courts considering § 1983 challenges to state court restrictions on access. *See Tingling Order,* 47-48 (rejecting abstention argument in CNS's action seeking to restrain clerk from withholding e-filed complaints from press until after administrative processing); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 85-86, 101 (2d Cir. 2004) (rejecting *Younger* abstention in § 1983 action asserting First Amendment right of access to state court sealed dockets); *Rivera-*

[8] Contrary to Brown's contention (Brief 11-13), abstention is not jurisdictional. *Waldron v. McAtee*, 723 F.2d 1348, 1351 (7th Cir. 1983).

*Puig v. Garcia-Rosario*, 983 F.2d 311, 319-20 (1st Cir. 1992) (rejecting *Younger* abstention where reporter challenged rule that closed all preliminary hearings).[9]

A. *Younger* Abstention Does Not Apply.

*Younger* abstention "requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *FreeEats.com,* 502 F.3d at 595 (citing *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)). But it is only appropriate where there is a pending state court adjudicative proceeding with which the federal claim might interfere. "Absent any *pending* proceeding in state tribunals . . . *Younger* abstention [is] clearly erroneous." *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (emphasis original); *Vill. of DePue v. Exxon Mobil Corp.*, 537 F.3d 775, 783 (7th Cir. 2008) ("The rule in *Younger* protects the principles of 'equity, comity, and federalism,' which 'have little force in the absence of a pending state proceeding.'").

This cornerstone of *Younger* abstention does not exist here. Brown's theory is that GAO 2014-02 is an "ongoing, standing order." (R. 19, PageID 866.) But its mere existence does not qualify as a "proceeding" under *Younger*. *See DePue*, 537 F.3d at 784 (consent order in earlier state court proceeding did not implicate *Younger*). That is, in part, because the "proceedings" to which *Younger* applies are the adjudication, on the merits, of state court cases. *Forty One News, Inc. v. Cnty. of Lake*, 491 F.3d 662, 665 (7th Cir. 2007) (*Younger* abstention is only appropriate

[9] Brown cites *Hanson v. Circuit Court*, 591 F.2d 404 (7th Cir. 1979), for her contention that federal courts "can and do invoke the *Younger* doctrine to abstain from deciding action filed pursuant to" § 1983. (Brief 17.) *Hanson* found the habeas corpus statute precluded a Section 1983 action, and did not address *Younger* other than in dicta. 591 F.2d at 410.

"when there is an action in state court against the federal plaintiff and the state is seeking to enforce the contested law in that proceeding"); *Rogers v. Desiderio*, 58 F.3d 299, 301 (7th Cir. 1995) (where federal suit was "not designed to interfere with or undercut state case," *Younger* abstention not at issue). The District Court was thus correct in concluding "[t]here are simply no ongoing state judicial proceedings with which CNS's requested relief might interfere . . . For that reason alone, *Younger* abstention is not appropriate." (A5-6 (collecting cases).)

Even if GAO 2014-12 were a "proceeding" under *Younger*, abstention would still be inappropriate because CNS does not seek to "interfere" with GAO 2014-02 at all. CNS does not seek to enjoin the operation of GAO 2014-02, nor does CNS claim it is the reason for the delays at issue. As CNS has made clear, and as the District Court found, the problem is Brown's policies, not GAO 2014-02. (A6-7; A22.)

### B. *O'Shea* Abstention Should Be Rejected.

Although not raised in the District Court, Brown argues here that abstention is proper under *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974), a seldom-used and narrow application of *Younger*. In making this argument, Brown tries to transform *O'Shea* into a free-form equitable abstention argument, which it is not.

*O'Shea* abstention is intended to prevent the "kind of interference" with the adjudication of merits of state court proceedings that *Younger* sought to prevent. *Id.* The difference is the *O'Shea* doctrine concerns interference with future proceedings, rather than pending state court actions. *Id.*

*Planet I,* in concluding that the case presented "an important First Amendment question," observed that "*O'Shea* abstention . . . is appropriate where

the relief sought would require the federal court to monitor the substance of individual cases on an ongoing basis to administer its judgment." 750 F.3d at 779, 790. Conversely, "*O'Shea* abstention is inappropriate" in cases like that case and this one "where the requested relief may be achieved without an ongoing intrusion into the state's administration of justice." *Id.* at 790-92.[10]

*Tingling* reached a similar conclusion in rejecting *O'Shea* abstention: "this Court finds the remedy sought by CNS poses little risk of an ongoing federal audit or a major continuing intrusion of the equitable power of the federal courts in the daily conduct of state proceedings." *Tingling Order*, 47. Brown does not mention *Tingling*, simply concludes *Planet I* was wrong (Brief 21 n.9), and fails to explain how *O'Shea* would be appropriate given the record of this case, which shows, that, as in *Planet III*, *Tingling*, and *Jackson*, it is a simple matter for a federal court to require a court clerk to cease practices resulting in a denial of contemporaneous access to civil complaints without the need for case-by-case enforcement. *Planet III*, 2016 WL 4157354, *1 *Tingling Order*, 47; *Jackson*, 2009 WL 2163609, *5.

Nor is "[t]he jurisprudence" on abstention "somewhat murky" as Brown contends. (Brief 21 n.9.) The few instances in which courts have abstained under *O'Shea* have been cases calling for a major ongoing intrusion by federal courts into future state court adjudicative proceedings. In *O'Shea*, where plaintiffs sought injunctive relief against magistrate and judge "aimed at controlling or preventing

[10] *Accord Tarter v. Hury*, 646 F.2d 1010, 1013-14 (5th Cir. 1981) (dividing line is between cases that would require "case-by-case evaluations of discretionary decisions," in which *O'Shea* abstention is appropriate, and cases like this one that instead involve "nondiscretionary procedural safeguard[s]" against the violation of constitutional rights, in which *O'Shea* abstention is improper).

the occurrence of specific events that might take place in . . . future state criminal trials" and which "would contemplate interruption of state proceedings to adjudicate assertions of noncompliance," the court found such relief would be "nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference" that *Younger* and related cases "sought to prevent." *Id.* at 500. The Court found that if plaintiffs' allegations were proven, enjoining court officials from violating plaintiffs' constitutional rights would require "periodic reports . . . on bail and sentencing." *Id.* at 492-93 & n.1.

Many of the cases Brown cites do not involve abstention at all. Among these is *Welch v. Johnson* (Brief 22), which simply holds that state courts have concurrent jurisdiction over § 1983 claims. 907 F.2d 714, 722 n.8 (7th Cir. 1990). But "the mere fact that a case *could* be heard in state court is insufficient to justify *Younger* abstention." *DePue,* 537 F.3d at 783 (emphasis original).[11]

As for the cases Brown cites that do involve abstention, they are readily distinguishable. In *Planned Parenthood League v. Bellotti* (Brief 20), the court actually found abstention was improper where a decision would not have unduly interfered with state proceedings or procedures. 868 F.2d 459, 466 (1st Cir. 1989). In *Parker v. Turner* (Brief 11, 20-21), the relief sought required detailed supervision by the federal courts of state judges' conduct during hearings. 626 F.2d 1, 8 (6th Cir. 1980). In *Juidice v. Vail* (Brief 17), the plaintiff ignored an ongoing state

---

[11] Other cases Brown cites (Brief 16) that do not involve abstention are: *Lewis v. Casey*, 518 U.S. 343 (1996) (standing, not abstention); *Missouri v. Jenkins*, 515 U.S. 70 (1995) (same); *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (no irreparable injury); *Stefanelli v. Minard*, 342 U.S. 117 (1951) (pre-*Younger* case applying "maxim that equity will not enjoin a criminal prosecution").

proceeding directed at him for nine months and subsequently filed a § 1983 action seeking to enjoin the state court from using certain New York statutory contempt processes against him. 430 U.S. 327, 330 (1977). In *E.T. v. Cantil-Sakauye* (Brief 21), the requested relief was found to lay the groundwork for future "examination of the administration of a substantial number of cases" by a federal judge, amounting to "an ongoing federal audit of [state court] proceedings." 682 F.3d 1121, 1124 (9th Cir. 2012). Such is not the case here. (R. 21-1, ¶¶ 6-14.)

*Rizzo v. Goode* (Brief 19), involved an injunction ordered after two trials, and found the relief—an "all-encompassing 14-page" manual governing police conduct—exceeded the "scope of federal equity power" where the misconduct was not caused by departmental policy, but by a few officers. 423 U.S. 362, 365 n.2, 371, 378-79 (1976). *Rizzo* is "a narrow opinion," *Parker*, 626 F.2d at 6, which courts "do not read . . . as requiring total abstention":

> [T]he teaching of Rizzo is not so broad. That case actually holds that a federal court should refrain from assuming a comprehensive supervisory role via its injunctive powers over broad areas of local government for the purpose of preventing speculative and probably only sporadic future misconduct by local officials toward an imprecise class of potential victims, especially when that misconduct is not part of a pattern of persistent and deliberate official policy.

