No. 18-1230

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| Courthouse News Service,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>Dorothy Brown in her official capacity as Clerk of the Circuit Court of Cook County,<br><br>Defendant-Appellant. | On Appeal from the United States District Court for the Northern District of Illinois, Eastern Division<br><br>Case No. 17 C 7933<br><br>The Honorable Matthew F. Kennelly, Judge Presiding |

REPLY BRIEF OF DEFENDANTS-APPELLANTS


KIMBERLY M. FOXX
State's Attorney of Cook County
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-2350
paul.castiglione@cookcountyil.gov

*Attorney for Defendant-Appellant*

KENT S. RAY
Assistant State's Attorney
Interim Chief, Civil Actions Bureau

PAUL A. CASTIGLIONE
MARGARETT S. ZILLIGEN
OSCAR KPOTA
Assistant State's Attorneys

*Of counsel*


ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 1

I. Standard of Review.. ........ 3

II. The Circuit Clerk Must And Has Followed Order 2014-02 And The Standards.. ........ 4

III. The Circuit Clerk Sought Guidance From The Illinois Supreme Court Regarding Compliance With The Preliminary Junction Entered Below. ........ 7

IV. Under *Younger* And Its Progeny, The District Court Should Not Have Exercised Jurisdiction Over Plaintiff's Motion For Preliminary Injunction.. ........ 9

V. Plaintiff's First Amendment Claim Against the Circuit Clerk Lacks Merit... ..14

. A. The First Amendment Does Not Compel Immediate And Instantaneous Access To Newly Filed Civil Complaints... ........ 15

B. The Circuit Clerk Did Not Waive Any First Amendment Arguments... ........ 23

C. The Circuit Clerk Addressed And Appealed The District Court's Erroneous Finding That CNS Was Likely To Succeed On The Merits Of Its First Amendment Claim... ........ 24

CONCLUSION ........ 26

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ........ 27

CERTIFICATE RULE 31(e)(1) COMPLIANCE ........ 28

CERTIFICATE OF SERVICE ........ 29

## TABLE OF AUTHORITIES

Cases Pages

*ACLU v. Alvarez*,
679 F.3d 583 (7th Cir. 2012)........................................14

*Associated Press v. United States Dist. Court for Central Dist.*,,
705 F.2d 1143 (9th Cir. 1983)........................................17

*In re Brown*,
4 N.E.3d 619 (Ind. 2014)........................................1, 2

*Courthouse News Service v. Brown*,
2018 U.S. Dist. LEXIS 2816 (N.D. Ill. January 8, 2018)........................................1, 10-11

*Courthouse News Service v. Planet*,
750 F.3d 776 (9th Cir. 2014)........................................12

*Courthouse News Service v. Planet*,
2016 U.S. Dist. LEXIS 105197 (C.D. May 26, 2016)........................................19

*Drury v. County of McLean*,
89 Ill. 2d 417 (1982)........................................4

*E.T. v. Cantil-Sakauye*,
682 F.3d 1121 (9th Cir. 2012)........................................12, 13

*Evans v. Newton*,
382 U.S. 296 (1966)........................................15

*520 S. Mich. Ave. Associates, Ltd. v. Shannon*,
549 F.3d 1119 (7th Cir. 2008)........................................8

*Fulks v. United States*,
875 F. Supp. 2d 535 (D.S.C. 2010)........................................25

*Grove Fresh Distributors v. Everfresh Juice Co.*,
24 F. 3d 893 (7th Cir. 1994)........................................17, 25-26

*Nixon v. Warner Communications*,
435 U. S. 586 (1978)........................................15, 17-18

*O'Shea v. Littleton*,
414 U.S. 488 (1973)........................................................................................*passim*

*Parker v. Turner*,
626 F.2d 1 (6th Cir. 1980)......................................................................11, 13

*Peters v. Hobby*,
349 U.S. 331 (1955)..........................................................................................15

*Planned Parenthood League v. Bellotti*,
868 F.2d 459 (1st Cir. 1989)..............................................................................11

*Press Enterprise Co. v. Superior Court*,
478 U.S. 1 (1986)..............................................................................18-21

*Rizzo v. Goode*,
423 U.S. 362 (1976)............................................................................11-12

*Smith v. United States Dist. Court*,
956 F.2d 647 (7th Cir. 1992)..............................................................................17

*SKS & Assocs. v. Dart*,
619 F.3d 674 (7th Cir. 2010)...........................................................9-11, 13

*In re Swan*,
92 Ill. App. 3d 856 (2nd Dist. 1981)...........................................................4

*United States v. Rumely*,
345 U.S. 41 (1953)...........................................................................................15

*Valencia v. City of Springfield*,
883 F.3d 959 (7th Cir. 2018)..........................................................................3-4

*Younger v. Harris*,
401 U.S. 37 (1971)........................................................................................*passim*

<u>Statutes, Rules and Orders</u>

Federal Rule of Appellate Procedure 45(b)(1)...................................................1

35 ILCS 5/917 (2018)...........................................................................................5

410 ILCS 325/1 (2018)........................................................................................6

410 ILCS 535/15.1 (2018) ......6

705 ILCS 105/13 (2018) ......4

745 ILCS 45/1 (2018) ......5

750 ILCS 70/1 (2018) ......6

General Administrative Order 2014-02 dated June 13, 2016 from the Circuit Court of Cook County ...... *passim*

Electronic Filing Standards and Principles from the Illinois Supreme Court amended September 16, 2014 ...... *passim*

Illinois Supreme Court Rule 15......5

Illinois Supreme Court Rule 138......5

Illinois Supreme Court Rule 201......6

Cook County Circuit Court Rule 0.3.1 ......2, 3

## ARGUMENT

When counsel for plaintiff-appellee Courthouse News Service ("CNS") filed its appellee brief on April 12, 2018 at 2:27 p.m. Central Standard Time, this is the message that appeared as docket text on this Court's website:

> Submitted appellee brief by Brian Sher for Appellee Courthouse News Services. [18] NOTE: Access to this entry is limited to counsel of record. Once the document is approved by the court, it will be filed onto the court's docket as a separate entry which will be open to the public.