*Campbell v. McGruder*, 580 F.2d 521, 526 (D.C. Cir. 1978).

Moreover, even where *Rizzo* concerns may apply, permitting the state agency to craft the specific method in which it will comply with the federal court's order can address the federalism and comity concerns of *Younger/O'Shea*. *Fernandez v. Trias Monge*, 586 F.2d 848, 851 n.2 (1st Cir. 1978) (concerns addressed where order

"would outline only the minimum due process standard, leaving the choice of procedures and the operational details to the Commonwealth"). In contrast to *Rizzo*, there is little doubt Brown's constitutional violation is attributable not to the "unauthorized actions of a few individual[s]" in Brown's office, but to Brown's policies. (A22; A6-7.) And contrary to Brown's suggestion, CNS did not seek, and the PI did not require, that access be provided in any particular manner; the details as to how to implement it are entirely open to Brown, as was true of the similar injunctions granted in *Jackson*, *Tingling* and *Planet III*. (A4, 16; A20; A26-27, 3:18-4:17; R. 21-1, ¶ 16.)

For all of these reasons, Brown's abstention arguments should be rejected.

## V. The District Court Correctly Found CNS Established A Likelihood of Success On The Merits Of Its First Amendment Claim.

The First Amendment questions this appeal presents are simple and straightforward: (1) does the presumption of access to civil records, "of constitutional magnitude," *Continental,* 732 F.2d at 1308, apply to new e-filed complaints; (2) do the delays—two out of every five e-filed complaints withheld from press review for between one-to-28 days—violate this Circuit's rule that "once access is found to be appropriate, access ought to be 'immediate and contemporaneous,'" *AP*, 162 F.3d at 506-07 (quoting *Grove Fresh,* 24 F.3d at 897); and (3) if the answer to both is "yes," has Brown satisfied her "formidable task," *id.* at 506, of demonstrating that her practice of withholding access until some undefined date after processing survives constitutional scrutiny?

In the District Court, Brown did "not dispute CNS's contention that the First Amendment presumption of access applies to civil complaints" (A9), nor did she dispute the premise that the right of access to complaints attaches on receipt for filing (although she claimed, erroneously, complaints are not "filed" on receipt). (R. 19, PageID 852-53, 857-60.) Instead, she said the delays were too "minor" to matter. (A10.)

Brown now seeks to avoid the question of whether the access she provides is "contemporaneous" by advancing a wholly new argument: as a matter of law, she says, the right of access to complaints does not attach until after trial or judgment. (Brief 23-29.) Consequently, she contends, there is no right to see new complaints until after a clerk decides, at some undefined point in time after processing, to make them available. (*Id.*; *see also* AB 5.)

Since Brown made no mention of this theory in the District Court, she waived it, and Amicus cannot cure that defect. (*See* Argument, § II.) But even if the Court considers it, the argument fails because a complaint, by its very nature, "influence[s]" and "underpin[s] . . . judicial decision[s]," is "vital to the case's outcome," and thus should be "presumptively public" when "transmitted" to a court. *Baxter Int'l v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002). That is why there is a "long-standing public policy [of] open access to complaints," *U.S. ex rel. Dahlman v. Emergency Physicians*, 2004 WL 287559, *2 (D. Minn. Jan. 5, 2004), once "filed in the office of the county clerk," that is nearly a century old. *Campbell v. N.Y. Evening Post*, 157 N.E. 153, 155 (N.Y. 1927). It thus is not surprising the Ninth

Circuit rejected the argument by Amicus's counsel that there is no constitutional right of access to complaints "that have not yet been the subject of a hearing." *CNS v. Planet*, 614 F. App'x. 912, 915 (2015) ("*Planet II*"). The Second Circuit rejected a similar argument, *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 140 (2d Cir. 2016) (holding presumption of access attaches to complaint before judicial action), and district courts have rejected the result Brown and Amicus say flows from it, i.e., that access can be delayed for processing without implicating the constitution. *E.g.*, *Planet III*, 2016 WL 4157210, *12 ("right of timely access to newly filed complaints arises when a complaint is received by a court, rather than after it is 'processed'").

That leaves only the final two questions—do access delays implicate the First Amendment and has Brown established that the delays which result from processing before access are narrowly tailored and essential to preserve higher values. As to the first, the law is clear that even short delays implicate the First Amendment, *AP*, 162 F.3d at 506-07, and as to the second, the "First Amendment right of access cannot be overcome" by "conclusory assertion[s]," *Presley v. Georgia*, 558 U.S. 209, 216 (2010), and a misreading of the applicable Illinois court rules, which is all Brown offers. The District Court was correct in concluding CNS has shown a likelihood of success on the merits.

### A. <u>There Is A Clear History Of And Logic In Access To Complaints When Received By A Court For Filing.</u>

Brown and Amicus begin by arguing that a clerk's "supervisory power over [their] own records and files" justifies denying access during a "wait period" while

they exercise "discretion" to complete administrative tasks. (Brief 23, 29, 40 (quoting *Nixon v. Warner Commc'ns,* 435 U.S. 589, 597 (1978)); AB 13-14.)

Once "the First Amendment presumption of access attaches," however, a clerk's actions in delaying access are subject to public accountability. *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 2016 WL 1071107, **4, 8 (S.D.N.Y. Mar. 18, 2016). That is why Brown and Amicus argue: "[t]he First Amendment does not compel access to pre-trial/pre-judgment court documents in civil actions" (Brief 23), or before "use by the court as a basis for adjudication." (AB 5.) This position has been repeatedly rejected, does not survive the experience and logic test, and its overreach demonstrates the error of its underlying premise, i.e., that access can be delayed pending administrative processing, whatever that entails and however long it takes.

1. <u>A long-standing right of access to complaints is well-recognized and attaches on receipt for filing.</u>

While the Supreme Court "'has never intimated a First Amendment guarantee of a right of access to all sources of information within government control'" (Brief 25 (quoting *Houchins v. KQED*, 438 U.S. 1, 9 (1978))), that is *not* true of the courts.[12] Following *Houchins*, the Court held that the right of the press and public "to attend . . . hear, see, and communicate observations" about criminal

---

[12] The authorities at AB 13-14 involve title, tax and vehicle records, *Bell v. Commonwealth Title & Trust Co.*, 189 U.S. 131 (1903) (title); *Upton v. Caitlin*, 31 P. 172 (Colo. 1892) (abstracts); *State v. McMillian*, 38 So. 666 (Fla. 1905) (same), *Direct-Mail Serv. v. Registrar of Mot. Vehicles*, 5. N.E.2d 545 (Mass. 1937), or efforts to send "copying equipment" into a recorder's office to copy "original documents" at will, "endangering the safety of such files," *State ex rel. Williston Herald v. O'Connell*, 151 N.W.2d 758, 763 (N.D. 1967), and are not relevant to e-filed complaints. The same distinction addresses Brown's reliance on the Illinois FOIA (Brief 34) and many of the statutes Amicus cites. (*See* Argument, § V(A)(3).)

proceedings and records is protected by the First Amendment. *Richmond Newspapers v. Va.*, 448 U.S. 555, 575-77 (1980); *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596 (1982); *Press-Enter. Co. v. Super. Ct.,* 464 U.S. 501 (1984) ("*Press-Enterprise I*"); *Press-Enter. Co. v. Super. Ct.,* 478 U.S. 1 (1986) ("*Press-Enterprise II*").

This "analysis . . . is equally applicable to civil . . . cases." *Gannett v. DePasquale*, 443 U.S. 368, 386 n.15 (1979). Brown can only intimate this is an open question by failing to acknowledge that "[e]very circuit to consider the issue has concluded that the qualified First Amendment right of public access applies to civil as well as criminal proceedings," *Dhiab v. Trump*, 852 F.3d 1087, 1099 (D.C. Cir. 2017) (Rogers, J., concurring), that "the federal courts of appeal have widely agreed that it extends to . . . records and documents" in civil cases, *Planet I*, 750 F.3d at 786, including this Circuit, which has long recognized that this presumption "of constitutional magnitude" equally applies to "judicial records" in civil cases. *Continental*, 732 F.2d at 1308.