Under the rationale of both the district court's opinion and CNS' argument, the temporary limitation of access from the Clerk of the Court of Appeals would violate the First Amendment. *See, e.g., Courthouse News Service v. Brown*, 2018 U.S. Dist. LEXIS 2816 (N.D. Ill. January 8, 2018) (holding that the First Amendment required the Circuit Clerk to provide "timely, contemporaneous access to the complaints upon filing.") CNS argues that once submitted, e-filed complaints are presumptively open to public view, CNS Br. at 36,[1] and that access must be contemporaneous. CNS Br. at 45-48.

As the above docket entry shows, this Court recognizes that review of filed pleadings is both necessary and constitutional. Under Federal Rule of Appellate Procedure 45(b)(1), the Clerk of this Court must maintain a docket and the maintenance of a docket requires the clerk to ensure that documents are filed properly. Ensuring that documents are filed properly does not violate the First Amendment but does further the proper administration of justice. *See, e.g., In re*

---

1 Citations to the brief of plaintiff-appellee CNS will be to "CNS Br. at ___." Citations to the brief of *amicus curiae* the Reporters Committee for Freedom of the Press will be to "Reporters Br. at ___."

*Brown*, 4 N.E.3d 619 (Ind. 2014) (finding that the failure to maintain court files and records in an organized manner that allowed access when needed was prejudicial to the administration of justice).

In its brief, CNS notes that the Circuit Clerk's office previously provided duplicate paper copies of newly filed complaints to CNS. (CNS Br. at 3-4.) Based upon this past accommodation, CNS now claims an entitlement to immediate and contemporaneous access to e-filed complaints upon submission. (*Id.*) CNS is mistaken.

E-filing of court documents is a 24/7 proposition for 365 days a year. But clerk's offices are not open all the time. The Office of the Clerk of the Court of Appeals for the Seventh Circuit is not and neither is the Circuit Clerk's office. *See* R. 19-1, ¶9 (stating that the Circuit Clerk's "office hours are established by Circuit Rule 0.3.1 and they are 8:30 a.m. through 4:30 p.m. each working day").

The Circuit Clerk is duty bound to follow and implement General Administrative Order 2014-02 dated June 13, 2016 from the Circuit Court of Cook County ("Order 2014-02"), R. 19-2, and Electronic Filing Standards and Principles from the Illinois Supreme Court amended September 16, 2014 (the "Standards"). (R. 19-3.) Under the Standards and Order 2014-02, complaints that are electronically submitted to the Circuit Clerk are not actually "filed" until the Circuit Clerk's office determines that they do not improperly include excluded documents. (R. 19-1, ¶¶11 and 12.) In making this determination, the Circuit Clerk performs an "accept/reject" function. (*Id.*) Order 2014-02 sets forth thirteen categories of

excluded documents, including documents containing confidential information and documents containing personal identity information. (R. 19-2, ¶2(c).)

Consequently, if this Court were to agree with the district court that the First Amendment mandates immediate and contemporaneous public access to e-filed submissions, then the Circuit Clerk would have to violate Order 2014-02, the Standards and likely Cook County Circuit Court Rule 0.3.1. Moreover, and cardinally, the reading of the First Amendment that the district court adopted and that CNS now proposes would mean that all court clerks could not review electronic submissions to ensure that they were filed properly before publishing them to the general public.

Just as the Clerk of this Court needs time to review electronic submission to ensure compliance with this Court's rules, the Circuit Clerk needs time to review e-filed complaints to ensure that they do not have attachments that are prohibited in Order 2014-02. (R. 19-1, ¶12.) Conducting that review does not violate the First Amendment.

Accordingly, and for the reasons set forth below, this Court should reverse the preliminary injunction that the district court entered and remand this matter to the district court with instructions to dismiss this lawsuit for lack of subject matter jurisdiction.

## I. Standard Of Review.
(Reply to CNS' Br. at 15-16.)

In her opening brief, the Circuit Clerk cited *Valencia v. City of Springfield*, 883 F.3d 959 (7th Cir. 2018) for the proposition that in reviewing an order granting

a preliminary injunction, this Court "examines legal conclusions *de novo*, findings of fact for clear error, and the balancing of harms for abuse of discretion." *Valencia,* 883 F.3d at 966. The standard of review here is, therefore, a mixed one.

CNS argues that the Circuit Clerk posited that all the issues before the district court on Plaintiff's motion for preliminary injunction were questions of law. In fact, the Circuit Clerk argued that the *Younger* and First Amendment issues on appeal are purely issues of law reviewable under a *de novo* standard and the issue of whether the elements of a preliminary injunction were satisfied is reviewable under an abuse of discretion standard. (Circuit Clerk Opening Br. at 13.)

## II. The Circuit Clerk Must And Has Followed Order 2014-02 And The Standards.

(Reply to CNS' Br. at 6-9 and 60.)

Circuit court clerks in Illinois are the highest non-judicial members of the state judiciary. *See Drury v. County of McLean*, 89 Ill. 2d 417, 420 (1982). The Circuit Clerk's purpose is to keep an accurate and reliable record of county circuit court proceedings for the judiciary, litigants and the public, 705 ILCS 105/13 (2018), and to execute judicial orders. Failure to follow judicial orders would likely be contemptuous. *See In re Swan*, 92 Ill. App. 3d 856, 857 (2nd Dist. 1981) (affirming an order holding respondent in contempt for his refusal to obey a trial court order).