"The First Amendment presumes that there is a right of access to proceedings and documents which have 'historically been open to the public' and where the disclosure of which would serve a significant role in the functioning of the process in question." *Grove Fresh*, 24 F.3d 897 (applying *Press-Enterprise II*'s "experience and logic" test); *accord AP*, 162 F.3d at 506. While *Richmond Newspapers* found access to trials was supported by an "unbroken, uncontradicted history" going back to English common law, 448 U.S. at 573, such a history is "not required." *Detroit Free*

*Press v. Ashcroft*, 303 F.3d 681, 700 (6th Cir. 2002). Indeed, the "Supreme Court effectively silenced this argument in *Press-Enterprise II*" and "Courts of Appeals have similarly not required such a showing." *Id.* Rather, the history to support a right of access need only be long enough so the "tradition of accessibility implies the favorable judgment of experience." *Globe Newspaper*, 457 U.S. at 605.

Amicus faults the District Court for "not apply[ing] the *Press-Enterprise*" test. (AB 4.) Although CNS's PI papers addressed this test (R. 7, Page ID 89; R. 7-4, ¶¶ 13, 26-35; R. 10, ¶¶ 13-18, 24, 29-32, 36-39; R. 21-1, ¶¶ 5, 8, 15, 23-24; R. 21-3, ¶ 10), the District Court did not need to apply it because Brown did not dispute the existence of a First Amendment right of access to complaints once filed. (A9; A18.) Brown was right not to dispute it, as a right of access attaches to complaints on filing, even if not yet processed or "used by the court as a basis for adjudication." (AB 5; Brief 23.)

2. <u>There is a long history of access to complaints prior to judicial action.</u>

This Circuit has recognized that "in all but the most extraordinary cases—perhaps those involving weighty matters of national security—complaints must be public." *Levenstein v. Salafsky*, 164 F.3d 345, 348 (7th Cir. 1998). Other courts agree. *See, e.g.*, *Bernstein*, 2016 WL 1071107, *9 ("Complaints have been regarded as public for a long time . . . and are filed publicly *even when there is arguably sensitive information in the complaint.*") (emphasis original); *In re NVIDIA Corp. Deriv. Litig.*, 2008 WL 1859067, *3 (N.D. Cal. Apr. 23, 2008) (a complaint is "the means by which a plaintiff invokes the authority of the court" and "the public has a right to know who is invoking it, and towards what purpose, and in what manner");

*Dahlman,* 2004 WL 287559, *2 (noting "long-standing public policy [of] open access to complaints").

Brown and Amicus urge this Court to disregard this authority (*see* AB 9) and return to "an illiberal time," H. CROSS, THE RIGHT TO KNOW 29 (1953), when complaints were "private dealings between private parties." *Schmedding v. May*, 48 N.W. 201, 202 (Mich. 1891). In fact, however, "the right to inspect . . . judicial records" dates to "a very early period" in England. *Ex parte Drawbaugh*, 2 App. D.C. 404, 406 (1894). "[I]n the United States, no regulation [restraining access] is known to have been expressly made; and any limitation of the right to a copy of a judicial record or paper, when applied for by any person having an interest in it, would probably be deemed repugnant to the genius of American institutions." *Id.* at 406-07. Amicus errs in asserting *Drawbaugh* "declin[ed] to recognize a right" of access upon filing. (AB 9.) Rather, *Drawbaugh* held that documents filed with the appellate clerk become publicly accessible records. 2 App. D.C. at 407. Likewise, *Schmedding,* relied on by Amicus (AB 9), is inapplicable. It involved a party's requested suppression of divorce records. 48 N.W. at 202.

*Cowley* was a defamation case where a newspaper argued its article was protected by the "fair report" privilege. 137 Mass. 392, 392-93 (1884). Justice Holmes said the privilege did not apply to "the contents of a paper filed . . . in the clerk's office" because it "is done out of court" and did not constitute a judicial proceeding. *Id.* at 395. *Cowley* did not involve access and at the time of *Cowley*, the press "obtained information . . . from the clerk" or by "examining the file" for

"pleadings" and proceedings that day, even where "no rule of law authorize[d]" it. *Park v. Detroit Free Press*, 40 N.W. 731, 731-32, 734 (Mich. 1888); *accord Schmedding*, 48 N.W. at 201 (absent suppression, reporters could report "all and the whole of the proceedings and causes commenced and pending in the courts . . ., so far as the same is revealed by the files, records, proceedings, and sittings of said court").

As for *Cowley*'s holding, this Circuit and other courts ultimately "rejected *Cowley*," *Am. Dist. Tel. Co. v. Brink's Inc.*, 380 F.2d 131, 132 (7th Cir. 1967), because allowing the press to say a "complaint has been filed," but report "the contents of the complaint at its peril," was "to revive a rule of privacy in relation to litigation that no longer ha[d] substance." *Campbell*, 157 N.E. at 156. "Similar rulings [were] made in other states." *Am. Dist.*, 380 F.2d at 132-33 (citing, *e.g.*, *Lybrand v. State Co.*, 184 S.E. 580, 583 (S.C. 1936) ("[T]he summons and complaint [must] be filed [with the clerk]. . . [W]hen so filed they become public documents in a public office.")). By 1953, "[v]eteran newsmen in many jurisdictions never ha[d] heard of such suppression." CROSS, 147 & n.3. *Campbell* supplanted *Cowley* because a "privilege to report on judicial proceedings . . . not at the point of judicial action, but rather when the complaint is filed," *Newell v. Field Enters.*, 415 N.E.2d 434, 444 (Ill. App. Ct. 1980),[13] reflected the reality that reporters could obtain and

[13] While a "majority of jurisdictions ha[d] concluded that this privilege does not attach until some form of judicial action has taken place," that was no longer the case by 1980. *Newell*, 415 N.E.2d at 443 (citing seven cases for the "minority position" it adopted that privilege attaches "when the complaint is filed," and two for the "majority," one of which, *Byers v. Meridian Printing*, 95 N.E. 917 (Ohio 1911), was "superseded by statute" in 1953). By then,

report on complaints "filed the same day." *Hurley v. Nw. Pub'ns*, 273 F. Supp. 967, 969 (D. Minn. 1967); *Shiver v. Valdosta Press*, 61 S.E.2d 221, 226 (Ga. Ct. App. 1950); *Siegel v. Sun Printing & Pub'g Ass'n*, 223 N.Y.S. 549, 550 (App. Div. 1927). This "clear trend" of cases rejecting *Cowley* and recognizing a privilege to report on complaints once "filed in court" recognized that "[i]f the initial pleadings exception is retained, an anomalous result obtains: Public documents to which the citizens of our state have free access cannot be disseminated or reported on without risk of a lawsuit." *Salzano v. N. Jersey Media Group*, 993 A.2d 778, 789-91 (N.J. 2010).

Despite this widespread rejection of *Cowley*, including by this Circuit, Brown and Amicus rely heavily on it and its progeny, including *In re Reporters Committee*, 773 F.2d 1325, 1336 (D.C. Cir. 1985)—which cited *Cowley* to find no "tradition of access" pre-judgment while admitting "modern American practice" may be "to the contrary"—and *IDT Corp. v. eBay*, 709 F.3d 1220, 1224 n.* (8th Cir. 2013), which cited *Reporter's Committee*. But "courts in subsequent decisions have declined to follow the reasoning and approach of . . . *Reporters Committee*" on "[c]ontemporaneity of access," *NBC Subsidiary (KNBC-TV) v. Super. Ct.*, 980 P.2d 337, 366 n.43 (Cal. 1999), and *IDT*—which followed *Reporter's Committee* without noting its rejection—was similarly spurned in *Bernstein*:

> If, as the Eighth Circuit has suggested there is an "historical case to be made that a civil complaint filed with a court, but then soon dismissed pursuant to settlement, is not the sort of judicial record to which there is a presumption of public access," . . . – a proposition that New York

---

"[t]he heavy weight of authority [was] contrary to the earlier rule." *Hanish v. Westinghouse Broad.*, 487 F. Supp. 397, 401 (E.D. Pa. 1980).

> courts found antiquated even in 1927 . . . – the parties have not made the case[.]

2016 WL 1071107, *7;[14] *see also Bernstein*, 814 F.3d at 141 (claim of "no strong historical tradition of public access" to complaints "unpersuasive" as it "ignores . . . the last eight decades" when "[c]omplaints have historically been publicly accessible by default").

The modern view of a complaint as an "important paper[,]" *Standard Chtd. Bank Int'l v. Calvo*, 757 F. Supp. 2d 258, 260 (S.D.N.Y. 2010), to which access on filing is "essential," *In re Eastman Kodak Co.*, 2010 WL 2490982, *1 (S.D.N.Y. June 15, 2010), also flows from changes in civil litigation. Until promulgation of the Federal Rules of Civil Procedure in 1938, there was little pre-trial activity, and the parties moved quickly to trial. Ellen E. Sward, *A History of the Civil Trial in the United States*, 51 U. KAN. L. REV. 347, 350-86 (2003). Since then, there has been a "transformation of the trial—limited in time and space—into litigation, which can be quite lengthy and need not culminate in a trial at all." *Id.* at 406. And because "an increasing number of society's problems are resolved through the judicial process," courts now recognize "the entire judicial system from the *filing of a complaint* until final decision before the highest court of review should be exposed to the bright light of public scrutiny." *Newell*, 415 N.E.2d at 444.