Here, the Circuit Clerk simply discharged her duties. Nonetheless, CNS accuses her of using Order 2014-02 and the Standards "to shield herself from the First Amendment," CNS Br. at 6 of "hid[ing] behind inapposite State rules and

orders to justify her refusal to comply with the First Amendment." (CNS Br. at 60.) These accusations are baseless.

Nothing about Order 2014-02 or the Standards are inapposite here. In the district court, the Circuit Clerk cited the requirements of Order 2014-02 and the Standards in opposition to CNS' motion for preliminary injunction. (R. 19, pages 2, 4-8 and 14.) Pursuant to ¶¶2(c) and 3 of Order 2014-12, the Circuit Clerk implements the State court's policy on electronic filing: *i.e.*, reviewing electronically submitted complaints before determining whether to reject or accept such complaints as properly filed.

A review of Order 2014-12 shows that it is highly germane to this appeal. In ¶2(c) of Order 2014-12, a list of documents that may not be electronically filed is provided:

- documents containing confidential information as specified in Supreme Court Rule 15;
- documents containing personal identity information as specified in Supreme Court Rule 138;
- documents containing the identity of individuals contained in reports made pursuant to the Communicable Disease Report Act, 745 ILCS 45/1;
- reports relating to an individual's disability pursuant to the Illinois Income Tax Act, 35 ILCS 5/917(a)(ii);
- confession of judgment;
- documents required by law, rule, or order to be filed and maintained in their original form;
- petition for marriage license by an underage petitioner;

- petition for an order of protection, no contact order, or stalking no contact order;
- registration of Illinois court judgment;
- registration of administrative judgment;
- discovery materials excluded pursuant to Illinois Supreme Court Rule 201; and
- any document when the individual document or the entire case is impounded or sealed by law, rule, or order.

(R. 19-1, ¶2(c).) Order 2014-12, ¶2(d) lists the types of cases for which parties may not make electronic filings: (1) adoption, (2) emancipation of a minor, (3) eminent domain, (4) fictitious vital records pursuant to the Vital Records Act, 410 ILCS 535/15.1, (5) juvenile court , (6) mental health, (7) ordinance violations, (8) proceedings pursuant to the Illinois Sexually Transmissible Disease Control Act, 410 ILCS 325/1, (9) petition for judicial waiver of notice under the Parental Notice of Abortion Act of 1995, 750 ILCS 70/1 and (1) any other type of case required to be impounded or sealed by law, rule, or order. (R. 19-1, ¶2(d).)

Paragraph 3(c) of Order 2014-12 ("Paragraph 3(c)") states that "[a]ny document submitted electronically shall be considered filed with the [Circuit] Clerk's Office if not rejected by the Clerk's Office." (R. 19-1, ¶3(c).) This paragraph shows that the Circuit Clerk is responsible for declining to accept documents that are improperly submitted electronically. CNS, however, argues that "Order 2014-12 does not speak to any obligation of Brown 'to check' that these categories of documents are not electronically filed." (CNS Br. at 7.) The plain language of Paragraph 3(c) shows that CNS' argument lacks all merit.

CNS further argues that under Paragraph 7 of Order 2014-12 ("Paragraph 7"), attorneys are responsible for not electronically filing excluded documents. (CNS Br. at 7.) The responsibility of filers under Paragraph 7 to file properly does not displace the Circuit Clerk's duty to exclude improperly filed documents under Paragraph 3(c). While attorneys are responsible for filing pleadings properly, the Circuit Clerk is also responsible for accepting submitted e-filings *only* when they are filed properly. Both are true.

CNS' attempt to disavow or, at least, downplay the Circuit Clerk's duties under Order 2014-02 and the Standards totally fails.

## III. The Circuit Clerk Sought Guidance From The Illinois Supreme Court Regarding Compliance With The Preliminary Junction Entered Below.
(Reply to CNS' Br. at 12-14 and 57.)

After the district court entered its preliminary injunction, it gave the Circuit Clerk thirty days to determine how to comply with its order. *Courthouse News Service*, 2018 U.S. Dist. LEXIS 2816 at *22. Without any basis, CNS argues that the Circuit Clerk took "no steps to timely comply with the preliminary injunction" and that the Circuit Clerk attempted to avoid complying with the preliminary injunction. (CNS Br. at 12.) This argument is factually groundless.

As an initial matter, on January 31, 2018, the Circuit Clerk filed a timely notice of appeal to contest the district court's entry of a preliminary injunction. (R. 30.) Five days earlier, on January 26, 2018, the Circuit Clerk sought relief from the Illinois Supreme Court regarding preliminary injunction. Specifically, in the matter styled *In re: Mandatory Electronic Filing In Civil Cases*, M.R. 18368, the Circuit

Clerk filed a petition with the Illinois Supreme Court asking to depart from the requirements of Order 2014-02 and the Standards in order to comply with the district court's preliminary injunction. (R. 35-1.) In other words, the Circuit Clerk asked the Illinois Supreme Court for permission to disobey its current rules to comply with the district court's preliminary injunction order.

On February 14, 2018, the Illinois Supreme Court declined to grant the Circuit Clerk the relief she requested. The order[2] stated as follows:

> This cause coming to be heard on the petition of the Cook County Circuit Court Clerk for relief from certain orders of this court related to e-Filing on the grounds that such relief is necessary to permit her office to comply with the order entered by U.S. District Court Judge Matthew F. Kennelly in *Courthouse News Services* v. *Clerk of the Circuit Court of Cook County,* 2018 U.S. Dist. Lexis 2816 (N.D. Ill. Jan. 8, 2018), and the Court being fully advised in the premises;
>
> IT IS ORDERED that the petition is denied.