---

[14] *Reporters Committee* does not conflict with recent contrary cases because it was decided in 1985, one year ***before*** *Press-Enterprise II* made clear a history of access need not date to common law, which *IDT* overlooked in citing *Reporters Committee*.

3. <u>"Once filed," complaints are public because they affect the disposition.</u>

As this Circuit has made clear, "[o]nce filed with the court, . . . '[d]ocuments that affect the disposition . . . are presumptively open to public view.'" *City of Greenville v. Syngentia Crop Protection*, 764 F.3d 695, 698 (7th Cir. 2014) (quoting *In re Specht,* 622 F.3d 697, 701 (7th Cir. 2010)). The question is not *when* a document is used as a basis for adjudication, but whether it "affect[s] judicial decisions." *Syngentia*, 764 F.3d at 697. If a document has—or necessarily will—"influence or underpin the judicial decision," it is "presumptively public." *Baxter*, 297 F.3d at 545; *Continental*, 732 F.2d at 1310 ("disclosure of the contents" of report "offered" with a motion would have been proper *at the time the motion was still pending*" because "the presumption of access normally involves a right of *contemporaneous* access") (second emphasis original).

A complaint necessarily affects judicial decisions. While not "the actual pleading by which a suit may be disposed of, it is the root, the foundation, the basis by which a suit arises and must be disposed of . . . It *provides* the causes of action." *NVIDIA*, 2008 WL 1859067, *3 (emphasis original). It "underpin[s] a civil action." *Standard Chtd.*, 757 F. Supp. 2d at 260. It is "the cornerstone of every case, the very architecture of the lawsuit." *Bernstein*, 814 F.3d at 140. It is thus not surprising that numerous courts have granted access to complaints at the outset of a case, before any judicial action. *Id.* at 141 (applying "experience and logic" test to find First Amendment right of access and reject motion to seal complaint at the outset); *Standard Chtd.*, 757 F. Supp. 2d at 260; *Kodak*, 2010 WL 2490982, *1;

*NVIDIA*, 2008 WL 1859067, **1, 3-4; *Vassiliades v. Israely*, 714 F. Supp. 604, 605-06 (D. Conn. 1989).

The authority cited by Brown and Amicus is not to the contrary. *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)* held "documents filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights." 707 F.3d 283, 290 (4th Cir. 2013).[15] California does not "recognize" a "rule" that the "right of access should attach, at the earliest, when a complaint 'is used in some manner by the court 'as a basis for adjudication' of a material controversy,'" as Amicus asserts. (AB 24.) Rather, California's Supreme Court has recognized that "[t]he presumption of access does not apply *until* the documents or records . . . *are filed* with the court *or* are *used* at a judicial proceeding." *NBC*, 980 P.2d 337, 358 n.25;[16] *see also ACLU v. Holder*, 652 F. Supp. 2d 654, 662 (E.D. Va. 2009) (no experience of access to *qui tam* complaints, which must be filed in camera, because "the adversarial litigation process does not even *begin* until the complaint is unsealed") (emphasis original).

---

[15] *In re U.S. for an Order* did not hold access "does not attach to documents filed with a motion to dismiss." (Brief 26.) Page 290 cites an unpublished decision, *In re Policy Management System*, in which the court "refrained from ascribing a First Amendment right" because those are documents "a court may not consider" on such a motion and thus play no role in the adjudicative process. 67 F.3d 296, *3 (4th Cir. 1995) (per curiam).

[16] Similarly, *Seattle Times v. Rhinehart*, 467 U.S. 20 (1984), held "the First Amendment does not compel public access to *discovery materials* that are neither used at trial nor submitted as a basis for adjudication," *NBC*, 980 P.2d at 358 n.25. Other cases Amicus cites also distinguished "*discovery material*" from "*civil litigation documents*" like complaints. *Mercury Interactive v. Klein*, 158 Cal. App. 4th 60, 83-84, 90 & n.21 (Cal. Ct. App. 2007)); *Savaglio v. Wal-Mart Stores*, 149 Cal. App. 4th 588, 596 (Cal. Ct. App. 2007) ("public has a First Amendment right of access to civil litigation documents filed in court and used at trial *or submitted as a basis for adjudication*"). The distinction for discovery is also reflected at page 1603 of the *Agent Orange* article Amicus cites.

Equally inaccurate is Amicus's assertion that "legislatures across the country have adopted laws that uniformly demonstrate court clerks are entitled to a reasonable amount of time to respond to public requests for access to court records." (AB 11.) Virtually none of the statutes cited apply to new complaints. Two-thirds are open records laws primarily focused on administrative or legislative records,[17] and others apply only to "administrative" or "financial records" of the judiciary[18]—or "not pertaining to adjudicative functions"[19]—or "written requests."[20]

The codes and rules Amicus cites are consistent with a tradition of access to complaints upon receipt by the court. Most allow "inspection at all times" during regular hours,[21] and many mandate some form of "timely" access, which is defined as "immediate" where the records are available (as is true of new e-filed complaints), or "as promptly as possible" and "without delay."[22]

---

[17] AB 11 n.2 (Kansas, Kentucky, Louisiana, Mississippi, Nevada, New Mexico, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont and West Virginia).

[18] Del. Policy on Public Access to Records in Chancery Ct. § I; N.Y. Admin. R. Unif. Ct. Sys. & Trial Cts. § 124.1; 65 P.S. § 67.304; R.I. Gen. Law. § 38-2-2(T).

[19] Tex. R. Jud. Admin. 12.2(d); R.I. Gen. Laws § 38-3-5(3) (no "affect" on "judicial records").

[20] N.M. Stat. Ann. § 14-2-8(D); S.C. Code Ann. § 30-4-30(C); Utah J.C. R. Jud. Admin. 4-202.06(2); *see* Me. Sup. Jud. Ct. Admin. Order JB-05-20(III) (requests by party names).

[21] AB 12 n.3 (Alaska Admin. R. 37.5(f); Ariz. S. Ct. R. 123(c)(1); Ark. Sup. Ct. Admin. Order 19 § 9(A) (section Amicus cited applies to requests for bulk or nonpublic records); Colo. Rev. Stat. § 24-72-203(1)(a); Haw. Ct. Record R. 10.1; Ind. Code § 5-14-3-3(a) (section Amicus cited applies to requests for copies); Minn. R. Pub. Access to J. Branch Records 2; Neb. Sup. Ct. R. 1-809(A) (section Amicus cited applies to requests for "information"); N.D. Sup. Ct. Admin. R. 41(3)(b)(1); 51 Okla. Stat. § 24A.5; Wy. R. Access to Ct. Records 4).

[22] Ariz. S. Ct. R. 123(f)(2); Colo. Rev. Stat. § 24-72-203(2)-(3); Kan. Rev. Stat. § 61.872(3)-(5); La. Rev. Stat. § 44:33(B); Minn. R. Pub. Access to J. Branch Records 7(a); Nev. Rev. Stat. § 239.0107(2); N.C. Gen. Stat. § 132-6(a); N.D. Sup. Ct. Admin. R. 41(3)(b)(2); 51 Okla. Stat. § 24A.5(6); Or. Rev. Stat. § 192.329(1); Wisc. Stat.§ 19.35(4)(a); *see Health v. City of Alexandria*, 11 So. 3d 569, 571 (La. App. 2009) (restriction against immediate access where records is "in active use" does not apply to "a copy" in the "clerk's office").

Several of the referenced laws are in states where "case records are open to the public on an immediate basis," *Arpaio v. Davis*, 210 P.3d 1287, 1292 n.5 (Ariz. Ct. App. 2009), and complaints, when filed, "become public documents." *Lybrand*, 184 S.E. at 583; *State ex. Rel. Vindicator Printing Co. v. Wolff*, 974 N.E.2d 89, 98 (Ohio 2012) ("document must merely be 'submitted to a court or filed with a clerk of court'" for "presumption of openness" to attach); *Alexandria Gazette Corp. v. W.*, 93 S.E.2d 274, 278 (Va. 1956) (newspaper reported on motion filed "that day," seen during "daily routine check of the Clerk's Office").