CNS' argument that the Circuit Clerk took no action to attempt compliance with the preliminary injunction is plainly incorrect.[3]

When the Illinois Supreme Court denied the Circuit Clerk's petition, it became clear that the Circuit Clerk could not comply with the district court's preliminary injunction order and the Illinois courts' mandates at the same time.

2 *See* http://www.illinoiscourts.gov/SupremeCourt/Announce/2018/021418.pdf. This Court may take judicial notice of state court filings. *520 S. Mich. Ave. Associates, Ltd. v. Shannon*, 549 F.3d 1119 (7th Cir. 2008).

3 Without citing the record, CNS argues that "the district court did not abuse its discretion in concluding that [the Circuit Clerk] had taken her obligations to provide access to new complaints . . . lightly." (CNS Br. at 57.) If the district court reached that conclusion, then it certainly did abuse its discretion, as the Circuit Clerk's unsuccessful January 26, 2018 petition shows.

This posed a knotty legal problem, one that would not have occurred if the district court had followed the mandates of *Younger* abstention.

## IV. Under *Younger* And Its Progeny, The District Court Should Not Have Exercised Jurisdiction Over Plaintiff's Motion For Preliminary Injunction.

(Reply to CNS' Br. at 15, 19-26 and Reporters Br. at 4, n. 1.)

Under *Younger v. Harris*, 401 U.S. 37 (1971) and *O'Shea v. Littleton*, 414 U.S. 488 (1973), the district court should have abstained from hearing CNS' motion for preliminary injunction. As an initial matter, the preliminary injunction that the district court issued made it impossible for the Circuit Clerk to follow Order 2014-02, an order that the Chief Judge of the Circuit Court of Cook County (the "Chief Judge") issued. The district court, therefore, essentially enjoined a pending state court order that the Chief Judge issued.

Nevertheless, CNS argues that "[t]he cornerstone of Younger abstention does not exist here." (CNS Br. at 21.) *Younger* abstention applies to requests for injunctive relief in a civil action. *See SKS & Associates v. Dart*, 619 F.3d 674 (7th Cir. 2010) (following *Younger* and declining to exercise jurisdiction over a Section 1983 action against the Chief Judge and the Sheriff of Cook County to speed up the process through which evictions are served). In *SKS & Associates*, this Court recognized that "[u]nder [the] established abstention doctrines, however, a federal court may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts and their ability to resolve the cases before them." *Id.* at 677.

Like the Circuit Clerk here, the Sheriff was compelled to follow a general order that the Circuit Court of Cook County had issued. This general order directed the Sheriff to not carry out residential convictions during a two and half week period in December and during periods of extreme weather. The plaintiff SKS & Associates filed a suit under Section 1983 alleging violations of the First Amendment, the Due Process Clause and the Equal Protection Clause and sought a mandatory injunction to compel the circuit court to process evictions more quickly. Pursuant to *Younger*, the district court declined to exercise jurisdiction over this claim for injunctive relief. This Court affirmed.

This Court recognized that "[t]he `vital consideration' of the `proper respect for state [adjudicative] functions' would be subverted if we were to entertain these claims." *Id.* at 682, *citing Younger*, 401 U.S. at 44. This Court recognized three avenues available in the State court for SKS & Associates: they could challenge the general order in state court, they seek a writ of *mandamus* or seek relief from the circuit court in individual eviction cases. But SKS & Associates could not file a civil rights in federal court to challenge the constitutionality of state court management practices in the general order. *SKS & Associates* is on point and dispositive.

As *SKS & Associates* shows, the absence of a pending state court case does not preclude application of Younger abstention. In its preliminary injunction order, the district court stated that "there are simply no ongoing state judicial proceedings with which CNS's requested injunctive relief might interfere. For that reason alone, *Younger* abstention is not appropriate." *Courthouse News Service v. Brown*, 2018

U.S. Dist. LEXIS 2816 at *7. CNS advances the same argument here. *SKS & Associates* shows that this position is legally unsound. Indeed, as *SKS & Associates* and *O'Shea* demonstrate, federal courts should abstain from hearing a constitutional challenge to either a state court general order managing the practices of the state court to those practices themselves.

As *O'Shea*, *Parker v. Turner*, 626 F.2d 1 (6th Cir. 1980) and *Rizzo v. Goode*, 423 U.S. 362 (1976) show, the *Younger* abstention doctrine bars a federal constitutional challenge to state court practices, as opposed to a statute or a rule. Indeed, "an injunction aimed at controlling or preventing the occurrence of specific events" in the operation of the state courts "indirectly accomplish the kind of interference that *Younger* . . . sought to prevent." *O'Shea*, 414 U.S. at 500.

CNS cites *Bellotti,* CNS Br. at 24, but does not address the distinction regarding *Younger* abstention that *Bellotti* drew between a constitutional challenge to a statute or a rule and a constitutional challenge to state court practices. CNS' lawsuit falls into the latter category and, as a result, abstention was warranted under *O'Shea* and *Younger*. CNS does not come to grips with the significance of *Bellotti* here.

CNS likewise does not distinguish *O'Shea*. CNS argues that *O'Shea* concerns interference with future state court proceedings. (CNS Br. at 22.) *O'Shea*, in fact, concerned federal interference with state court practices based upon constitutional grounds. Under *O'Shea*, such constitutional concerns about state court practices should be advanced in state court. As *O'Shea* observed:

> Respondents do not seek to strike down a single state statute, either on its face or as applied . . . What they seek is an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials.