In sum, nothing Brown or Amicus cites undermines a study 65 years ago, which found "[i]n the preponderant majority of states judicial records are in fact and law open to inspection . . . as and when the papers become judicial records through being filed." CROSS, 151. This reality is reflected in the declarations CNS submitted in support of its PI Motion attesting to the historical practice of journalists contemporaneously reviewing new complaints, even if they had not been processed, including at the Circuit Court, all three of Illinois' federal district courts, and at other state and federal courts across the country. (7-4, ¶¶ 26-35; R. 10, ¶¶ 29-33; R. 21-1, ¶ 10); *accord, e.g., Planet III*, 2016 4157210, *10 (finding a tradition of access of receipt supported by CNS declarations).

4. <u>The logic in access to complaints upon filing is well-established.</u>

"[T]he public . . . has an interest in what goes on at all stages of a judicial proceeding." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). Recognizing that delaying access to complaints until after judicial action, trial or judgment cannot be reconciled with this basic notion, Brown

and Amicus instead contend there is no logic in access until some point after a complaint has been filed and after it has been administratively processed, even if that means delays measured in terms of days rather than hours. (Brief 26-28; AB 17-24.)

Brown attempts to support this theory by contending that CNS has not shown how a "wait period to allow the Circuit Clerk to process e-filed complaints has led to a failure to report on any arbitrary, overreaching, or corrupt action by participants in a judicial proceeding." (Brief 28.) But the purpose of the constitutional presumption of access is far broader. It stems from "the first amendment's 'core purpose' of assuring free public discussion," *U.S. v. Peters*, 754 F.2d 753, 758 (7th Cir. 1985) (quoting *Richmond Newspapers*, 448 U.S. at 575), and contemporaneous access on filing is essential to "informed public discussion of ongoing judicial proceedings." *Planet I*, 750 F.3d at 785, 787. A new civil complaint "initiates judicial proceedings," *Bernstein*, 814 F.3d at 140, and the public has a "right to know"—once "a plaintiff invokes the Court's authority by filing a complaint"—"who is invoking it, and towards what purpose, and in what manner." *NVIDIA*, 2008 WL 1859067, *3. Conversely, "the public cannot discuss the content of . . . civil complaints about which it has no information." *Planet I*, 750 F.3d at 788.

Access to complaints when filed—which, on court days, is "the date and time that the Circuit Clerk's Office receives a document by way of electronic filing" (*see* Brief 38), and not, as Brown contends, when "the Clerk's office determines that they do not improperly include excluded documents" (Brief 27)—directly implicates "the

free discussion of governmental affairs" (Brief 25), because "the filing of a complaint, even a complaint dismissed immediately and without prejudice, may substantively affect the parties' rights . . . And the public has a right to know how its resources are being used." *Bernstein*, 2016 WL 1071107, **8-9.

Contrary to what Brown says (Brief 27), "newsworthiness" does matter, and it "is often fleeting. To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression." *Grove Fresh*, 24 F.3d at 897. This is because it is only when new actions are still "current news that the public's attention can be commanded." *Chi. Council of Lawyers v. Bauer*, 522 F.2d 242, 250 (7th Cir. 1975). New complaints are most likely to be reported on, and most likely to come to the attention of interested members of the public, at the time they are filed (R. 10, ¶¶ 34-36; R. 21-1, ¶¶ 23-24), and "'[e]ach passing day may constitute a separate and cognizable infringement of the First Amendment.'" *Grove Fresh,* 24 F.3d at 897 (quoting *Nebraska Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975)). Delays also mean less accurate and balanced reporting about civil cases (7-4, ¶¶ 22-25; R. 10, ¶¶ 34-39; R. 21-1, ¶ 23-24), and allow filing parties to control media coverage about them (7-4, ¶ 21; R. 10, ¶ 38), harming "CNS's protected expression" about civil suits, as well as "the expression of the newspapers, lawyers . . . and others who rely on CNS for information" as "the

public cannot discuss the content of . . . complaints about which it has no information." *Planet I*, 750 F.3d at 788.[23]

That is why other courts have *rejected* the notion there is no "logic" in access to complaints until after administrative processing, let alone after "judicial action" or "trial/judgment." As observed in *Planet III*:

> [I]t would be nonsensical for a qualified right of access to arise only after a complaint has been "processed," for such a rule would run contrary to the text of and purpose underlying various rules of court . . . which require[] that complaints be "deemed filed on the date [they are] received by the court clerk" . . . It would make little sense to restrict the media's ability to monitor until after court personnel have had an opportunity to delay providing access . . .

2016 WL 4157210, *13; *see also Tingling Order*, 49 ("[P]ublic access to complaints allows the public to understand the activity of the courts, enhances the court system's accountability and legitimacy, and informs the public of matters of public concern.").

Indeed, to find that there is no logic in access to a complaint until after administrative processing would effectively institutionalize an indeterminate blackout period after complaints are filed. Brown's measurement of delays in business hours to reach the facially appealing statistic of 90.9% "within one business day" (Brief 28), does not change the undisputed facts that at the time CNS filed this case, two out of every five complaints were "effectively . . . under seal" (A22) for 1 to 28 days (R. 7, PageID 86-87; R. 7-4, ¶¶ 14, 19-21; R. 7-5, PageID 320).

---

[23] As this Circuit has recognized, "[w]hile sealing of one document in one case may not have a measurable effect on confidence in judicial integrity or on the effective operation of the courts, the effect of a consistent practice of sealing documents could prove damaging." *Continental,* 732 F.2d at 1314.

Manifestly, this "spawn[s] considerable mischief" by "conceal[ing] the very existence of lawsuits from the public," *Standard Chtd.*, 757 F. Supp. 2d at 260, thus affecting "the ability of the public to monitor the court system" and "inhibit[ing] the meaningful discussion thereof." (Brief 33.)

A delay of even "8 business hours" means many complaints filed in the morning, and even more in the afternoon, will not be available for at least one day, and longer if there is an intervening weekend or holiday. And Brown herself says complaints may be delayed "24 business hours." (Brief 5.) Brown faults CNS for counting weekends and holidays (Brief 42), but the news cycle does not stop on weekends, and "the passage of time draws away the vibrancy and relevance of news as other events overtake it." (R. 10, ¶ 36.) If this was true in 1975, *Chi. Council,* 522 F.2d at 250, it must be especially true in today's 24-hour digital news cycle. (R. 10, ¶ 37; R. 21-1, ¶¶ 23-34.)

Brown contends logic "'must take account . . . the extent to which openness impairs the public good.'" (Brief 27 (quoting *PG Pub'g Co. v. Aichele*, 705 F.3d 91, 111 (3d Cir. 2013)).) But GAO 2014-02 requires confidential documents to be filed *in paper* (SA7, ¶ 7), puts the obligation for redacting confidential information on the filing party (*id.*, ¶ 7(a)),[24] and "[t]he fact that sometimes countervailing concerns

---

[24] The National Center for State Courts Report Amicus cites (AB 20) actually urges technology-based solutions. Thomas M. Clarke et al., *Best Practices for Court Privacy Policy Formulation,* at 3, 5-7 (July 2017) (citing an article rejecting privacy review policies, which were common "in the early days of . . . e-filing" but "a very time and resource intensive approach that would not scale and . . . legally dubious." Tom Clarke, *A Contrarian View of Two Key Issues in Court Records Privacy and Access,* TRENDS IN STATE COURTS 2016, at 56).

militate in favor of sealing . . . otherwise public documents is not at odds with the existence of a rebuttable presumption of public access that attaches to every complaint." *Bernstein*, 2016 WL 1071107, *8.[25] Moreover, if "automatic access to an e-filed complaint before [a clerk] has time to review the e-filed documents" (Brief 27) really presented a problem, other courts—state and federal—would not be providing precisely that access to e-filed complaints, but they are. (R. 7, PageID 83-84; R. 7-4, ¶¶ 10-13, 16, 26-35; R. 10, ¶¶ 13-19, 24, 29-33; R. 10-1, PageID 768-780, 783-84; R. 21-1, ¶¶ 5, 8, 15; R. 21-3, ¶¶ 10-12.) That includes the Northern District of Illinois. While its website may say that "[n]ewly filed cases will typically appear on this system within 24 hours" (Brief 39), CNS demonstrated that "new civil complaints flow automatically onto the Northern District's PACER website at the moment they are e-filed, without clerk intervention." (R. 7-4, ¶ 31.) The same is true for Illinois' two other federal district courts, the great majority of federal district courts nationwide, and numerous state courts. (R. 7, PageID 83-84; R. 7-4, ¶¶ 10-13, 16, 26-35; R. 10, ¶¶ 13-19, 24, 29-33; R. 10-1, PageID 768-780, 783-84; R. 21-1, ¶¶ 5, 8, 15; R. 21-3, ¶¶ 10-12.) Brown does not point to any specific facts to suggest that the protections for confidential documents and information that already exist in GAO 2014-02 and Standards and Principles are not effective.