*O'Shea*, 414 U.S. at 500. CNS sought an injunction to control future events regarding the operation of the Illinois courts -- in this case, how the Circuit Clerk processes e-filed complaints. *O'Shea* held that abstention would have been appropriate in that case. It would have been appropriate in this instant case, as well.

CNS argues that abstention is not appropriate here because it "does not seek to `interfere' with GAO 2014-02 at all." (CNS Br. at 22.) This argument is at odds with the practical effect of the preliminary injunction that CNS requested and obtained. CNS asked for and continues to request "immediate and contemporaneous access" to newly e-filed complaints. That is exactly what the district court ordered in its preliminary injunction. The Circuit Clerk cannot simultaneously provide immediate and contemporaneous access and comply with the requirements of Order 2014-02. CNS' argument that it is not interfering with Order 2014-02 is just not credible.[4]

---

4 CNS also argues that *Courthouse News Service v. Planet*, 750 F.3d 776 (9th Cir. 2014) ("*Planet I*") properly held that that the district court should not have abstained from hearing CNS' First Amendment claim that the Superior Court of Ventura County, California violated the First Amendment by withholding certain newly filed complaints from public view until they have been fully processed. (CNS Br. at 22-23.) A close reading of *O'Shea*, *E.T. v. Cantil-Sakauye*, 682 F.3d 1121 (9th Cir. 2012) and *Rizzo* show that *Planet I* read *O'Shea* too narrowly and was not faithful to the application of *Younger* abstention in *O'Shea*. *Planet I* drew a distinction between federal intrusion into state court procedure and federal intrusion into state processing of the filing of civil complaints. This is a distinction

Indeed, just as the Plaintiff's challenge to the Circuit Clerk's practice of performing the "accept/reject" function was a challenge to a state court practice, the constitutional challenges in *O'Shea*, *Parker* and *E.T.* were challenges to state court practices. CNS, to be sure, did not bring a constitutional challenge to a statute or a state supreme court rule but rather challenged the constitutionality of the practice of a State court officer processing the filing of complaints in civil cases pursuant to ongoing and operative State court rules.

CNS discusses the cases that the Circuit Clerk cited in support of her abstention argument but evades the Circuit Clerk's central argument: this is not a lawsuit challenging the Illinois rules but not the procedure the Circuit Clerk has been ordered to perform: performing the "accept/reject" function before processing e-filed complaints. As *Bellotti* shows, the structure of CNS' constitutional challenge makes it one where abstention was warranted under *O'Shea*.

Due to the lawsuit that CNS actually brought -- as opposed to the one that it could have brought against the Administrative Office of the Illinois Courts challenging the constitutionality of the Standards -- the district court should have abstained from hearing Plaintiff's motion for preliminary injunction or anything else in this case.

---

without a difference. In any event, the narrow reading of *Younger* in *Planet I* cannot be squared with this Court's application of *Younger* in *SKS & Associates*. *SKS & Associates* is the law of this Circuit and CNS' reliance on *Planet I*, *see* CNS Br. at 22-23, is therefore misplaced.

## V. Plaintiff's First Amendment Claim Against the Circuit Clerk Lacks Merit. (Reply to CNS' Br. at 16-19, 26-53 and Reporters Br. at 4-24.)

CNS' First Amendment claim against Brown is predicated on an error: CNS' belief that Brown has the discretion to disregard the mandates in Order 2014-02, R. 19-2, or the Standards. (R. 19-3.) She has no such discretion. The Illinois Supreme Court and the Chief Judge have ordered the Circuit Clerk to review the e-filed documents to ensure that such documents do not include confidential information that the Illinois Supreme Court and the Chief Judge have ordered excluded. (R. 19-2; R. 19-3.) Against this legal backdrop, CNS' claim that the Circuit Clerk waived an argument about the proper First Amendment standard to be applied in this case wholly misses the mark.

Legal standards such as intermediate scrutiny and strict scrutiny come into play when a court considers a law, rule or practice where the state actor had some discretion on where to draw lines that conceivably infringed speech. *See, e.g., ACLU v. Alvarez*, 679 F.3d 583, 605 (7th Cir. 2012) (finding that Illinois' eavesdropping statute subject to a First Amendment challenge did not survive intermediate scrutiny).

Here, the Circuit Clerk does not regulate any speech or anything else. She simply follows court rules and orders regarding the e-filing of complaints. If CNS had challenged the Standards, then the determination of whether intermediate scrutiny or strict scrutiny applied to a First Amendment challenge to such rules and regulations would make sense. But that is not this case here and CNS' extensive

argument regarding time place and manner restrictions, CNS Br. at 49-56, is inapposite.[5]

### A. The First Amendment Does Not Compel Immediate And Instantaneous Access To Newly Filed Civil Complaints.
(Reply to CNS' Br. at 26-56 and Reporters Br. at 4-24.)

It is well established that federal courts "will not reach constitutional questions if their decision can reasonably be avoided." *See Evans v. Newton*, 382 U.S. 296, 315 (1966) (Harlan, J., dissenting); *Peters v. Hobby*, 349 U.S. 331, 338 (1955) (opting to decide case without reaching the constitutional issues raised); *United States v. Rumely*, 345 U.S. 41, 45 (1953) (stating that "the Court's duty to avoid a constitutional issue, if possible, applies not merely to legislation technically speaking but also to congressional action by way of resolution").

This is not a first amendment case. Putting *Younger* abstention aside, this Court need not resolve CNS' proposed First Amendment claims for an additional reason: CNS' claim for civil court documents is more properly based upon the common law right of access to court documents. *See, e.g., Nixon v. Warner Communications*, 435 U. S. 586, 597 (1978).