[25] That is consistent with *U.S. v. Edwards*, 823 F.2d 111, 119 (5th Cir. 1987), cited by Brown (Brief 27-28), which recognized contemporaneous access can be restricted if necessary to protect a compelling interest in the right to "an impartial jury."

Finally, Brown errs in contending CNS's for-profit business model diminishes the logic in contemporaneous access. (Brief 28, 32.)[26] That "newspapers . . . are published and sold for profit" "does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment." *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952); *Nieman v. VersusLaw*, 512 F. App'x 635, 638 (7th Cir. 2013) (content about court records accessed and sold by "for-profit . . . aggregation websites" entitled to full First Amendment protection). And the Supreme Court has repudiated as "startling and dangerous" the view that "First Amendment protection depends upon a categorical balancing of the value of the speech against its societal costs." *U.S. v. Stevens*, 559 U.S. 460, 470 (2010).

### C. Where A Right of Access Is Found, It Must Be "Contemporaneous," And Brown's Policies Deny That Access.

It is well-established in this Circuit that "the values that animate the presumption in favor of access require" that, "once access is found to be appropriate, access ought to be 'immediate and contemporaneous.'" *AP,* 162 F.3d at 506-07 (quoting *Grove Fresh*, 24 F.3d at 897); *accord Continental,* 732 F.2d at 1310. Other circuits agree. *See*, *e.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 272 (4th Cir. 2014) ("[W]e . . . emphasize that the public and press generally have a contemporaneous right of access to court documents."); *Lugosch v. Pyramid Co.,* 435 F.3d 110, 126-27 (2d. Cir. 2006) ("Our public access cases and those in other circuits emphasize the

[26] This argument comes from a *Yamasaki* district court's ruling, based on the erroneous premise that faster access required faster processing, which the district court said could not be done without taxpayer expense that should not be put to "helping to fulfill CNS's business goals" and those of "paying law firms." *Yamasaki*, 2017 WL 3610481, *4 (C.D. Cal. Aug. 7, 2017).

importance of immediate access where a right to access is found."); *U.S. v. Wecht*, 537 F.3d 222, 229 (3d Cir. 2008) ("[T]he value of the right of access would be seriously undermined if it could not be contemporaneous.").

Brown does not address any of this precedent. Instead, she and Amicus repeatedly accuse CNS of seeking—and the District Court of requiring—"instantaneous" access, but that is not an accurate reflection of the record. CNS sought and the District Court granted, an injunction requiring Brown to provide "contemporaneous access." (R. 6; R. 7, PageID 82, 95; A16.) CNS made clear its request was not for "immediate access in the literal sense." (R. 21, PageID 894.) When a clerk does not withhold complaints pending processing, and those complaints can be viewed during the hours they can be filed, the result is contemporaneous access. For paper-filed complaints, that will usually be the day of filing, but there may be instances where complaints are delayed without violating that requirement, such as where a request for a temporary restraining order is routed directly to a judge for immediate attention. An e-filing court that does not withhold complaints for processing will generally provide access in near-real time after filing. As noted above, that need not be over the Internet. And since the press room terminals are open late (R. 21-1, ¶¶ 16, 22; R. 21-3, ¶ 12), they would allow contemporaneous access even to complaints filed after Brown's office closes, thereby aligning access procedures with the policy choice to allow late-filed complaints. (R. 21-1, ¶ 16.) And while the press room is closed on weekends (Brief 38), complaints

received on weekends are not "filed" until the next business day, when the press room is open again.[27]

The PI comports with what other courts in California, New York, and Texas have ordered in similar circumstances, which Brown ignores. *Planet III*, 2016 WL 4157210, *20; *Tingling Order,* 59, 62, 74; *Jackson*, 2009 WL 2163609, **4-5. Instead, she relies on an outlier from the only district court to have found otherwise, *Yamasaki*, 2016 WL 4157210, *20, which the District Court rejected as not persuasive. (A9-10, 12.)

*Sullo & Bobbitt v. Abbott*, cited by Brown and Amicus, does not undermine the PI. There, the court recognized the right of access "includes a timeliness aspect." 2013 WL 1949835, *5 n.7 (N.D. Tex. May 13, 2013) (citing *Jackson*, 2009 WL 2163609, *4). But because "it is conceivable that one could effectively exercise *commercial speech rights* without the same temporal degree of access that is considered necessary to facilitate public scrutiny by the press and public," it ordered plaintiffs to plead harm from denial of access "within one business day" of filing "in the commercial speech context." *Id.* That is not true here, nor does a "temporal" pleading requirement apply in this non-commercial speech case.

Other courts have similarly held that "consistent practice of sealing documents," *Continental,* 732 F.2d at 1314, even for short periods, implicates the First Amendment. In *Associated Press v. Dist. Court*, 705 F.2d 1143, 1144-44 (9th

[27] Brown's comparison to paper complaints on this issue (Brief 38) is misplaced; unlike e-filed complaints, Brown does not receive them after her office closes for the day or on weekends, so access to late-filed paper cases does not present the issue of timely access that has been created by the policy choice to allow e-filed complaints to be "filed" after the clerk's office has closed.

Cir. 1983) ("*Associated*"), the Ninth Circuit found denying access until after a review determined if the records should remain confidential "impermissibly reverse[d] the 'presumption of openness'" required "under our system of justice," and the court held "[i]t is irrelevant that some of these pretrial documents might only be under seal for . . . 48 hours" because the "effect of the order is a total restraint on the public's first amendment right of access even though the restraint is limited in time." *Id.* at 1147. The First Circuit also found a "minimal" delay, "at times as little as a day," created by a statutory "procedural device" to "protect . . . privacy interests" was unconstitutional because "the constitutionally grounded presumption of openness is simply too strong to permit these certain burdens to remain in order to avoid harms that will occur only rarely, if at all." *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507, 509 (1st Cir. 1989).

For all of these reasons, the District Court was correct in concluding that "even the supposedly 'minor' delays in access that were discounted by the court in *Yamasaki* cannot be so easily dismissed," and that "[c]onsistent with the approach taken by the courts in *Planet* and *Tingling* . . . a policy of delaying access to e-filed complaints until after they are officially accepted or rejected or otherwise processed by the Clerk violates the First Amendment right of timely access to those complaints, unless the Clerk can demonstrate that the policy is narrowly tailored and necessary to preserve higher values." (A12.) As shown below, Brown has not met this burden, and her policies are not reasonable TPM restrictions.

### D. Brown Cannot Avoid Strict Scrutiny, Has Waived TPM, And Could Not Satisfy TPM Even If It Was Not Waived.

Once a constitutional right of access attaches, the "burden of persuasion" shifts to the "proponent of closure," *Peters*, 754 F.2d at 761, to overcome the First Amendment right of access under a strict scrutiny analysis by demonstrating "that suppression 'is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Grove Fresh*, 24 F.3d at 895. Given the "difficulties inherent in quantifying the First Amendment interests at issue," the Court must be "firmly convinced that disclosure is inappropriate before arriving at a decision limiting access." *Id.* at 897; *Continental*, 732 F.2d at 1313.

As the District Court correctly found, Brown's conclusory assertions about "confidential information" are woefully insufficient to satisfy the "formidable task" of "[o]vercoming the presumption." *AP*, 162 F.3d at 506.[28] Amicus tries to patch this hole by arguing the delays here should be evaluated not under strict scrutiny, but instead under a TPM analysis. But Brown did not raise this either here or in the District Court and it has thus been waived. (Argument, § II.) And even if this Court were to consider it, TPM is not, as Amicus suggests, a toothless test that permits delays as long as the justification is facially reasonable, and Brown could not meet her burden of proof under TPM analysis either.

[28] Brown identifies "[t]he specific constitutional question in this matter" as "what constitutes a reasonable delay" and *not* what level of scrutiny Brown was required to meet to overcome the presumptive right of access to civil complaints under the First Amendment. (Brief 2, 29.)

1. <u>Strict scrutiny applies to access denials even if limited in time.</u>

In *Grove Fresh*, strict scrutiny applied to "a district court's decision to postpone access." 24 F.3d at 897. Other circuits also have applied strict scrutiny to delays in access of "24 hours," *U.S. v. Brooklier*, 685 F.2d 1162, 1170 (9th Cir. 1982), or "48 hours," *Associated*, 705 F.2d at 1147; *see also Pokaski*, 868 F.2d at 507; *Planet III*, 2016 WL 4157210, **20-21 (one court day delay); *Tingling Order*, 46, 52 (same); *Jackson*, 2009 WL 2163609, *4 (rejecting TPM because "24 to 72 hour delay" is "effectively an access denial").