Although a claim for civil court documents finds shelter under the First Amendment through the right to free speech and the freedom of the press, the First Amendment is not the foundation for access to court documents. In certain

5 If CNS had brought a First Amendment challenge to the Standards, any alleged restrictions on speech in the Standards would be subject to intermediate scrutiny. *See Alvarez*, 679 F.3d at 605; *see also Amicus Curiae* Brief of Judicial Council of California at 25-27 (arguing that intermediate scrutiny would be the proper standard in any time, place or manner analysis).

circumstances, First Amendment rights may have some implications in a request for court documents, but that can only be determined on a case by case basis. *Id.* at 599. The First Amendment has been implicated in situations where the press or public have been excluded from court proceedings or precluded from seeing certain documents because such documents were sealed or under a protective order such that the freedom of speech and/or the freedom of the press to report and publish were inhibited. But that is not the case here. It is the principles of the common law right of access to court documents that controls. *See Id.* at 598-599. The factors which are important in the determination regarding if access is appropriate are at the sound discretion of the court and are to be taken in light of the relevant facts and circumstances of the particular case. *Id.* at 599.

Here, the district court abused that discretion when it entered the wide-sweeping, mandatory injunction against the Circuit Clerk to provide instantaneous access to newly e-filed complaints to CNS before any employee of the Circuit Clerk's Office has an opportunity to review newly e-filed complaints for compliance with Order 2014-02 and the Standards. The Circuit Clerk's performance of her duties does not offend the common law right of access or the first amendment.

The First Amendment applies to the principle of access to court proceedings. *Richmond Newspapers v. Virginia*, 448 U.S. 555, 575 (1980) (recognizing the right of the press under the first amendment to attend criminal proceedings). The Supreme Court found the right of access to a criminal proceeding went to the

common core purpose assuring freedom of communication on matters relating to the functioning of government. *Id.*

Later, the Ninth Circuit expanded the umbrella of the First Amendment to protect the right not only of access to criminal proceedings but criminal court documents as well where the district court issued a *sua sponte* sealing of all documents filed in the criminal case, without making any specific findings for closure. *Associated Press v. United States Dist. Court for Central Dist.*, 705 F.2d 1143, 1144-46 (9th Cir. 1983).

This Court has recognized the common law right to access to civil proceedings and civil court documents. *See Smith v. United States Dist. Court*, 956 F.2d 647, 649-650 (7th Cir. 1992). But this Court has also recognized that such right to access, under the common law, or where the First Amendment is implicated, is subject to limitations. *See Grove Fresh Distributors v. Everfresh Juice Co.,* 24 F. 3d 893, 897 (7th Cir. 1994). Thus, the common law right of access to court documents to inspect and copy is not absolute. Every court maintains supervisory power over its own records and files. *Nixon*, 435 U.S. at 598. Where it is necessary, after the weighing the competing interests, the common law right to inspect documents must bow before the power of the court in the administration of justice. *Id.*

The access to court documents which was at issue in *Nixon* was audio tapes of presidential conversations which were admitted into evidence and played at trial. *Nixon*, 435 U.S. at 594. Transcripts of the tapes were provided to the press and public during the trial, although the transcripts were not admitted into evidence.

*Id.* Reporters petitioned for immediate access to the tapes, however, the district court judge denied the request citing the fact that the appeals of the defendants were not completed. The Supreme Court affirmed the trial court recognizing that a common law right to inspect and copy public records existed to allow citizens the right to keep a watchful eye on the workings of governmental agencies, but that such right was not absolute. *Id.* at 598.

The Court in *Nixon* held that the reporters were allowed access to the court proceedings and to the contents of the tapes which they were free to report and publish, but were prevented from copying the audio tapes. *Id.* However, the Supreme Court noted that the access to presidential audio tapes was also covered by the Presidential Recording Act which provided for an administrative procedure for processing and releasing such information to the public. *Id.* at 603. *Nixon* recognized that the common law right to access and inspect court documents, or in that case, admitted evidence in a criminal trial did not necessarily demand immediate access.

Decisions regarding the common law right of access to court proceedings or documents are subject to the experience and logic test of *Press Enterprise II.* See *Press Enterprise v. Superior Court*, 478 U.S. 1 (1986) ("*Press Enterprise II*"). The first prong is the experience prong and asks historically has the press and public had access to the governmental process involved. *Id.* at 8. The second prong is the logic prong which asks the question of whether the public access plays a significant role in the functioning of the particular governmental process in question. *Id.* at 8-

9. If the governmental function in question passes both prongs of the experience and logic test, then a qualified First Amendment right of public access attaches. *Id.* at 9. It is after that determination that the court must consider whether the presumption of access should be overridden to preserve a higher interest in that particular instance and whether the closure of access is narrowly tailored to serve that interest. *Id.* at 9-10.

Notably, *Press Enterprise II* dealt with the closure of a criminal preliminary hearing from the press and public. Here, no one desires to close documents from the public view. The Circuit Clerk is merely processing the documents as the Standards and Order 2014-02 command. This processing does require some administrative delay but only enough to electronically process the documents in the Circuit Clerk's computer system. Until the e-filed complaint is electronically processed, it is not accessible to the public or the Circuit Clerk. (R. 19-1, ¶3(c).) Only after the Circuit Clerk's office electronically processes a new e-filed complaint and accepts the document will the computer system allow the complaint to be available on a platform that is accessible.

Thus, putting *Younger* arguments aside, to determine whether CNS' claims even implicate the First Amendment, it is necessary to pose two questions pursuant to *Press Enterprise II*: (1) has history shown that the press and public are allowed access to an e-filed complaint the same day it is e-filed? and (2) is public access to a newly e-filed complaint the same date that the complaint is presented to the Circuit

Clerk necessary to the functioning of the Circuit Court Clerk or the judicial system? The answer to both questions is no.