Amicus ignores all of these cases and instead suggests *Globe Newspaper* "recognized" TPM applies to delays. (AB 25.) But *Globe Newspaper* merely said limits on access "resembl[ing]" TPM restrictions need not meet strict scrutiny. 457 U.S. at 607 n.17. It cited *Richmond Newspapers*, which gave TPM examples that did not involve access delays, but rather conducting trials "in a quiet and orderly setting" or controlling attendance in courts of "limited capacity." 448 U.S. at 581 n.18. And Amicus errs in citing a case applying TPM to a "manner" restriction—against televising trials—because the press could still attend and "report whatever they observe." *U.S. v. Hastings*, 695 F.2d 1278, 1282 (11th Cir. 1983).[29] That is not true of withholding complaints. *Planet I*, 750 F.3d at 787-88.

Amicus also relies on *Barth v. City of Macedonia*, 187 F.3d 634 (6th Cir. 1999), an unpublished decision inconsistent with the above authorities. If *Barth* were correct, access to court records could be routinely delayed for administrative

---

[29] *Accord U.S. v. Kerley*, 753 F.2d 617, 620-21 (7th Cir. 1985) ("All we have in the case before us is a limitation on the *manner* of news coverage; the media can do everything but televise the trial.").

reasons. But such concerns cannot receive *more* deference, and be evaluated at a *lower* standard, than fair trial rights or other overriding interests subject to strict scrutiny. Indeed, administrative burdens are not sufficient to override even the *common law* right of access to judicial records. *Valley Broad. Co. v. Dist. Court*, 798 F.2d 1289, 1297 (9th Cir. 1986).

2. <u>The District Court did not abuse its discretion in concluding Brown's policies did not survive strict scrutiny.</u>

In issuing its PI, the District Court found Brown fell well short of establishing that her policy of withholding access was narrowly tailored to a higher governmental interest. (A13-14.)

The District Court's analysis was correct. Brown says she must comply with the mandates of GAO 2014-02 and the Standards and Principles. (Brief 6, 27, 43, 45.) But neither allow, let alone mandate withholding access to complaints from the public during administrative review. (Statement of Case, § V.) And even if they could be read to allow withholding, that would not eliminate Brown's burden. *See In re The N.Y. Times Co.*, 828 F.2d 110, 115 (2d Cir. 1987) ("Obviously, a statute cannot override a constitutional right.").[30]

Nor are Brown's conclusory assertions about confidential information sufficient to satisfy the "formidable task" of "[o]vercoming the presumption." *AP*, 162 F.3d at 506. Brown must do more than assert her policies are necessary to

---

[30] *See also Press-Enterprise II*, 478 U.S. at 13-14 (striking California statute that allowed closing of preliminary criminal hearings upon showing of reasonable probability of harm, rather than more demanding test mandated by the First Amendment); *Globe Newspaper*, 457 U.S. at 606-08 (holding unconstitutional a Massachusetts state statute requiring trial courts to exclude the public from the courtroom in all instances of testimony of a minor victim of a sex crime).

protect a "generic risk." *Presley*, 558 U.S. at 215; *accord Press-Enterprise II*, 478 U.S. at 15 ("The First Amendment right of access cannot be overcome by the conclusory assertion . . ."); *Peters*, 754 F.2d at 760 (closure order vacated where record "failed to identify with any specificity an 'overriding interest' which required closure to serve that interest's 'higher value'").

Brown does not point to any facts indicating that the protections for the small percentage of complaints that contain confidential information that already exist in the Illinois rules and orders—i.e., requiring such documents to be filed in paper, and putting that responsibility on the filing party—are not effective. And as noted, many other courts provide access on receipt prior to any clerk review.[31] (R. 7, PageID 83-84; R. 7-4, ¶¶ 10-13, 16, 26-35; R. 10, ¶¶ 13-19, 24, 29-33; R. 10-1, PageID 768-780, 783-84; R. 21-1, ¶¶ 5, 8, 15; R. 21-3, ¶¶ 10-12.) Further, given the absence of record evidence that Brown's voluntary actions in checking e-filed complaints have protected "privacy" and "confidentiality" interests, Brown either is not checking e-filed complaints for improper disclosure of confidential information or the incidence of improper disclosure is so low that delaying access to confirm compliance is not narrowly tailored or necessary to preserve higher values.

After the District Court entered its PI, Brown belatedly argued providing access on receipt would require a computer system "upgrade" (R. 35, ¶¶ 9, 18; Brief 8-9), but this bare assertion, unsupported by any specific facts in the record, is not a

[31] If Brown voluntarily chooses to review e-filed pleadings for compliance with Paragraph 2(c) of GAO 2014-02, she likely creates liability risk if she does not successfully screen for non-compliance—liability that GAO 2014-02 and the Illinois Supreme Court Rules seek to avoid by excluding Brown from any obligation to so review.

basis for delaying access either. Numerous other courts routinely have implemented solutions for providing contemporaneous access in their transition to e-filing. (R. 7, PageID 83-84; R. 7-4, ¶¶ 10-13, 16, 26-35; R. 10, ¶¶ 13-19, 24, 29-33; R. 10-1, PageID 768-780, 783-84; R. 21-1, ¶¶ 5, 8, 15; R. 21-3, ¶¶ 10-12.) It is clear, then, that not only are Brown's policies not "essential" to serve higher values, they are not narrowly tailored.

Brown also claims news reports about rejected complaints would "sow[] confusion" and suggests this could lead to less accurate reporting (Brief 33, 44), but the possibility a complaint might be rejected is not unique to e-filing. (R. 10, ¶¶ 45-46.) Indeed, it is not clear this would qualify as a "higher value," since complaints submitted to a court for filing are all documents the public has a right to see even if a tiny percentage are later rejected for ministerial reasons. *See Union Oil Co. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (the "third-party effects that justify the subsidy of the judicial system also justify making records . . . as open as possible. What happens in the halls of government is presumptively public business.").

3. <u>Brown has failed to meet her burden to establish her process-first policy is a reasonable TPM restriction.</u>

Even under TPM analysis, "the [g]overnment bears the burden of proving the constitutionality of its actions," *Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 830 (7th Cir. 2014), and Brown's policies resulting in access denials are not reasonable TPM restrictions unless she can show they are: (1) "justified without reference to the content of the regulated speech"; (2) "narrowly tailored to serve a significant government interest"; and (3) "leave open ample alternative channels for

communication." *Weinberg v. City of Chi.*, 310 F.3d 1029, 1037 (7th Cir. 2002). Even if it is not content-based, Brown's policies fail the second and third parts of this test.

In determining whether a policy is "narrowly tailored to serve a significant government interest," it is not enough that any asserted governmental interests are "important in the abstract," *Turner Broad. Sys. v. FCC*, 512 U.S. 662, 664 (1994), or that a restriction makes "common sense." *Horina v. City of Granite City*, 538 F.3d 624, 633 (7th Cir. 2008), *amended on other grounds*, 548 F.3d 1107 (7th Cir. 2008). Rather, Brown must "demonstrate that the recited harms are real, not merely conjectural, and that the [restriction] will in fact alleviate these harms." *Turner*, 512 U.S. at 664. Brown has not done this and "unsupported conjecture" is "*verboten* in the First Amendment context." *Horina*, 538 F.3d at 633; *City of Watseka v. Ill. Pub. Action Council*, 796 F.2d 1547, 1556-57 (7th Cir. 1986) (explaining that "evidence," and not just a "conclusory assertion by an interested party," is required).

Brown's policy also must be narrowly tailored, and while it is true that in a TPM analysis, they need not "be the least restrictive means or least intrusive means of" serving the asserted interest (AB 26), Brown also bears the burden of establishing they do not "substantially burden more speech than necessary." *Weinberg*, 310 F.3d at 1040. Here again, Brown offered "no evidence" that the measures already in place for protecting confidential information in GAO 2014-02 or the Standards and Principles—measures the federal district courts in Illinois also employ—are not "ample and adequate," *Watseka*, 796 F.2d at 1557, and thus

fails to meet her burden.[32] That there may be some "inconvenience" to Brown is not enough. "[S]ome accommodation of expressive rights is the touchtone of [the First] Amendment, even in those instances where the strictest scrutiny is not applied." *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 612 F.3d 301, 304 (4th Cir. 2010) (Wilkinson, J., concurring).