None of the case law that CNS and *amici* Reporters Committee cite stands for the proposition that only same day access to newly e-filed complaints is necessary to comply with the experience and logic test.[6] Even Plaintiff itself admits in its complaint that many jurisdictions provide same day access, but not all jurisdictions in all cases. (R. 1, ¶45) Moreover, the Illinois Supreme Court order has set a mandatory e-filing deadline for July 1, 2018. (R. 35-3, ¶1.)

Certainly the historical role of the press and public in the governmental function of e-filing which has not yet been made mandatory would be limited and does not satisfy the experience prong of *Press Enterprise II*. While CNS offers conclusory statements that there is a history of e-filed complaints being provided to the press the same day, CNS has not shown that access to newly e-filed complaints must be provided the same day the e-filed complaint is submitted to the Circuit Clerk's on-line filing system, either historically or in common law practice. *See Courthouse News Serv. v. Planet*, 2016 U.S. Dist. LEXIS 105197, *37-38 (C.D. May 26, 2016) (finding no authority to support CNS' position that access to court documents must be the same day the document is filed).

As to the second prong of the *Press Enterprise II* test, Plaintiff has not shown that the press or public play a significant role in the e-filing of civil complaints.

---

6 Moreover, the cited case law almost entirely deals with sealed or protected documents where the access was completely denied. Such case law is inapposite factually to the instant case.

There has been no governmental action at that point, even the Circuit Clerk has not reviewed the document, and certainly no judge has reviewed the document. At that point, no defendant has reviewed the document or entered any contrary position or admission to the document. Upon the uploading of the e-filed complaint, it is only the position of the plaintiff in that case that is documented. Plaintiff argues that the complaint sets the whole court process in motion, which is true. But a newly e-filed, uncontested, not yet served complaint provides no real discussion of the functioning of the judicial system or the justice deserved in that particular case. Thus, the immediacy of the public access to such a document in order to review the inner workings of the court system is weak at such a preliminary stage of the litigation.

The minimal administrative delay in processing e-filed complaints which results in 90.9% of the complaints being accessible the same day or the next business day can hardly be compared to the sealing of a criminal court record and exclusion from a preliminary hearing in *Press Enterprise II*. (R. 7-5, pages 33 through 130 of 152.)

Here, CNS has the ability to contact the original source of the complaint, the plaintiff in a particular case. And CNS may report on the story that a civil complaint was filed. The First Amendment is not implicated here because the freedom of speech and the freedom of the press to report and publish are not hindered. The newly e-filed complaint will not reveal anything more than what the plaintiff in a particular case already knows. It may be that a government source for

the document is delayed for processing but there is an alternative -contact the original source. CNS' complaint includes such an example where the Chicago Tribune published a story about a lawsuit that was filed by a fan who was injured at Wrigley Field before CNS reported it. (R. 1, ¶40). According to the complaint, the Chicago Tribune was able to report the story because it did not wait on the government source but went directly to the plaintiff in that case. Because the press is still free to report on civil cases filed in Cook County, CNS did not properly allege a First Amendment violation in this case.[7]

Under the experience and logic test for access to court documents, Plaintiff's claim regarding the Circuit Clerk's administrative delay in access to e-filed complaints does not rise to a violation of the common law right to access court documents. There is no historical same day access to e-filed complaints, nor is CNS' access to a newly e-filed complaint play a significant role in the proper functioning of e-filing or the court system.

A review of the case law establishing access to court documents does not support CNS's claim and none of the cases deal with the same day access to e-filed complaints but for the CNS line of cases.

CNS is receiving timely access to e-filed complaints in Cook County, in accordance with all applicable Illinois laws and state and local court rules, as well

---

7 The only possible harm that CNS arguably alleged in its complaint and subsequent filings is the fact that it has lost news stories or has been "scooped." But even there, CNS has provided no instance where the public was uninformed of the workings of the judicial system or where the public was unable to access information regarding the judge's decision or reasoning in the litigation or resolution of a civil case in Cook County.

as the Constitution of the United States. Accordingly, the Circuit Clerk's practices do not violate the common law right to access or First Amendment. On this alternative basis, the preliminary injunction against Circuit Clerk should be vacated.[8]

**B. The Circuit Clerk Did Not Waive Any First Amendment Arguments.** (Reply to CNS' Br. at 16-18.)

CNS argues that the Circuit Clerk waived two of her arguments and waived a third argument that *Amicus Curiae* Judicial Council of California advanced. (CNS Br. at 17.) CNS is mistaken.

For example, CNS contends that the Circuit Clerk did not make the following argument in the district court: "Under the current design of the computer system in the Circuit Clerk's office, complaints that need to be sealed cannot be sealed until the `accept/reject function' is completed." In fact, the Circuit Clerk made this exact argument in the district court. (R. 35, ¶18.) This argument was not waived.

CNS also contends that the Circuit Clerk did not advance the following argument in the district court: "the First Amendment does not compel pre-trial/pre-judgment access to court documents." In the district court, the Circuit Clerk filed an answer and affirmative defenses. (R. 17.) In ¶1 of her first affirmative defense (absence of duty), the Circuit Clerk stated the following:

> Neither the First Amendment nor any other law confers a duty upon the Circuit Clerk to provide Plaintiff or any other member of the media

8 As CNS is not likely to succeed on the merits due to *Younger* and the First Amendment jurisprudence discussed above, CNS is not likely to succeed on the merits of this action and did not make an adequate showing for preliminary injunctive relief.

> with immediate access to civil complaints that are electronically submitted to the Circuit Clerk's Office before they are reviewed and accepted by the Clerk's Office.