Brown's policies also are not reasonable TPM restrictions because they do not "leave open ample alternative channels for communication of the information," including "some alternative for expression concerning fast-breaking events," *Planet III*, 2016 WL 4157210, *19, namely, the fact that a new civil action has been filed. CNS seeks contemporaneous access to newly filed complaints so it, its subscribers, and members of the public can engage in "informed public discussion of ongoing judicial proceedings." (R. 7, PageID 94 (quoting *Planet I*, 750 F.3d at 787-88)); *see also Vodak v. City of Chi.*, 639 F.3d 738, 749 (7th Cir. 2011) (recognizing need for protection for spontaneous speech because "dissemination delayed is dissemination denied"). Moreover, contrary to Brown's assertion (Brief 32-33), "[t]here is no adequate or reliable way for reporters to view complaints on the same day they are filed other than to obtain them from the courts at which they are filed." *Planet III*, 2016 WL 4157210, *19. Even assuming *arguendo* it would be possible for CNS to track down all the filing parties for all of the complaints filed each day at the Circuit Court, those parties would have no obligation to provide CNS with the complaints, and in any event, the "added costs in money [and] time" would make

[32] Like Illinois and Cook County, Federal Rule of Civil Procedure 5.2 puts the burden to redact certain categories of private information on the e-filing party.

this option "unacceptable" for TPM purposes. *Horina*, 538 F.3d at 636; *Gresham v. Peterson*, 225 F.3d 899, 906 (7th Cir. 2000) ("the Court has 'shown special solicitude for forms of expression that are much less expensive than feasible alternatives' . . . and so an alternative must be more than merely theoretically available. It must be realistic as well.").

Remand would thus be inappropriate as there is no indication of what argument or evidence presented to the District Court might allow the District Court to find Defendant met her burden on remand. *See In re Taxman Clothing Co.,* 905 F.2d 166, 171 (7th Cir. 1990) ("In a case in which 'the record permits only one resolution of the factual issue,' the appellate court can and should resolve the issue without a remand.") *Horina,* 538 F.3d at 635 n.1 ("This is a costly waiver indeed. . . . [T]he City's failure to explain how the prevention of litter, intrusion, trespass, or harassment is achieved less effectively without Ordinance . . . actually dooms its appeal. Without such an explanation, the City cannot establish that the Ordinance is narrowly tailored, which, in turn, means that the City cannot show that the Ordinance satisfies the [TPM] analysis, and thus survives constitutional scrutiny.").

## VI. The District Court Did Not Abuse Its Discretion In Holding That CNS Satisfied The Other Requirements For Obtaining A Preliminary Injunction.

"[I]n First Amendment cases, 'the likelihood of success on the merits will often be the determinative factor.'" *ACLU v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012). This is because "the loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury" and "injunctions protecting First Amendment freedoms are always in the public interest." *Id.* at 589-

90 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) and *Christian Legal Soc'y v Walker*, 453 F.3d 853, 859 (7th Cir. 2006)).

In arguing that CNS did not satisfy the other preliminary injunction factors, Brown does not acknowledge, let alone address, either of these maxims. Instead, the essence of her argument boils down to the contention that ongoing delays in access are no big deal—a premise that cannot stand for the reasons above (Argument, § V)—along with a re-hashing of her other arguments on the merits. But "when claims for disclosure are based, at least in part, on the first amendment, there is a tradition of openness in this country that cannot be taken lightly." *Continental*, 732 F.2d at 1314. The District Court did not abuse its discretion in concluding that Brown had taken her obligations to provide access to new complaints consistent with the constitution lightly, and that CNS had shown irreparable harm and that the other relevant factors warranted the issuance of injunctive relief.

To begin with, Brown's contention that "CNS made no showing of harm" (Brief 41) is patently false. As CNS explained in the District Court, and as that court found (A14-15), "[t]he loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate." *Christian Legal*, 453 F.3d at 859. "[E]ven short deprivations of First Amendment rights constitute irreparable harm." *Higher Soc'y of Ind. v. Tippecanoe Cnty.*, 858 F.3d 1113, 1116 (7th Cir. 2017). The District Court's finding on this point is also

consistent with *Tingling* and *Jackson*. *Tingling Order*, 53:1-3; *Jackson*, 2009 WL 2163609, *4.

The District Court also correctly found that the balance of equities and public interest favored injunctive relief because "in the absence of an injunction, CNS will continue to be deprived of its First Amendment right of timely . . . access to e-filed complaints." (A15.) "And Brown has not explained why she cannot implement any of the measures other state and federal courts have taken to provide access to e-filed complaints prior to official acceptance and other processing." (*Id.*) This omission is even more glaring given that Cook County uses Tyler Technology's Odyssey software, the same system used in numerous other jurisdictions providing contemporaneous access to e-filed complaints. (R. 21-1, ¶¶ 6-8.)

Brown has never proffered any evidence regarding any hardship, or even "practical problems" (Brief 8), the PI would impose and her unsupported assertions (never made under oath) were not timely raised:

> It is too late for Brown to raise this point . . . Brown breathed nary a word about the purported lack of what would seem to be a rather basic computer function—reading documents filed in the system that the computer is hooked up to.

(A20.) They are also belied by the many courts that provide the contemporaneous access that Brown now claims is so difficult. (A15; A20; R. 10-1, PageID 232-251; R. 21, PageID 904, 906 n. 10, R. 21-1, ¶¶ 5-17, 21; R. 21-3, ¶¶ 10-12.) Brown has not offered a single piece of evidence that providing CNS with contemporaneous access to e-filed complaints, while also transitioning to mandatory e-filing, will require re-direction of resources or cause harm that outweighs the harm to CNS and the public

by continued withholding of contemporaneous access. (Brief 9; *see also* Statement of Case, § VII; A21.)

Fundamentally, Brown cannot argue that she is harmed by having to comply with the Constitution. *See, e.g., Christian Legal,* 453 F.3d at 867 ("[I]f [defendant] is applying . . . policy in a manner that violates [plaintiff]'s First Amendment rights—as [plaintiff] has demonstrated is likely—then [defendant]'s claimed harm is no harm at all."). In fact, "one might think that a mechanism for compliance with the public's right of access to judicial proceedings is a necessary component of an appropriate e-filing system . . . and not some sort of frill, as Brown's argument seems to suggest." (A22.)

Nor is the injunction mandatory, as Brown argues. (Brief 11.) Injunctions that seek to preserve the status quo are prohibitory, not mandatory. *Preston v. Bd. of Trustees of Chi. State Univ.*, 120 F. Supp. 3d 801, 804 (N.D. Ill. 2015). The status quo that CNS seeks to preserve by the injunction is the same contemporaneous access that existed and still exists for paper complaints. The injunction CNS sought, and the District Court entered, would prohibit Brown from denying contemporaneous access to e-filed complaints, which she does by delaying access until after processing, which would "clearly prohibit[], rather than compel[], government action." *Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 (2d Cir. 2006). Even if this Court determines that the PI is mandatory, affirmance is proper. The elements for entry of a mandatory injunction are the same as those for a prohibitive injunction. *Graham v. Med. Mut.*, 130 F.3d 293, 295-96 (7th Cir.

1997). As set forth above, all four elements squarely support CNS's position and the issuance of a mandatory or prohibitive injunction directed at Brown should be affirmed.

## CONCLUSION

Brown's ongoing efforts to hide behind inapposite State rules and orders to justify her refusal to comply with the First Amendment should not be countenanced. "[I]t is blackletter law that free speech is not to be wholly subordinated to administrative convenience," *Raleigh-Durham*, 612 F.3d at 304 (quoting *Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781, 795 (1988)), and the District Court thus correctly concluded that "Brown cannot end-run the First Amendment by creating a system in which hypothetical doubt regarding whether litigants comply with rules about redaction allow her to exclude the public from access to judicial proceedings until she is good and ready to provide it." (A22.) This Court should affirm.

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Brian A. Sher*
Brian A. Sher
Donald A. Cole
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
(312) 602-5000

Rachel Matteo-Boehm
Three Embarcadero Center, 7th Floor
San Francisco, California 94111
(415) 675-3400

***Attorneys for Plaintiff-Appellee, Courthouse News Service***

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32

The undersigned, counsel of record for the Plaintiff-Appellee, Courthouse News Service, certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and the Court's April 3, 2018 Order because this brief contains 16,964 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(b) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 word processing software in 12-point regular Century type style.

Dated: April 12, 2018

*/s/ Brian A. Sher*

☑

## CERTIFICATE OF SERVICE

**Certificate of Service When All Case Participants Are CM/ECF Participants**

I hereby certify that on April 12, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Brian A. Sher

☐

## CERTIFICATE OF SERVICE

**Certificate of Service When Not All Case Participants Are CM/ECF Participants**

I hereby certify that on ____________________, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

| counsel / party: | address: |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

s/____________________________________