(R. 17, First Affirmative Defense, ¶1.) In addition, in her response to CNS' motion for preliminary injunction, the Circuit Clerk stated that "CNS has no First Amendment right to immediate access to electronically submitted complaints before they are accepted for filing." (R. 19, p. 2.) The Circuit Clerk also argued that she "has not violated CNS' rights under the First Amendment and CNS cannot show any actual or irreparable harm." (R. 19, p. 14.) The Circuit Clerk did not waive her argument that CNS has not right to immediate and contemporaneous access under the First Amendment.

With respect to the any discussion of proper time, place and manner restrictions, the Circuit Clerk has taken the position that such analysis is inapposite here, as it is better suited for legislation or a rule drawing lines that restrict speech. The Circuit Clerk is merely discharging duties that the Illinois court system has imposed upon her in the Standards and Order 2014-02. Proper time, place and manner restrictions have no application here.

### C. The Circuit Clerk Addressed And Appealed The District Court's Erroneous Finding That CNS Was Likely To Succeed On The Merits Of Its First Amendment Claim.
(Reply to CNS' Br. at 18-19.)

CNS compares the Circuit Clerk's arguments to the image of an ostrich sticking its hand in the sand. (CNS Br. at 18.) This is not only incorrect but reflects a certain lack of self-awareness on the part of CNS. After all, CNS has argued that the preliminary injunction did not interfere with the Circuit Clerk's

duties under Order 2014-02, see CNS Br. at 22, when such interference is obvious. CNS also argued the Circuit Clerk took "no steps to timely comply with the preliminary injunction," CNS Br. at 12, when she took affirmative step of asking the Illinois Supreme Court for relief from duties under Illinois law in order to comply with the preliminary injunction. When considering whether to compare a litigant to an ostrich sticking his head in the sand, perhaps the best policy is to follow the biblical injunction, "let he who is without sin throw the first stone." *Fulks v. United States*, 875 F. Supp. 2d 535, 620 (D.S.C. 2010).

CNS argues that the Circuit Clerk did not explain in her opening how the district court erred in failing to account for the Standards and Order 2014-02. (CNS Br. at 18.) This argument is nonsensical. At length in her opening brief, the Circuit Clerk explained that the district court did not properly account for the Standards and Order 2014-02 when it declined to abstain from adjudicating CNS' motion for preliminary injunction pursuant to *Younger*. The Circuit Clerk also explained that in light of the Standards and Order 2014-02, CNS did not have a legitimate First Amendment claim against the Circuit Clerk.

CNS also complains that the Circuit Clerk did not discuss some of the cases that the district court relied upon in its discussion of the First Amendment and access to e-filings. (CNS Br. at 18-19.) In her opening brief, the Circuit Clerk discussed case law from the United States Supreme Court and other federal courts regarding this very topic. In this reply brief, the Circuit Clerk discusses *Grove Fresh Distributors v. Everfresh Juice Co.*, 24 F. 3d 893 (7th Cir. 1994), a case that

the district court cited, and argues that it is inapposite. The bottom line is that the Circuit Clerk has consistently argued that the First Amendment right of immediate and contemporaneous access to e-filings does not exist.

**CONCLUSION**

For the foregoing reasons, this Court should reverse the decision of the district court granting Plaintiff's motion for preliminary injunction and remand this case with instructions to dismiss this lawsuit against the Circuit Clerk for lack of subject matter jurisdiction.

Respectfully submitted,

KIMBERLY M. FOXX
State's Attorney of Cook County

By: */s/Paul A. Castiglione*
Assistant State's Attorney

Kent S. Ray
Assistant State's Attorney
Interim Chief, Civil Actions Bureau

Paul A. Castiglione
Margarett S. Zilligen
Oscar Kpota
Assistant State's Attorneys

*Of Counsel*

No. 18-1230

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| **Courthouse News Service,**<br><br>**Plaintiff-Appellee,**<br><br>**v.**<br><br>**Dorothy Brown in her official capacity as Clerk of the Circuit Court of Cook County,**<br><br>**Defendant-Appellant.** | **On Appeal from the United States District Court for the Northern District of Illinois, Eastern Division**<br><br>**Case No. 17 C 7933**<br><br>**The Honorable Matthew F. Kennelly, Judge Presiding** |

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6.939 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 12 point font and footnotes in 12 point font in Century.

/s/ *Paul A. Castiglione*
Paul A. Castiglione
Assistant State's Attorney

*Attorney for*
*Defendant-Appellant*

Dated: April 26, 2018

No. 18-1230

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| Courthouse News Service,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>Dorothy Brown in her official capacity as Clerk of the Circuit Court of Cook County,<br><br>Defendant-Appellant. | On Appeal from the United States District Court for the Northern District of Illinois, Eastern Division<br><br>Case No. 17 C 7933<br><br>The Honorable Matthew F. Kennelly, Judge Presiding |

CIRCUIT RULE 31(e)(1) CERTIFICATION

I, the undersigned, counsel for the Defendant-Appellant Dorothy Brown, Clerk of the Circuit Court of Cook County, hereby certify that I have filed electronically, pursuant to Circuit Rule 31(e), a version of the brief, in PDF format to the web site via the internet.

/s/ *Paul A. Castiglione*
Paul A. Castiglione
Assistant State's Attorney
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-2350
paul.castiglione@cookcountyil.gov

## CERTIFICATE OF SERVICE

I, the undersigned, counsel for the Defendant-Appellant, hereby certify that on April 26, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ *Paul A. Castiglione*
Paul A. Castiglione
Assistant State's Attorney
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-2350
paul.castiglione@cookcountyil.gov

Dated: April 26, 2018